# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

IN RE:
      CHRISTOPHER D. WYMAN
        *Debtor(s),*

                                ADV. NO: 19-03018
\
SAMUEL D. SWEET, Individually and as Trustee,
      Plaintiff, Counter Defendant

                                CASE NO. 12-32264
                                CHAPTER 7
v.

MICHAEL E. TINDALL, Individually and as 100% Assignee of
Barbara Duggan

        Defendant, Counter Plaintiff.
\

## RESPONSE AND BRIEF OPPOSING DE 88
## TRUSTEE SWEET MOTION FOR SUMMARY JUDGMENT

MICHAEL E. TINDALL, (hereinafter "Claimant"), Assignee of all [100%] claims of BARBARA DUGGAN ($32,240.34), and a party in interest holding a secured attorney lien ($34,100.00/$21,869.33) against the proceeds of the Realty (hereinafter collectively "allowed secured claim"), and for his RESPONSE IN OPPOSITION TO DE 88, MOTION FOR SUMMARY JUDGMENT filed by Trustee Sweet states:

      This case began March 18, 2019, almost four (4) years ago, with the filing of a Complaint by Trustee Sweet DE 1. Claimant filed its JOINT ANSWER, AFFIRMATIVE DEFENSES AND COUNTER COMPLAINT on March 22 and 27, 2019. DE 11 and 15. Trustee Sweet filed his ANSWER TO AFFIRMATIVE DEFENSES AND TO COUNTER COMPLAINT on April 9, 2019. DE 30 and Exhibit 1 attached.

According to Mr. Sweet, **"The facts of this case are not disputed and are a matter of record".** DE 88, P1; **"there is no material fact in dispute ..."** DE 88, P3. Mr. Sweet's false representations of the "facts" and "record", as well as his omissions of established "facts" and entire parts of the "record" that do NOT serve his purposes are disputed.[1] By way of illustration, NOT limitation, Sweet's MOTION states:

> **"Tindall was paid the full amount of his claim as part of the closing".** DE 88, P3.

> "As this Court held on March 17, 2021 in Court Opinion and Order, DE 78, in Adversary Proceeding 20-03012, **the secured claim of Tindall is satisfied and paid in full".** DE 88, P3.

"Tindall" has been paid nothing. At closing or at any other time – despite repeated requests; and, Claimant's secured lien against the proceeds of Mr. Sweet's fraudulent sale remains unsatisfied. Sweet has – again – misrepresented the "facts" and "record" by attributing payment solely to Barbara Duggan – for a completely different secured claim – as a payment to "Tindall". Case No. 12-32264, DE 268, See Exhibit 2.

## A. THE INDISPUTABLE AND UNDISPUTED "RECORD" FACTS:

---

(1) FRCP 56(c) states: *Supporting Factual Positions.* A party asserting that a fact cannot be or is genuinely disputed **must support the assertion by:**

    (A) citing to **particular parts of materials in the record,** including depositions, documents, electronically stored in-formation, affidavits or declarations, stipulations (includ-ing those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) **showing that the materials cited do not establish the absence or presence of a genuine dispute,** or that an ad-verse party cannot produce admissible evidence to support the fact.

As with every motion filed by Mr. Sweet seeking or opposing summary disposition in this bankruptcy, the present MOTION fails to comply with this rule.

1. This voluntary bankruptcy was filed May 24, 2012. DE 1, Case No. 12-32264

2. Michael Mason was appointed the duly qualified and acting Chapter 7 Trustee in this bankruptcy case on or about May 24, 2012. DE 8, Case No. 12-32264

3. Barbara Duggan ("Duggan"), a secured state court lien creditor with a perfected Judgment Lien, Claim No.1, appeared in this bankruptcy case on May 24, 2012. DE 9, Case No 12-32264.

4. Duggan subsequently became a Co-Plaintiff with Trustee Mason in numerous adversary proceedings (a) to recover fraudulent transfers from Debtor Wyman and Diana Gentry for the benefit of their respective bankruptcy estates; (b) to recover damages – including post judgment attorney fees – under Michigan law; and, (3) to object to discharge(s) of Wyman and Gentry.

5. On March 13, 2013, this Court issued DE 66, Case No. 12-02248, containing the following rulings completely eliminating any claimed interest by Michelle Pichler in 1011 Jones Rd. and recovering the Jones Rd. realty, by Trustee Mason, as property of the bankrupt estate:

   **"The Debtor signed a Quit Claim Deed transferring the Jones Road Property to Ms. Pichler in October, 2009" DE 66, P2**

   **"While the Court acknowledges that Ms. Pichler claims that there was a land contract, the titleholder to the Jones Road Property was the Debtor, not Ms. Pichler." DE 66, P4**

   **... but the Quit Claim Deed was not recorded until April 24, 2012... The Quit Claim Deed was recorded within the 90 day period prior to the Debtor's bankruptcy petition DE 66, P4**

6. Thereafter, on June 24 and 25, 2014, in Case No. 12-02248, ALL the real and personal property – later sold by Trustee Sweet in 2019- was recovered by Trustee Mason for the bankrupt estate by (a) settlement placed on the record in this Court June 24, 2014; (b)

instruments of conveyance [Bill of Sale and Quit Claim Deed] specifically approved by this Court June 24, 2014; and, (c) this Court's JUDGMENT dated June 25, 2014. See, Exhibit 3.

7. On July 15, 2014, Trustee Mason obtained an OFFER TO PURCHASE 1011 Jones Rd. [realty only] for the amount of $82,000.00. See, Exhibit 8.

8. As confirmed by Trustee SWEET'S counsel's billing records, Case No. 12-32264, DE 349, PP 16-18, Nov. 2013 through June 30, 2014, this recovery of real and personal property, as well as this Court's JUDGMENT, was approved and effectuated by Trustee Mason, and, became property of the bankrupt estate, BEFORE Trustee Sweet was appointed as successor Trustee August 26, 2014.

9. Trustee Mason was succeeded by Trustee Sweet ("Sweet") on August 26, 2014.Case No. 12-32264, DE 150.

10. On February 10, 2015, Mr. Sweet testified, in Case No 12-3347, that the personal property and equipment, later sold by Trustee Sweet in 2019, was recovered as property of the bankrupt estate, by Trustee Mason in 2014. See, Exhibit 6, PP 59 LL 16-18, LL 22-23; P 60, LL1-3; P 62, LL 1-4; LL 7-13; P63, LL 17-21; P64, LL 7-10; P68, LL 18-21, L25; P69, LL 1-3; LL 10-13; P70; LL 2-8; P71, LL 22; P72, LL 2-6.

11. On February 10, 2015, Mr. Sweet testified he needed to have the personal property appraised and valued. See, Exhibit 6, PP –67, LL 7-17; P 68, L5; P74-LL24-25; P75, LL 1-6; P76, LL 4-11.

12. On February 26, 2015, this Court entered its Order, DE 93, Case No. 12-03447, ordering Mr. Sweet to determine **"the value of each item described in the attachments to the Bill of Sale"** By March 10, 2015. See, Exhibit 7.

13.In approximately June 2018, Sweet entered into a real estate sale contract to sell 1011 Jones Rd., Howell MI to litigation opponent Dianna Gentry at a clearly inadequate price - far less than previously offered to Trustee Mason in June 2014 by an arms-

length buyer for the realty alone. Additionally, the contract with Gentry proposed to transfer to Gentry certain construction equipment [recovered by Trustee Mason in 2014], estimated, by Sweet – himself – to be worth at $50,000.00, for no consideration. The contract executed by Sweet and proposed to the Court for approval stated:

> **"3. Bankruptcy Trustee will have removed a "Claim of Interest" Filed by BARBARA DUGGAN 5/5/2012 and recorded 5/3/12 In Livingston County Register of deeds Liber 2012R-015343"** See, Exhibit 4, Aden. 1, No 3, P10 of 19;

14. Trustee Sweet filed his first MOTION TO SELL the real and personal property- previously recovered by Trustee Mason - on June 7, 2018. DE 176, Case No. 12-32264. See, Exhibit 4.

15. Trustee Sweet filed his second [Amended] MOTION TO SELL the real and personal property previously recovered by Trustee Mason on December 11, 2018. DE 182, Case No. 12-32264. See, Exhibit 5. The sale, parties and terms, was identical to Sweet's first MOTION TO SELL.

16. Sweet collected no rent for the realty from Debtor, despite Debtor's continued occupation of the real property throughout the entire history of the case. Case No. 20-03012, DE 24; DE 45, P4-5, No. g.

17. Sweet did not value, appraise, list or market the realty. Case No. 20-03012, DE 24; DE 45, P4-5, No. h.

18. Sweet did not comply with this Court's Order dated February 26, 2015 to value the personal property and equipment. See No. 12 above and Exhibit 7.

19. Sweet did not value, appraise, list or market the construction equipment. Case No. 20-03012, DE 24; DE 45, P4-5, No.h

20. Sweet did not consult with his Co-Plaintiff Duggan, Case No. 20-03012, DE 45, P4, No. b, or obtain her consent prior to executing the agreement with Gentry.

21. Trustee Sweet did not comply with the Department of Justice, Handbook for Chapter 7 Trustees, requiring that he value and document valuation for real and personal property sold, and, the required contents of a proper Notice of Sale. See, Exhibit 9, PP 8-17, 8-18, 8-19, 8-20, 8-28, No. 7.

## I. **TRUSTEE SWEET FAILED TO PLEAD THE AFFIRMATIVE DEFENSE OF "QUALIFIED IMMUNITY"[2] AND IT IS WAIVED.**

The sole basis for Mr. Sweets motion is that, by seeking – DE 176 and DE 182- and obtaining an Order approving the "sweet heart" deal/sale of the real and personal property to Diana Gentry, he obtained "derived judicial immunity"[3] from any and all claims for breaching his fiduciary duties.

"The Court approved the sale and agreement with Gentry in full. The sale of the property closed on May 29, 2019." DE 88, P 2.
********************

---

[2] The courts are divided over whether the trustee must negligently or willfully breach a fiduciary duty to interested parties in order for liability to attach. While the Sixth Circuit Court of Appeals along with the Fourth, Seventh and Tenth circuits hold that trustees can only be held personally liable for injuries arising from **willful and deliberate conduct**, three circuits, the Second, Ninth and Eleventh, subject trustees to personal liability for **negligent breaches of fiduciary duties.** *Ford Motor Credit Co. v. Weaver, 680 F.2d 451 (6th Cir.1982); Yadkin Valley Bank & Trust Co. v. McGee, 819 F.2d 74 (4th Cir. 1987); In re Chicago Pac. Corp., 773 F.2d 909 (7th Cir. 1985) (dicta); Sherr v. Winkler, 552 F.2d 1367 (10th Cir.1977); In re Gorski, 766 F.2d 723 (2d Cir. 1985); Hall v. Perry (In re Cochise College Park., Inc.), 703 F.2d 1339 (9th Cir.1983) and Red Carpet Corp. of Panama City Beach v. Miller, 708 F.2d 1576 (11th Cir. 1983).*
[3] Known as "Qualified Immunity" in this SIXTH Circuit.

"In this case, the Trustee entered an agreement with Diana Gentry, filed a motion for approval of said agreement, forwarded the agreement to the parties, and the motion was approved over the objection of the complaining parties." DE 88, P3.

Yet, Sweet failed to plead ANY Affirmative defenses. See, Exhibit 1. Sweet's misunderstanding of the availability of "qualified immunity" is understandable, given that he did not raise it. The Affirmative Defense was raised, sua sponte, by this Court. In Case No. 20-3012, DE 79, P2, this Court acknowledged that it raised the immunity issue and directed the filing of a summary judgment motion – nearly identical to this motion – in that case. This Court stated:

> "The Court noted in Footnote 2 at the end of the above paragraph:
>
> The Court notes that while Defendant Tindall may have stated a plausible claim under Rule 12(b)(6), **the Plaintiff Trustee's actions in executing the various orders of this Court including the March 13, 2019 Order Granting the sale of property, transferring the subject judgment lien to the proceeds of that sale, would provide the Trustee with "derived judicial immunity," which would provide an arguable basis for summary judgment for the Plaintiff Trustee as to the Counterclaim.** *See LeBlanc v. Salem (Mailman Steam Carpet Cleaning Corp.),* 196 F.3d 8-9 (1st Cir. 1999). "

Qualified immunity "is an affirmative defense that must be pleaded by a defendant official."[4]. The Supreme Court has therefore long held that "the burden of pleading it rests with the defendant."[5] Qualified immunity must be

---

[4] *Harlow v. Fitzgerald, 457 U.S. 800, 815, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982);*

[5] *Gomez v. Toledo, 446 U.S. 635, 640, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980); (citing Fed. R. Civ. P. 8(c)); see also Crawford-El v. Britton, 523 U.S. 574, 595, 118 S.Ct. 1584, 140 L.Ed.2d 759 (1998); Thomas v. Independence Twp., 463 F.3d 285, 293 (3d Cir. 2006).*

**pleaded and proved** by the defendant.[6] **The failure to raise qualified immunity results in waiver of the defense.**[7] As the Supreme Court stated in *Gomez*:

> "Moreover, this Court has never indicated that qualified immunity is relevant to the existence of the plaintiff's cause of action; instead we **have described it as a defense available to the official in question.** See *Procunier* v. *Navarette, supra,* at 562; *Pierson* v. *Ray, supra,* at 556, 557; *Butz* v. *Economou,* 438 U. S. 478, 508 (1978). **Since qualified immunity is a defense, the burden of pleading it rests with the defendant. See Fed. Rule Civ. Proc. 8 (c) (defendant must plead any "matter constituting an avoidance or affirmative defense"); 5 C. Wright & A. Miller, Federal Practice and Procedure § 1271 (1969). It is for the official to claim that his conduct was justified by an objectively reasonable belief that it was lawful.** We see no basis for imposing on the plaintiff an obligation to anticipate such a defense by stating in his complaint that the defendant acted in bad faith." *Gomez, at At 640*

Since "qualified immunity" is a waivable defense, it is error for a district court to raise the issue *sua sponte*[8]. Otherwise, the waiver aspect of Rule 8(c) would have little meaning.[9]

---

[6] *Balderaz* v. *Porter, 578 F.Supp. 1491, (S.D.Ohio 1983); Alexander* v. *Alexander, 706 F.2d 751, 754 (6th Cir.1983)).*

[7] *Narducci* v. *Moore, 572 F.3d 313 (7th Cir.2009)(*holding that the failure to raise qualified immunity before the reply brief constituted a waiver of that defense in summary judgment proceedings); *Guzman-Rivera* v. *Rivera-Cruz, 98 F.3d 664 (1st Cir.1996)* **(holding that the failure to raise qualified immunity defense in defendants' first two summary judgment motions constituted waiver of that defense in their third summary judgment motion).** *see also Crawford-El* v. *Britton, 523 U.S. 574, 595, 118 S.Ct. 1584, 140 L.Ed.2d 759 (1998)*

[8] *Davis* v. *Bryan, 810 F.2d 42, 44 (2d Cir.1987); see also Banks, 802 F.2d at 1427; Wagner* v. *Fawcett Publications, 307 F.2d 409, 412 (7th Cir.1962)* **(trial court "had no right to apply statute of limitations *sua sponte*."),** *cert. denied, 372 U.S. 909, 83 S.Ct. 723, 9 L.Ed.2d 718 (1963).*

> "Because of the length of the time (over three years) and extensive litigation (three published opinions) between the filing of this action and the district court's *suae sponte* raising of this issue, the interests of justice require that we hold, under the circumstances in this case, that the defendants-appellees' failure to raise the limitations defense in a timely fashion constitutes a waiver."[10]

A district court may not—as the Court did here—sua sponte raise the issue of qualified immunity (or any other non-jurisdictional affirmative defense) when the defendant has waived that issue.[11] As the Sixth Circuit stated in *Summe*:

> "The district court further ruled that Eldridge's dismissal of Summe was protected by qualified immunity. Summe correctly points out that Eldridge did not raise the issue of qualified immunity in

---

[9] *Summe v. Kenton Cty. Clerk's Office, 604 F.3d 257, 269-70 (6th Cir. 2010)*(declining to address qualified immunity on appeal where the district court sua sponte held that the defendant was entitled to qualified immunity, because the defendant waived that defense at summary judgment);

[10] *Haskell v. Washington Township, 864 F.2d 1266, 1273 (6th Cir. 1988)* ("Since [the statute of limitations] is a waivable defense, it ordinarily is error for a district court to raise the issue sua sponte."); *McGraw v. Matthaei, 388 F. Supp. 84,88-89 DC ED Mi 1972)* ( the Statute of Limitations was not raised until nearly two years after the Counterclaim was filed. Having done nothing for two years, plaintiff cannot now assert the defense.)

[11] *See, e.g., Moore v. Morgan, 922 F.2d 1553, 1555, 1557-58 (11th Cir. 1991)* (holding that, where the defendant officials waived the affirmative defense of qualified immunity, the district court "improperly injected the issue of qualified immunity into the case" by sua sponte ordering the parties to brief the issue and then conducting "a supplemental evidentiary hearing devoted solely to this issue"); *Wagner v. Fawcett Publ'ns, 307 F.2d 409, 412 (7th Cir. 1962)* (holding that, where the defendant waived the affirmative defense of the statute of limitations, the district court "had no right to apply the statute of limitations sua sponte").

> either of his briefs below, and the district court raised the issue *sua sponte* in its memorandum of opinion."

The *Summe* court found the defense waived.

Because Sweet failed to plead the Affirmative Defense of Qualified Immunity nearly four (4) years ago, and, this Court impermissibly raised the defense sua sponte, the defense has been waived and is NOT available to shelter Sweet's misconduct.

## II. THE INDISPUTABLE RECORD CONCLUSIVELY PROVES TRUSTEE SWEET IS NOT ENTITLED TO QUALIFIED IMMUNITY.

Even when properly pled, Qualified Immunity is not some "super-secret password" or magic "get out of jail free" card. As Sweet's own cited authorities clearly state, one does not simply mumble the words "Qualified Immunity" and expect the waters to part. It is a defense, and – as such- it must be BOTH pled and proved.[12] Qualified Immunity, "properly applied, ... protects all but the **plainly incompetent** or those who **knowingly violate the law**."[13] A trustee acting with the explicit approval of a bankruptcy court is entitled to immunity from personal liability **as long as the trustee has made "full and frank disclosure to creditors and the court" and did not**

---

[12] **The official seeking absolute immunity bears the burden of showing that such immunity is justified for the function in question.**" *Burns v. Reed, 500 U.S. 478, 486, 111 S.Ct. 1934, 1939, 114 L.Ed.2d 547 (1991). King v. McCree*, 573 F. App'x 430, 437 (6th Cir. 2014) (citing *Mireles v. Waco*, 502 U.S. 9, 11 (1991)). "[A]s the party claiming judicial immunity, [Judge Smith] bears the burden of establishing that judicial immunity is proper."

[13] *Ashcroft v. al-Kidd, 563 U.S. 731, 743, 131 S.Ct. 2074, 179 L.Ed.2d 1149 (2011).*

"**prevaricate[] or otherwise act[] in bad faith**."[14] Once there has been "**candid disclosure**" **to the court and creditors**, and the court approves the action, the trustee will be immunized from personal liability.[15]

In both *McKenzie [at 413-14]* and *Kashani v. Fulton (In re Kashani), 190 B.R. 875, 883-84 (9th Cir. BAP 1995)*, both cited by Sweet, it is clearly stated:

> Although there appears to be a conflict between the concept of judicial immunity and the ability to sue the trustee, *the courts have established certain standards and instructions whereby the trustees can protect themselves by complying with these standards* and, thus, gain judicial immunity. Those instructions include: the trustee should give notice to the debtor and obtain prior court approval of the proposed act; *the disclosure by the trustee to the court, in furtherance of the requested approval must be candid;* and the act must be within the trustee's official duties."

The indisputable and undisputed record in this case conclusively show that Trustee Sweet misrepresented material facts, and, concealed material facts to

---

[14] *In Re McKenzie, 716 F.3d 404,414 (2013); LeBlanc v. Salem (In re Mailman Steam Carpet Cleaning Corp.),* 196 F.3d 1, 8 (1st Cir.1999)( **as long as there has been full and frank disclosure to creditors and the court. ... Only if a trustee prevaricates or otherwise acts in bad faith does he doff the cloak of derived judicial immunity**... Salem is thus entitled to immunity **unless there is reason to believe that he acted in bad faith or that the notice of disclosure he provided was deficient.**)

[15] *Mosser v. Darrow, 341 US 267, 274,* 71 S.Ct. at 683 *(1951)*.( **The practice is well established by which trustees seek instructions from the court, given upon notice to creditors and interested parties ... the trustee, although he did discuss with Judge Holly the employment of Kulp and Miss Johnson, did not disclose the critical fact ...Indeed, it appears that he did not even disclose this feature of the transaction to his own counsel. It is hardly probable that a candid disclosure to creditors, to the court, and to interested parties would have resulted in instructions to have pursued this course**)

obtain the Order to Sell from this Court. Sweet has thus "doffed" the cloak of derived judicial immunity, and, is liable for intentional breach of fiduciary duty.

## A. INTENTIONAL MISREPRESENTATION:

As set forth in Nos. 14 and 15 above, Sweet filed and served DE 176 and 182 and served the same on interested parties. In both notices, he represented to all concerned that HE, Sweet, acquired the property [real and personal] in 2018 through settlement and conveyance with/from Pichler in 2018. This simply was NOT true. As set forth in Nos 5, 6, 8 and 10 above, the property Sweet proposed to sell became property of the bankrupt estate in 2014 by JUDGMENT of this Court; and, any interest claimed by Pichler was terminated by Order of this Court in 2013. Further, as set forth below, Sweet knew his representation(s) regarding how the property was acquired were false.

## B. INTENTIONAL FAILURE TO DISCLOSE

As clearly set forth in the Handbook for Chapter 7 Trustees, Exhibit 9, No. 21 above, Sweet was required to document the value of real and personal property, particularly in the case of a private sale such as he proposed. He did not do so, and, he did not disclose in the Notice of Sale that he did not do so. He also did not disclose he was not complying with the Handbook's requirements for private sales.

Sweet did not disclose that he, himself, testified, under oath, on February 10, 2015, that a valuation/appraisal of the personal property was necessary. No. 11, Exhibit 6. He did not disclose that he had been ordered, by this Court on February 26, 2015, to complete such a valuation/appraisal, by March 10, 2015, [some 3 years **before** the settlement by which he misrepresented he acquired these assets] , and, Sweet did not disclose that he

did not comply with this Court's February 26, 2015 Order. Not too difficult to understand: How does one disclose testimony, events and Orders from 2015, regarding property he claimed was not acquired until 2018.

Sweet did not disclose the receipt of a substantially better offer for the real property in 2014. No. 7 and Exhibit 8. He did not disclose his own failure to accept that offer. He did not disclose that he knew, in 2014, that the Debtor was being evicted in 2014. No. 10, Exhibit 6, PP 68, LL 21-25; 69, LL 2-3;LL 10-13; 70, LL 2-8. He did not disclose that he allowed the Debtor to continue to occupy the property from 2014 to 2018 without compensation to the bankrupt estate, and, he did not disclose that the real property had suffered significant waste. **AGAIN,** how does one disclose these material facts when simultaneously misrepresenting that the property was acquired in 2018 rather than 2014.

As with the personal property, Sweet did not disclose that he did not list, value or appraise the real property or document its value before agreeing to the "sweet heart" deal with Gentry, as required by the Trustee Handbook. Had he done so, the clearly inadequate value of the real property would have been evident; and, the fact that he was "giving away" the personal property for nothing would have been obvious. See, Exhibits 10, 11 and 12.

For the reasons stated, Trustee Sweet is not entitled to "Qualified Immunity" and his MOTION FOR SUMMARY JUDGMENT must be DENIED.

Respectfully Submitted:

/s/

MICHAEL E. TINDALL
18530 MACK AVE., STE 430
DETROIT, MI 48236
(248)250-8819
**Direct Email: met@comcast.net**

Dated: 10/11/22

IN RE:

  CHRISTOPHER D. WYMAN
                                    *Debtor(s),*

_____\

                                    CASE NO. 19-03018
                                    CHAPTER 7

## CERTIFICATE OF SERVICE
### (Modified for PEDUP)

  MICHAEL E. TINDALL, (hereinafter "Claimant"), Assignee of all

[100%] claims of BARBARA DUGGAN ($32,240.34), and a party in

interest holding a secured attorney lien ($34,100.00/$21,869.33) against the

proceeds of the Realty (hereinafter collectively "allowed secured claim"),

certifies that Claimant/Defendant/Counter Plaintiff's

## RESPONSE AND BRIEF OPPOSING DE 88
## TRUSTEE SWEET MOTION FOR SUMMARY JUDGMENT

was submitted for filing through the PEDUP program on October 11, 2022

and will be served on Plaintiff Trustee Sweet through the Court's ECF

System on the date and at the time so filed by the Clerk.

                              Respectfully Submitted,

                              /S/  MICHAEL E. TINDALL
                              MICHAEL E. TINDALL
Dated: 10/11/22               18530 MACK AVE., STE 430
                              DETROIT, MI  48236
                              (248)250-8819
                              **Direct Email: met@comcast.net**

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION - FLINT

IN RE:

CHRISTOPHER D. WYMAN,

            DEBTOR,

_____/

CASE NO. 12-33264-dof
CHAPTER 7
HONORABLE DANIEL S. OPPERMAN

Samuel D. Sweet, Trustee,
            Plaintiff,

v

Barbara Duggan,
            Defendant.

_____/

Adversary No. 19-03018-dof

## ANSWER TO AFFIRMATIVE DEFENSES AND COUNTER-CLAIM

**NOW COMES** Plaintiff/Trustee, Samuel D. Sweet, by and through his counsel, Samuel D. Sweet, PLC, and hereby in answer relative to the affirmative defenses of the Defendant/Counter-Plaintiff hereby states as follows:

1. Neither admit nor deny as the statement contains a legal conclusion.

2. Neither admit nor deny as the statement contains a legal conclusion.

3. Neither admit nor deny as the statement contains a legal conclusion.

4. Neither admit nor deny as the statement contains a legal conclusion.

5. Neither admit nor deny as the statement contains a legal conclusion.

6. Neither admit nor deny as the statement contains a legal conclusion.

7. Neither admit nor deny as the statement contains a legal conclusion.

8. Neither admit nor deny as the statement contains a legal conclusion.

## COUNTER COMPLAINT

**NOW COMES** Counter-Defendant/Trustee, Samuel D. Sweet, by and through his counsel, Samuel D. Sweet, PLC, and hereby in answer relative to the counter complaint of the Defendant/Counter-Plaintiff  states as follows:

1. Neither admit nor deny and leaves Counter-Plaintiff to its proofs.

2. Neither admit nor deny as the statement requires a legal conclusion.

3.      Neither admit nor deny as the statement requires a legal conclusion.

4.      Neither admit nor deny as the statement requires a legal conclusion.

## COUNT I: DECLARATORY JUDGMENT

5.      Admit.

6.      Admit as the statute speaks for itself.

7.      Neither admit nor deny as the statute speaks for itself.

8.      Admit as the statute speaks for itself.

9.      Neither admit nor deny as the statement requires a legal conclusion.

10.     Neither admit nor deny as the statement requires a legal conclusion.

**WHEREFORE**, Counter-Defendant/Trustee respectfully requests this Honorable Court deny the requested Counter Claim and dismiss said claim forthwith.

## COUNT II: BREACH OF FIDUCIARY DUTY AND WASTE

11.     Admit.

12.     Admit.

13.     Neither admit nor deny and leaves Counter-Plaintiff to its proofs.

14.     Neither admit nor deny and leaves Counter-Plaintiff to its proofs.

15.     Neither admit nor deny and leaves Counter-Plaintiff to its proofs.

16.     Neither admit nor deny and leaves Counter-Plaintiff to its proofs.

17.     Admit.

18.     Denied as the Trustee had no ability to liquidate the property until an Adversary Proceeding was resolved in which the estate had sued Michelle Pichler who was actually the owner of record of said property.

19.     Neither admit nor deny and leaves Counter-Plaintiff to its proofs.

20.     Neither admit nor deny as the testimony of Trustee Sweet speaks for itself.

21.     Denied.

22.     Denied.

23.     Denied.

**WHEREFORE**, Plaintiff/Trustee respectfully requests this Honorable Court deny the requested relief by the Defendant/Counter-Plaintiff and dismiss said claim forthwith.

<u>**COUNT III: ABANDONMENT 11 USC 554(b)**</u>

24.     Admit.

25.     Admit.

26.     Neither admit nor deny and leaves Counter-Plaintiff to its proofs.

27.     Neither admit nor deny and leaves Counter-Plaintiff to its proofs.

28.     Neither admit nor deny and leaves Counter-Plaintiff to its proofs.

29.     Neither admit nor deny and leaves Counter-Plaintiff to its proofs.

30.     Neither admit nor deny as the statute speaks for itself.

31.     Neither admit nor deny as the statement requires a legal conclusion.

32.     Neither admit nor deny as the statement requires a legal conclusion.

33.     Neither admit nor deny as the statement requires a legal conclusion.

34.     Denied.

35.     Denied.

**WHEREFORE**, Plaintiff/Trustee prays this Honorable Court deny and dismiss this Counter Claim by the Plaintiff forthwith.

Respectfully submitted,

SAMUEL D. SWEET, PLC

By:   /s/ Samuel D. Sweet
Samuel D. Sweet (P48668)
Attorneys for Trustee
P.O. Box 757
Ortonville, MI 48462-0757
(248) 236-0985
ssweet@trusteesweet.us

Dated:   4/9/2019

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION - FLINT

IN RE:

CASE NO. 12-33264-dof

CHRISTOPHER D. WYMAN,                CHAPTER 7
                                      HONORABLE DANIEL S. OPPERMAN

        DEBTOR,
_____/

Samuel D. Sweet, Trustee,             Adversary No. 19-03018-dof
        Plaintiff,

v

Barbara Duggan,
        Defendant.
_____/

## CERTIFICATE OF SERVICE

*The undersigned hereby certifies that a copy of the following:*

        Answer to Affirmative Defenses and Counter Claim

*was electronically served on the 9th day of April, 2019, upon:*

Dennis L. Perkins                     Elie Bejjani
Attorney for Debtor                   Attorney for Barbara Duggan
bkperk@sbcglobal.net                  elie@bejjanilaw.com
(Via ECF Only)                        (Via ECF Only)

*was served via First Class Mail, pre-paid postage, on this 9th day of April, 2019, addressed as follows:*

Christopher D. Wyman                  Michael E. Tindall
6241 Grand River Road                 18530 Mack Ave., Ste. 430
Brighton, MI 48114                    Detroit, Michigan 48236


     /s/ Jessica A. Will_____
     SAMUEL D. SWEET, PLC
     Jessica A. Will, Legal Assistant
     P.O. Box 757
     Ortonville, MI 48462-0757
     (248) 236-0985
     jwill@trusteessweet.us

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

In The Matter Of:

CHRISTOPHER D. WYMAN,

Debtor.

In Bankruptcy

Case No. 12-32264-DOF
Chapter 7
HON. DANIEL S. OPPERMAN

_____/

**CHAPTER 7 TRUSTEE, SAMUEL D. SWEET'S,**
**REPORT OF SALE OF**
**1011 JONES ROAD, HOWELL, MICHIGAN 48855**

Samuel D. Sweet, Trustee hereby states as follows:

1. I am the duly appointed Trustee of the above matter.
2. That an Amended Order Granting Trustee's Motion to Sell Certain Real Property and Settle and Resolve Various Adversary Proceedings in this Matter was entered by this Court on March 13, 2019 (Docket No. 212) authorizing the sale of the real property located at 1011 Jones Road, Howell, Michigan 48855.
3. On May 29, 2019, the Trustee conducted a real estate closing on this asset of the Debtor.
4. The only offer was from Diana Kaye Gentry in the amount of $65,000.00 and was accepted by the Trustee.
5. At closing, based on the closing date, the estate received a tax credit of $607.98 for taxes accrued through the date of sale.
6. Thus, the total paid by the Purchaser was $65,607.98.
7. After deducting the costs of sale, $32,288.91 for Judgment Lien Payoff, and $31,877.64 for delinquent taxes the bankruptcy estate netted $27.18. See attached Seller's Settlement Statement.

Dated: May 30, 2019

/s/ SAMUEL D. SWEET (P48668)
Chapter 7 Trustee
P.O. Box 757
Ortonville, MI 48462
(248) 236-0985
trusteesweet@hotmail.com

# Seller's Settlement Statement

Select Title Company
6870 Grand River Ave
Suite 300
Brighton, MI 48114
Phone: (810)220-1370   Fax: (810)220-2094

| | |
|---|---|
| **Settlement Date:** | 05/29/2019 |
| **Escrow officer/Closer:** | Dawn M. Grooms |
| **Order Number:** | 47-181464-B |
| **Buyer:** | Diana Kaye Gentry<br>193 S. Hughes<br>Howell, MI 48843 |
| **Seller:** | Samuel D. Sweet, Bankruptcy Trustee for the Estate of Christopher D. Wyman<br>Bankruptcy Case No. 12-32264-dof<br>653 N. Lapeer Rd<br>Oxford, MI 48371 |
| **Property location:** | 1011 W. Jones Road<br>Howell, MI 48855 |

| | Seller Debit | Seller Credit |
|---|---|---|
| **Financial Consideration** | | |
| Sale Price of Property | | 65,000.00 |
| **Prorations/Adjustments** | | |
| City/Town Taxes 05/30/19 - 07/01/19 | | 147.44 |
| County Taxes 05/30/19 - 12/01/19 | | 460.54 |
| **Escrow/Title Charges** | | |
| Closing Fee to Select Title Company | 200.00 | |
| Judgment Lien payoff theu 5/22 to Bejjani Law PLLC | 32,288.91 | |
| Owner's Title Insurance to Select Title Company<br>Coverage: 65,000.00<br>Premium: 595.25<br>Version:  ALTA Owner's Policy of Title Insurance (6-17-06) | 595.25 | |
| **Recording Charges** | | |
| Recording Fees-Deed to Register of Deeds | 30.00 | |
| Record Sale order to Livingston County Register of Deeds | 30.00 | |
| Transfer Taxes to Register of Deeds | 559.00 | |
| **Miscellaneous Debits/Credits** | | |
| Delinquent taxes to Samuel D. Sweet, Bankruptcy Trustee for the Estate | 31,877.64 | |
| **Subtotals** | 65,580.80 | 65,607.98 |
| **Balance Due TO Seller** | 27.18 | |
| **TOTALS** | 65,607.98 | 65,607.98 |

Seller

Samuel D. Sweet, Bankruptcy Trustee for the
Estate of Christopher D. Wyman Bankruptcy Case
No. 12-32264-dof

BY: _____

_____
Select Title Company
Settlement Agent

# EXHIBIT NO: 2

## QUIT CLAIM DEED

**EDWARD LINCK, a single man "GRANTOR"** whose address is 1825 Andover Rd. *1829 Hanover* Ann Arbor MI Quitclaims and assigns to: **TRUSTEE MICHAEL A. MASON, Trustee of the Bankruptcy Estate of Cristopher D. Wyman, E. D. Michigan Case No. 12-32264, "GRANTEE"**, whose address is: c/o MICHAEL E. TINDALL ESQ., P.O. Box 46564, Mount Clemens MI 48046 the premises in the city of Howell, County of Livingston, state of Michigan, described in attached Exhibit 1, commonly known as 1101 Jones Rd., Howell MI 48843, Tax ID#: 4702-24-300-07, together with all right title and interest in and to a certain MORTGAGE thereon, dated October 17, 2009, executed by MICHELLE PICHLER, a single woman, and recorded at 2010R-022922, Livingston County Records, together with singular the tenements, hereditaments and appurtenances thereunto belonging or in anywise appertaining, for the sum of: $1.00 and other good and valuable consideration including the release and dismissal of all claims between them in Case No. 12-03348, U.S. Bankruptcy Coourt, E.D. Michigan.

Dated: this 20th day of June , 2014

Signed:

_____          _____
                                                                     EDWARD LINCK

**STATE OF MICHIGAN)**
**LIVINGSTON COUNTY)**

The person(s) known to me to be EDWARD LINCK, personally appeared before me, a notary public in and for the above named county, and executed and acknowledged the foregoing document on 20th June, 2014, of their/his/her own free act and deed.

MARY FIGURSKI
NOTARY PUBLIC
LIVINGSTON COUNTY          _____          My commission expires: 12/10/2018
STATE OF MICHIGAN          Notary Public, Livingston County
MY COMM EXPIRES 12/10/2018
ACTING IN LIVINGSTON COUNTY

When recorded, return to: MICHAEL E. TINDALL, ESQ., P.O. BOX 46564, MT. CLEMENS MI 48946

**THIS TRANSFER EXEMPT PURSUANT TO MCL 207.526(a), (c), (d).**

EXHIBIT "A"

Part of the Southwest 1/4 of Section 24, Town 4 North, Range 4 East, and part of the Northwest 1/4 of Section 25, Town 4 North, Range 4 East, more particularly described as follows: Commencing at the Southwest corner of said Section 24; thence North 03 degrees 46 minutes 16 seconds West 1298.63 feet (previously recorded as North 00 degrees 45 minutes 00 seconds West 1298.33 feet); thence along the centerline of Jones Road (66 foot wide Right of Way), North 88 degrees 04 minutes 34 seconds East 183.87 feet (previously recorded as South 89 degrees 29 minutes 00 seconds East 184.60 feet) to the Point of Beginning of the parcel to be described; thence continuing along said line North 88 degrees 04 minutes 34 seconds East (previously recorded as South 89 degrees 25 minutes 00 seconds East) 331.21 feet; thence South 01 degree 58 minutes 26 seconds East 1324.84 feet; thence South 88 degrees 10 minutes 34 seconds West 331.21 feet; thence North 01 degree 58 minutes 26 seconds West 1324.26 feet to the Point of Beginning, subject to the rights of the public over the existing Jones Road. Also subject to any other easements or restriction of record.

1011 East Jones Road                    Tax I.D. No.: 02-24-300-007

# EXHIBIT NO: 3

## BILL OF SALE FOR PERSONAL PROPERTY
### WITHOUT WARRANTY

STATE OF MICHIGAN)

COUNTY OF _____ )

1829 Hanover

    EDWARD LINCK, (Seller), whose address is ~~1825 Andover~~ Rd., Ann Arbor MI , in consideration of the payment of the sum of full and complete settlement of all claims asserted against him in that certain Bankruptcy Adversary proceeding known as *MASON etal V. PICHLER, et al, Adv. Case No. 12-03348,* now pending before the U.S. Bankruptcy Court, Eastern District MI, and, the execution of that certain Settlement Agreement of even date herewith, receipt and execution of which is hereby acknowledged, does hereby sell, convey and forever transfer to MICHAEL A. MASON, (Trustee), in his capacity as Trustee of the Bankruptcy Estate of Christopher A. Wyman, Case No. 12-32264, and to his successors and assigns, the following described personal property:

### SEE ATTACHED

**SELLER'S INTEREST IN THE DESCRIBED PROPERTY IS SOLD "AS-IS" WITHOUT ANY WARRANTIES, EXPRESS OR IMPLIED, AS TO THE CONDITION OF SUCH PROPERTY. FURTHER, WHILE SELLER REPRESENTS THAT SAID PROPERTY DID EXIST AND HAS BEEN IN THE POSSESSION AND CONTROL OF CHRISTOPHER A. WYMAN, SELLER MAKES NO REPRESENTATION OR WARRANTY THAT THE PROPERTY CONTINUES TO EXIST AT THE DATE HEREOF, OR, AS TO ITS PRESENT LOCATION.**

This Bill of Sale shall be effective as to the transfer of all property listed herein as of this 20th

day of June, 2014.

_____
EDWARD LINCK

### ACKNOWLEDGMENT

Subscribed and sworn before me this 20 day of June, 2014.

_____
Notary Public, Livingston County MI
My commission expires: 12|10|2018

MARY FIGURSKI
NOTARY PUBLIC
LIVINGSTON COUNTY
STATE OF MICHIGAN
MY COMM EXPIRES 12/10/2018
ACTING IN LIVINGSTON COUNTY

# EXHIBIT NO: 1

| NAME AND ADDRESS OF OWNER | DESCRIPTION AND VALUE OF PROPERTY | LOCATION OF PROPERTY |
|---|---|---|
| Michelle J. Pichler<br>1011 Jones Rd.<br>Howell, MI 48855 | 2000 Ford E350 Cube Van; Value $2500.00 | Debtor's Residence |
| Michelle J. Pichler<br>1011 Jones Rd.<br>Howell, MI 48855 | 2004 Pontiac Montana; Value $ | Debtor's Residence |
| Gentry Sales<br>6241 W. Grand River Rd.<br>Brighton, MI 48114 | Mortar mMixer; Two 60 ft. Modular Carriers;<br>Dell Computer and Monitor; Misc.<br>Perfectaline Equipment; Misc. Axles;<br>Ladders, Pic & Scaffold; Blower and<br>Trimmer; Michigan Laser Transit;<br>Craftsman Generator | 1011 Jones Rd., Howell, MI 48855 |
| Edward Linck<br>1829 Hanover Rd.<br>Ann Arbor, MI 48103 | JCB Backhoe; 16 ft. Tandem Trailer; Deere<br>Tractor & Yellow Brush Hog; Skid Steer &<br>Implements; Dresser Dozer TD7G; Tandem<br>Landscape Trailer; Hudsone Trailer | 1011 Jones Rd., Howell, MI 48855 |
| James C. Evans<br>Allan's Park<br>Fowlerville, MI 48836 | Various Air Nailers', Various Hand Tools;<br>Sand Blaster; Jacks & Sanchions; Miter<br>Saws-Bosch & Rigid; Drill Press; Blue<br>Portable Compressor; Yellow Drywall<br>Machine; Ladders & Two Ladder Jacks;<br>Box Storage Trailer; Trim Metal Break;<br>Dump Cart, Two Salvage Engines | 1011 Jones Rd., Howell, MI 48855 |
| Brian Lauer<br>Sunrise Park Dr.<br>Howell, MI 48843 | Power Washer; Dirt Bike | 1011 Jones Rd., Howell, MI 48843 |
| Nancy Saunders<br>Golfview Dr.<br>Brighton, MI 48114 | Hammond Organ; Capehart Radio; Laptop<br>Computer (needs repairs), Various<br>furnishings for refinish | 1011 Jones Rd., Howell, MI 48855 |
| Susan Linck<br>1829 Hanover Rd.<br>Ann Arbor, MI 48103 | Misc. Hoop Building Parts; New Holland<br>Utility Tractor; Brush Hog Brand Flail<br>Mower; Misc. Fensing Parts. | 1011 Jones Rd., Howell, MI 48855 |

---

**15.   Prior address of debtor**

None ☐  If the debtor has moved within three years immediately preceding the commencement of this case, list all premises which the debtor occupied during that period and vacated prior to the commencement of this case. If a joint petition is filed, report also any separate address of either spouse.

| ADDRESS | NAME USED | DATES OF OCCUPANCY |
|---|---|---|
| 1011 Jones Rd.<br>Howell, MI 48855 | Chris Wyman | 07/01/2009 to 05/01/2010 |

---

**16.   Spouses and Former Spouses**

None ☒  If the debtor resides or resided in a community property state, commonwealth, or territory (including Alaska, Arizona, California, Idaho, Louisiana, Nevada, New Mexico, Puerto Rico, Texas, Washington, or Wisconsin) within eight years immediately preceding the commencement of the case, identify the name of the debtor's spouse and of any former spouse who resides or resided with the debtor in the community property state.

NAME

Software Copyright (c) 1996-2012 CCH INCORPORATED - www.bestcase.com
Best Case Bankruptcy

# STATE OF MICHIGAN

## CERTIFICATE OF TITLE

| VEHICLE IDENTIFICATION NUMBER | YEAR | MAKE | MODEL | BODY STYLE |
|---|---|---|---|---|
| 1GCHK24U24E255649 | 2004 | CHEVROLET | SILVERADO | PICKUP |

| TITLE NUMBER | ISSUE DATE | ODOMETER | BRAND/LEGEND |
|---|---|---|---|
| 230Z2240446 T | 08/15/2011 | 148625 | |

| WEIGHT/FEE CATEGORY | ODOMETER BRAND |
|---|---|
| 26 | *ACTUAL MILEAGE |

OWNER(S) NAME AND ADDRESS
CHRISTOPHER DAVID WYMAN
6241 GRAND RIVER RD
BRIGHTON MI 48114

NO SECURED INTEREST ON RECORD

## Title Assignment by Seller

State and federal laws require the seller(s) to indicate mileage when ownership is transferred. Failure to complete or providing false information may result in civil liability and/or imprisonment. ANY ALTERATION, ERASURE, FALSE STATEMENT, FORGERY OR FRAUD VOIDS THIS TITLE AND IS A CRIME.

**Completed by Seller**

I warrant that the ownership of the vehicle described on Certificate of Title has been transferred to the following purchaser(s) and is free of all previous liens.

| Printed Name of Purchaser(s) | | Date of Sale | Selling Price |
|---|---|---|---|
| Purchaser's Street Address | City | State | Zip |

I/we certify that the odometer reading is ☐☐☐☐☐☐ ☒ and that to the best of my knowledge the odometer reading is:

☐ actual mileage  ☐ not actual mileage - WARNING ODOMETER DISCREPANCY  ☐ exceeds mechanical limits of odometer (odometer has rolled over)

| Signature of Seller(s)  X | Printed Name of Seller(s) | | |
|---|---|---|---|
| Seller's Street Address  X | City | State | Zip |

**Completed by Buyer**

A $15.00 Late Fee is Due for Failure to Apply for Title Within 15 Calendar Days of Date of Assignment

"I am aware of the above odometer certification made by the seller(s)."

| Signature of Purchaser(s)  X | Printed Name of Purchaser(s) |
|---|---|

NEW LIENHOLDER INFORMATION: This information below must be on application for title and presented to the Michigan Department of State.

| Secured Party | Address |
|---|---|

The State of Michigan, Michigan Department of State certifies that this certificate of title is issued in compliance with the laws of Michigan and constitutes prima facie proof of ownership. Further, on the date of title issuance, the described vehicle was subject to the security interest(s) listed above.

MAILING ADDRESS

CHRISTOPHER DAVID WYMAN
6241 GRAND RIVER RD
BRIGHTON MI 48114

G71596555

**NOTICE TO SELLERS**
Sellers must keep a receipt or photocopy of the reassigned title for their records for 18 months or accompany the purchaser to a Secretary of State Office.

DO NOT ACCEPT TITLE SHOWING ANY ERASURES, ALTERATIONS OR MUTILATIONS

EXHIBIT 1

1989 DRESSER TD7G TRACTOR   S/N 441002GK005163

1986 JCB 1400 B LOADER          S/N 14 BT 408632175

1999 JCB 1105 STEER LOADER   S/N SLP105SAXE 0804082

LOWE TRENCHER                      S/N CD 02752

JOHN DEERE AUGER               S/N KRPA30X36036B

SKID STEER HYDRAULIC HAMMER   MODEL H 2XA

JOHN DEERE 790 TRACTOR       S/N LVG790G190431

Crest Housing, Inc.
6241 W. Grand River • Brighton, Mi 48114
(517)548-00001 fax (517)548-4846

October 16, 2003

## BILL OF SALE

In consideration of the sum of $1.00, the undersigned hereby sells, conveys and transfers the following items to DIANA KAYE GENTRY, to be delivered to 187 So Hughes Road, Howell, Mi, , on or before Oct. 18, 2003 free & clear of all leins and attachments. There is an exsisting blanket lein placed by First National Bank, 101 Grand River, Howell, Michigan on all items listed , with the exception of the Country Clipper mower and deck, which undersigned shall assume full responsibility for. Diana Kaye Gentry will assume the balance on an installement contract #01751001 with New Holland Credit, PO Box 7247-0170, Philadelphia, Pa which includes a lein on the Country Clipper mower & deck. All titles as applicable shall be signed over to Diana Kaye Gentry.

Country Clipper mower s/n#7893

Mower deck s/n#10107
2001 US Cargo trailer #4X4400H28110500
Lawn implements
    Pull cart (have)
    Roller
    Seeder
Weed whip (have)
Alluminum Break (have)
Scaffolding (have)
Power Washer (have)
Motar mixer (have)
taster (have)
Gutter Machine & all inventory (have)
John Deere tractor,
2001 Jerr trailer #48XUL12171S0224
Implements:
    Finish mower
    Brush hog
    Blade  (have)
    York rake
    Box scrapper (have)
Jet skies & trailer (have)
Green trailer (have)
Laser transit

Set equipment (have)
Cement sheets (have)

Complete set of Craftsman hand tools
  socket set, wrenches, screwdrivers,
  framing hammers, etc.)
1 bolt cutter
(2) 32' extension ladders
(1) each of lawn tools (barn shovel,shovel,
    landscape rake,etc)
(2) gas cans
(2) Kersone cans
Rolling measuring tape
Set equipment (have)
Cement shoots (have)
Cement tools (have)
Concrete saw & cart
Compactor (Wacker Packer)
Commercial fan
2" trash pump
1 Hammer drill
Set of gutter tools
Propane heater & 30# tank
1 nail gun
Sears compressor
Circular saw
Sears 16 volt drill
Router
Siding stapler
Power paint sprayer
Pipe cutter
(2) pry bars)

CD WYMAN INC

Christopher D. Wyman, President

Christopher D. Wyman, Individually

State of Michigan
County of Livingston

DELORES A. GOSS
Notary Public Livingston County, Michigan
My Commission Expires October 14, 2006

On the 16 day of October              , 2003, personally appeared Christopher D. Wyman

_Delores A. Goss_  Notary Public    My commission expires: 10-14-06

19-03018-dof    Doc 89    Filed 10/12/22    Entered 10/12/22 10:08:27    Page 30 of 116

12-32264-dof    Doc 291    Filed 10/15/19    Entered 10/15/19 11:45:22    Page 26 of 29

# EXHIBIT NO: 4

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

IN RE:

    **CHRISTOPHER D. WYMAN**
        *Debtor(s),*

                       \

MICHAEL A. MASON, US
BANKRUPTCY TRUSTEE
And STATE COURT JUDGMNT
CREDITOR BARBARA DUGGAN
           **Plaintiffs**

v.

MICHELLE PICHLER, a/k/a MICHELLE GENTRY;
and, EDWARD LINCK
           **Defendants.**

                   \

**CASE NO. 12-32264**
 **CHAPTER 7**
**HON: D. S. OPPERMAN**

 

**ADVERSARY NO.12-03348**

TINDALL  LAW
Attorneys for Creditor B. DUGGAN
And TRUSTEE MICHAEL A. MASON
BY: MICHAEL E. TINDALL P29090
P.O. BOX 46564
MOUNT CLEMENS, MI  480436
(248) 250-8819
Direct Email: met@comcast.net

                   \

## STIPULATED CONSENT JUDGMENT WITHOUT COSTS

In accordance with the Stipulation of Plaintiffs TRUSTEE MICHAEL A.

MASON and BARBARA DUGGAN, and DEFENDANT EDWARD LINCK, by and

through their respective counsel, pursuant to the terms of a certain SETTLEMENT

AGREEMENT for the satisfaction thereof executed by and between the parties,

**JUDGMENT** by **CONSENT** is hereby entered against DEFENDANT EDWARD

LINCK, without costs, and, by signature of counsel for TRUSTEE MASON, is hereby

acknowledged as fully satisfied.

Signed on June 25, 2014

                       /s/ Daniel S. Opperman
                       Daniel S. Opperman
                       United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION - FLINT

IN RE:

CHRISTOPHER D. WYMAN,

        DEBTOR,

_____/

CASE NO. 12-32264-dof
CHAPTER 7
HONORABLE DANIEL S. OPPERMAN

### TRUSTEE'S MOTION TO SELL CERTAIN REAL PROPERTY AND SETTLE AND RESOLVE VARIOUS ADVERSARY PROCEEDINGS IN THIS MATTER

**NOW COMES** Trustee, Samuel D. Sweet, ("Trustee"), by and through his counsel, Samuel D. Sweet, PLC, and hereby states as follows:

1.    On May 24, 2012 Christopher D. Wyman ("Debtor") filed a Voluntary Bankruptcy under Chapter 7 of the Bankruptcy Reform Act of 1978, as Amended, Title 11 ("Petition Date").

2.    Subsequent of the aforementioned bankruptcy filing, Samuel D. Sweet ("Trustee") was appointed the duly qualified and acting Trustee in this matter.

3.    Among the assets of this case include an adversary proceeding against Michelle Pichler adversary proceeding no. 12-03348-dof. In said adversary proceeding it was settled and resolved whereby Michelle Pichler transferred certain real estate to the estate being 1011 Jones Road, Howell, Michigan, Tax Id No. 470224300007.

4.    The Trustee prepares to sell said real estate to Gentry Sales, Inc. For the full price of $65,000.00.

5.    This matter is designed to resolve and relinquish all adversary proceedings filed on behalf of this bankruptcy estate against Christopher Wyman, Diana Gentry, and any and all other parties included within this matter.

6.    The Trustee believes that a sale of the Property is in the best interest of the estate and creditors.

7.    The Trustee believes this settlement is in the best interest of this estate and will resolve this entire case.

**WHEREFORE**, Trustee prays this Honorable Court enter the Order attached hereto as Exhibit "A" and for such other and further relief this Court deems just and proper.

Respectfully submitted,

SAMUEL D. SWEET, PLC

By:___/s/ Samuel D. Sweet_____
Samuel D. Sweet (P48668)
Attorneys for Trustee
P.O. Box 757
Ortonville, MI 48462-0757
(248) 236-0985
ssweet@trusteesweet.us

Dated:___6/7/2018___

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION - FLINT**

IN RE:

CHRISTOPHER D. WYMAN,

           DEBTOR,

_____/

CASE NO. 12-32264-dof
CHAPTER 7
HONORABLE DANIEL S. OPPERMAN

## ORDER GRANTING TRUSTEE'S MOTION TO SELL CERTAIN REAL PROPERTY AND SETTLE AND RESOLVE VARIOUS ADVERSARY PROCEEDINGS IN THIS MATTER

This matter having come before this Honorable Court based upon the Trustee's Motion to Sell Certain Real Property and Settle and Resolve Various Adversary Proceedings in this Matter; no objections having been filed to the Trustee's Motion; or any filed objection having been resolved; notice having been provided properly, pursuant to Rule 2002 and 9019 of the Federal Rules of Bankruptcy Procedures; and the Court being fully advised in the premises;

**IT IS HEREBY ORDERED** that Trustee's Motion is granted and he is authorized to sell the real property located at 1011 Jones Road, Howell, Michigan, Tax Id No. 470224300007, to Gentry Sales, Inc. for the gross sum of $65,000.00.

**IT IS FURTHER ORDERED** that the Trustee is authorized to pay outstanding real estate taxes, tax prorations, transfer taxes, and normal closing costs charged to the Seller.

**IT IS FURTHER ORDERED** that the following Adversary Proceedings shall be and are hereby dismissed:

    1)    12-3341-dof, Mason v. Wyman;

    2)    12-3340-dof, Mason v. Gentry;

    3)    12-3347-dof, Mason v. Gentry; and

    4)    14-3017-dof, Mason v. Gentry.

HONORABLE DANIEL S. OPPERMAN
UNITED STATES BANKRUPTCY JUDGE



# LIVINGSTON COUNTY ASSOCIATION OF REALTORS® STANDARD PURCHASE AGREEMENT

PURCHASER (legal name) _____ **GENTRY SALES INC** _____ Marital Status _____

PURCHASER (legal name) _____ Marital Status _____

PURCHASER'S Current Address __**193   S HUGHES**_____ **HOWELL**     **MI**    **48843**

SELLING OFFICE ___**LIVINGSTON REAL ESTATE**____ Phone ____**5175480001**____ Office ID ____**191474**

SELLING AGENT _____**DIANA GENTRY**_____ Phone ____**5175480001**____ License# ____**191474**

LISTING OFFICE _____**LIVINGSTON RE**_____ Phone ____**5175480001**____ Office ID ____**191474**

LISTING AGENT _____**DIANA GENTRY**_____ Phone ____**5175480001**____ License# _____

**1. THE PURCHASER** hereby offers and agrees to purchase, subject to easements and restrictive covenants of record, the following property in the

☐CITY ☐VILLAGE ☒TOWNSHIP of _____**COHOCTAH**_____, County of _____**LIVINGSTON**_____,

Michigan described as follows: __**Part of SW 1/4 of Sec 24, T4N, R4E (Full legal attaced and on file)**__
_____ also

known as __**1011   JONES ROAD**_____ **Howell**___ Tax ID#____**4702-24-300-007**___ together with all fixtures and appurtenances in or on the premises (unless specifically excluded herein) including, if any, lighting fixtures, shades, blinds, drapery/curtain and drapery/curtain hardware and rods, attached  mirrors and all bathroom mirrors, attached generators, attached humidifier, ventilating fixtures, screens, storm doors and windows, garage door openers and transmitters, water softener (rental units excepted) and water treatment systems, built in appliances, heating unit including wood stove and fireplace gas logs, mail box, awnings, all TV antennae, landscaping, flagpole, all hardwired audio/security systems and related equipment, central vacuum and attachments, as well as the following personal property for which a bill of sale shall be given.

Included: **Appliances on site as of 5-17-18**_____

Excluded: _____

and to pay therefore the sum of _____**Sixty-Five Thousand**_____ DOLLARS ($_____**65,000.00**_____).

Unless otherwise noted, Seller shall deliver a warranty deed conveying marketable title to Purchaser at closing.

**2. THIS OFFER IS MADE SUBJECT TO FINANCING TERMS AND SATISFACTORY COMPLETION OF THE FOLLOWING CONDITIONS AS MARKED.**

a) ☐CASH SALE: Payment of purchase money to be made by wire transfer or equivalent funds.

b) ☐CASH SALE WITH NEW MORTGAGE: This Purchase Agreement is contingent upon Purchaser being able to secure a

☐Conventional        ☐FHA        ☐203K        ☐VA        ☐Rural Development        ☐Seller Financed

mortgage in the amount of $_____ OR _____% of sale price for a term of _____ years and pay

$_____ OR _____% of sale price down, plus mortgage costs, prepaid items and adjustments in cash.

Purchaser's Initials _____   Seller's Initials _____   Page 1 of 6

©2016 Livingston County Association of REALTORS®
© 2018 Realcomp II Ltd. Unauthorized copying of this contract is prohibited.

InstanetFORMS

Purchaser further agrees to apply for such mortgage within _____ calendar days from acceptance of this Purchase Agreement at Purchaser's own expense and shall comply with all requirements of said lending institution in a timely manner. If a loan approval from the lending institution cannot be obtained at no fault of the Purchaser within _____ days from the date of acceptance of this Purchase Agreement, this Purchase Agreement may be declared null and void by the Seller and Deposit shall be returned to Purchaser. Receipt of loan approval from the Purchaser's lending institution within time limit will eliminate this contingency.

c) ☐OTHER: See attached LCAR Financing Addendum

**3. EARNEST MONEY DEPOSIT** The Broker is hereby authorized to present this offer and the Deposit of $ _____ **1,000.00** _____ :
☐CASH  ☐CHECK # _____  ☐OTHER _____ .

To be held by ☒Selling Broker OR ☐ _____ **upon bankruptcy court approval of P/A** _____ , which deposit shall be applied to the purchase price at closing.

If held by Selling Broker, Broker shall comply with the Michigan Occupational Code and related rules.

If the sale is not consummated, any release of the Purchaser's Deposit will require a mutual release of the Purchase Agreement signed by all parties.

**4. POSSESSION (Check one box below)**

☒To be given at closing

☐To be given on or before _____ days after closing subject to the rights of tenants, if any. From the day after closing through the day of vacating the property as agreed, Seller shall pay as indicated _____ per day. The Escrow Agent shall retain from the amount due to Seller at closing the amount equal to _____ days of said occupancy charge, paying to Purchaser the amount due and returning to Seller the unused portion as determined by date property is vacated and keys surrendered to Listing Broker. The parties acknowledge that the Brokers and/or Escrow Agent have no obligation implied or otherwise for seeing that the property is vacated on the date specified or for the condition of the property, and may be acting only as an Escrow Agent holding the occupancy deposit. From the date of closing, Purchaser will maintain hazard insurance on the property and Seller will maintain insurance for liability and Seller's personal property. Purchaser is not responsible for damage or injury to Seller or Seller's personal property. Seller will not be required to pay for losses covered by Purchaser's hazard insurance policy. However, Seller will pay the deductible on Purchaser's hazard insurance for any claims made while Seller is in possession which are attributable to Seller's acts or omissions.

☐See attached LCAR Occupancy Addendum

**5. PROPERTY INSPECTION(S)** Purchaser shall have the option to inspect and examine the property at Purchaser's expense. This contingency to be removed on or before _____ 0 _____ days after acceptance of this Purchase Agreement. Purchaser's examination may include, but is not limited to, inspections and tests relating to building structure, mechanical systems, environmental items, water, septic, pest or any other matter Purchaser may deem necessary for Purchaser's intended use. Purchaser shall restore the property to its prior condition after examination. If Purchaser is not satisfied with the results of any examination for any reason during the inspection period, Purchaser shall notify Seller in writing that Purchaser (a) declares this agreement null and void and Deposit shall be returned to Purchaser or (b) request Seller to make specific repairs to remedy claimed defects with a copy of any report that pertains to the request. Purchaser's failure to notify Seller of Purchaser's dissatisfaction within the inspection period shall constitute a waiver of this inspection contingency and Purchaser shall accept the property AS IS.

If Seller is notified during the inspection period of Purchaser's dissatisfaction and request for specific repairs, Seller shall notify Purchaser in writing within _____ 0 _____ days that Seller (a) will repair or provide for repair to eliminate the defects claimed or (b) is unwilling to repair or provide for repair. If Seller declares unwillingness to repair or provide for repair, Purchaser shall have _____ days from receipt of Seller's notice of unwillingness to (a) accept property AS IS or (b) declare the Purchase Agreement null and void and Deposit shall be returned to Purchaser.

PURCHASER ACKNOWLEDGES THAT BROKER/AGENT HAS RECOMMENDED PURCHASER OBTAIN AN INSPECTION OF THE PROPERTY.

☒Purchaser does not choose to inspect or examine the property and accepts the property AS IS.

Purchaser's Initials _____  Seller's Initials _____  Page 2 of 6

©2016 Livingston County Association of REALTORS®

InstanetFORMS

**6. TITLE INSURANCE** Seller shall provide Purchaser at Seller's expense an owner's policy of title insurance from a title company of Seller's choice in the amount of the purchase price. Said policy to be: (Check one box below)

☐With Standard Exceptions

☒Without Standard Exceptions       (if chosen owner's policy is unavailable then a With Standard Exceptions Policy shall be issued)

☐Expanded Coverage       (if chosen owner's policy is not available then a Without Standard Exceptions Policy shall be issued)

(Check one box below)

☐Seller       ☐Purchaser       to pay cost of survey if required to obtain chosen owner's policy.

Seller will apply for a commitment for title insurance within 7 calendar days after the date of acceptance of this Purchase Agreement. Upon receipt of the commitment, Purchaser shall have 7 calendar days to provide Seller with written notice of any objections. Seller will then have 30 days after receiving written notice to remedy the claimed defects. If the Seller is unable or unwilling to remedy the defects within 30 days, this Purchase Agreement shall terminate and the Deposit shall be returned to Purchaser or the Purchaser may waive the defect and complete this transaction.

When applicable, Purchaser may obtain a loan policy from a title company of Purchaser's choice.

**7. DEFAULT** Failure to perform any obligation of this Purchase Agreement by Seller or Purchaser shall constitute default. If Purchaser defaults, Seller may, at Seller's option, terminate the Purchase Agreement and pursue all available legal and equitable remedies or seek forfeiture of the Deposit as liquidated damages. If Seller defaults, Purchaser may pursue all available legal and equitable remedies and may also terminate the agreement and seek a refund of the Deposit.

**8. CLOSING COSTS** Unless otherwise provided in this Purchase Agreement, it is agreed that Seller shall pay all state and county transfer taxes and costs required to convey marketable title. Unless otherwise provided in this Purchase Agreement, Purchaser shall pay the cost of recording the deed and/or security interest, all mortgage closing costs required by lender, and any closing fee charged by the title insurance company/agency that issues the owner's and/or loan policy in a lender financed sale. Seller and Purchaser shall split equally any closing fees charged by the title insurance company/agency in a cash or seller financed sale. Any transfer or status letter fees charged by the homeowners or condominium association shall be split equally between Purchaser and Seller.

At closing, Seller agrees to contribute up to $ _____ 0.00 _____ or _____ % of the purchase price toward Purchaser's closing costs, prepaid items, property tax prorations, escrows, insurance and/or any other fees allowable by lender.

**9. PRORATED ITEMS** Seller shall be responsible for all real estate taxes for years prior to the year in which the closing occurs and the Purchaser shall be responsible for all real estate taxes for years after the year in which the closing occurs. Taxes for the year in which the closing occurs shall be prorated such that Seller is responsible for that portion of the taxes through and including the date of closing. For purposes of this paragraph, taxes shall be deemed paid in advance based on due date of July 1 for summer taxes (covering the period July 1 through the following June 30) and December 1 for winter taxes (covering the period December 1 through the following November 30).

Purchaser shall assume the balance of all assessments which have been assessed or levied against the property by any public agency, taxing unit, homeowner's association, or condominium association. Any rent, homeowner's association dues, condominium dues, or assessment installment payments not otherwise included in the tax bills shall be prorated and adjusted to the date of closing.

☐In lieu of the tax proration method set forth in paragraph 9 above, see attached Specific Contingencies/Terms Addendum.

**10. FEES OR CONSIDERATIONS** Purchaser and Seller hereby acknowledge that Broker(s) may accept a fee or consideration with regard to listing contract, buyer broker contract, placement of a home warranty, or any other ancillary products or services arising from this transaction.

Purchaser's Initials _____ Seller's Initials _____ page 3 of 6

©2016 Livingston County Association of REALTORS®

InstanetFORMS

**11. CONDITION** Until possession is delivered, Seller agrees to keep the property in substantially the same condition as of the date of this Purchase Agreement and agrees to maintain heating, well, septic, plumbing, electrical system, landscape irrigation system and other equipment in normal working order; to keep the roof watertight and maintain the grounds. Seller agrees to keep all utility services operating until possession is delivered. Upon vacating the property, Seller agrees to remove all debris and leave the property in "broom clean" condition. In the event the property herein has been winterized, it shall be the obligation and expense of Seller to de-winterize the property prior to closing. Purchaser has a right to a walk-through inspection of the property within 72 hours prior to closing. This walk-through will provide Purchaser with an opportunity to confirm that this paragraph has been complied with and should not be deemed an opportunity to renegotiate the terms and conditions of this Purchase Agreement.

**12. HEIRS, SUCCESSORS AND ASSIGNS** This Purchase Agreement binds Seller, Seller's personal representatives, heirs, and anyone succeeding to Seller's interest in the property. Purchaser shall not assign this Purchase Agreement without Seller's prior written consent.

**13. RELEASE** Purchaser and Seller acknowledge that the Broker(s), their respective agents, employees and representatives have made no representations concerning the condition of the property covered by this Purchase Agreement or marketability of title. Purchaser and Seller release, indemnify and hold harmless the Brokers, their respective agents, employees and representatives, with respect to all claims arising out of or related to this Purchase Agreement, addenda and/or counter-offers. This release also includes, but is not limited to, all claims arising from any purported representations as to the physical and environmental condition of the property or marketability of title and special assessments covered by this Purchase Agreement. Purchaser and Seller acknowledge that Broker(s), their respective agents, employees and representatives are not acting as appraisers, builders, accountants, environmentalists, inspectors, tax advisors or attorneys.

**14. LIMITATION** Purchaser and Seller agree any and all claims and/or lawsuits which they may have against the Brokers, their respective agents, employees and representatives relating to their services must be filed no more than 6 months after the date of closing of the transaction described in this Purchase Agreement. Purchaser and Seller waive any statute of limitations to the contrary.

**15. ELECTRONIC SIGNATURES/COMMUNICATION** Purchaser and Seller acknowledge and agree that this Purchase Agreement, any amendment or modification of this Purchase Agreement and/or any written notice or communication in connection with this Purchase Agreement may be delivered to Seller in care of Listing Broker and Purchaser in the care of the Selling Broker via electronic mail or by facsimile. Any such communication shall be deemed delivered at the time it is sent or transmitted. The parties agree that the electronic signatures and initials shall be deemed to be valid and binding upon the parties as if the original signatures or initials were present in the documents in the handwriting of each party. Seller represents and warrants an electronic email address has been provided to the listing broker from which seller may receive electronic mail. Purchaser represents and warrants an electronic email address has been provided to selling broker from which purchaser may receive email.

**16. COUNTERPARTS** This Purchase Agreement may be signed in any number of counterparts with the same effect as if the signature of each counterpart were upon the same instrument.

**17. GENERAL PROVISIONS:**

    a. **This is a legally binding contract and all parties acknowledge that they have been advised to have an attorney review the transaction on their behalf.**

    b. Principal Residence Exemption(PRE):

The Seller represents the PRE ☐IS IN EFFECT for this property and taxes will be prorated accordingly   **OR**

☒IS NOT IN EFFECT for this property and taxes will be prorated accordingly.

Purchaser's Initials _____ Seller's Initials _____ Page 4 of 6

©2016 Livingston County Association of REALTORS®

© 2016 Realcomp II Ltd. Unauthorized copying or distribution is prohibited. Instanet FORMS

**18. ADDITIONAL TERMS/CONDITIONS (Check if applicable)**

☒ Agency Disclosure Form attached.

☒ Seller's Disclosure Form received.

☒ Lead-based Paint Disclosure received.

☒ Fuel in tank(s)   ☒ Is included in the sale price   ☐ Is not included in the sale price and fuel shall be prorated at time of Possession.

☐ Escrow Agent shall retain $300.00 from Seller at closing for water/sewer charges to date of occupancy, if applicable. When the final bill is paid any unused portion will be returned to Seller.

☐ Contingency on sale and closing of Purchaser's property (no offer pending) (See attached LCAR Contingent on Sale and Closing of Purchaser's Property Addendum).

☐ Contingency on closing of sale on Purchaser's property (sale pending) (See attached LCAR Contingent on Sale and Closing of Purchaser's Property Addendum).

☐ This is a back-up offer (See attached Specific Contingencies/Terms Addendum).

☐ Appraisal – This Purchase Agreement is subject to the property appraising at purchase price or higher. Said appraisal to be paid for by Purchaser. If property does not appraise at purchase price or higher, Purchaser shall have the option to declare this Purchase Agreement null and void and Deposit shall be returned to Purchaser.

☐ Subject property abuts a private road which has not been accepted as a public road and is not required to be maintained by the County Road Commission or other public or municipal body.

☒ Offer is void if not accepted by _____ 7-15-18 _____.

☒ Closing of this purchase to be on or before _____ Sept 15, 2017 _____ at Listing Broker's office or location of Seller's choice.

☐ Home Warranty   ☒ Excluded   ☐ Included   ☐ To be paid for by _____.

☐ Attorney package of the closing documents required at least 3 days prior to closing.

☐ FHA or VA Financing Addendum required (See attached addendum).

☒ Other addendum(s) attached _____ See addendums #1 & #2 _____.

**19. LAND DIVISION ACT** (For unplatted land only): Seller and Purchaser agree that the following statements shall be included in the deed at the time of delivery:

(a) The grantor grants to the grantee the right to make _____ 0 _____ (insert "All", "Zero" or a specific number, as appropriate) division(s) under section 108 of the Land Division Act, MCL 560.108.

(b) This property may be located within the vicinity of farm land or a farm operation. Generally accepted agricultural and management practices which may generate noise, dust, odors and other associated conditions may be used and are protected by the Michigan right to farm act.

**CAUTION: If the space contained in subparagraph (a) above is left blank on the deed, the deed will NOT grant Purchaser the right to any divisions.**

**20. OTHER TERMS/CONDITIONS**

> Purchaser is licensed real estate broker. See Addendum #1 and #2 for additional conditions and contingencies

Purchaser's Initials _____ Seller's Initials _____ Page 5 of 6

©2016 Livingston County Association of REALTORS®

© 2016 Realcomp II Ltd. Unauthorized copying or distribution is prohibited.

InstanetFORMS

**21. ENTIRE AGREEMENT** Purchaser and Seller agree to the following: the term "Purchase Agreement" as used herein includes any counter-offers made by the parties to which there has been mutual and final acceptance; this Purchase Agreement and any addenda constitutes the entire agreement between the parties; there are no other written or oral understandings between the parties; this Purchase Agreement supersedes any and all prior purchase agreements, understandings or representations made by the parties or their agents. **TIME IS OF THE ESSENCE.**

Gentry Sales Inc    5-11-18

| Purchaser By Diana Gentry, President | Date | Purchaser | Date |

DIANA GENTRY
Print name                                             Print name

**SELLER ACCEPTANCE**    ☐ **As Written-No Changes**          ☐ **See Counter Offer Addendum**

| Seller | 6/4/11  Date | Seller | Date |

Print name                                             Print name


Seller Address_____


Disclaimer: This form is provided as a service of the Livingston County Association of Realtors®. Please review both the form and details of the particular transaction to ensure that each section is appropriate for the transaction. The Livingston County Association of Realtors® is not responsible for use or misuse of the form, for misrepresentation or for warranties made in connection with the forms.

©2016 Livingston County Association of REALTORS®
© 2018 Realcomp II Ltd. Unauthorized copying of this contract is strictly prohibited.
InstanetFORMS

# ADDENDUM #1.

In reference to the ☒ PURCHASE AGREEMENT, ☐ EXCHANGE AGREEMENT, ☐ LEASE,
☐ COUNTER OFFER- covering the ☒ real property, ☐ business, ☐ premises - commonly
known as ___1011___ JONES ROAD HOWELL MI 48855

dated _____ 05/17/18 _____, between

GENTRY SALES INC

and _____ EASTERN MICHIGAN BANKRUPTCY COURT

the undersigned parties hereby agree as follows:
1. Offer to be conditionally accepted by SAM SWEET, Eastern Michigan
Bankruptcy Trustee with final approval by Judge Opperman of Eastern
Michigan Bankruptcy Court
2. Upon approval it is agreed that the Eastern Michigan Bankruptcy Court,
Judge Opperman and Sam Sweet will dismiss all cases now pending before the
court that involve DIANA GENTRY, CHRIS WYMAN and GENTRY SALES INC and all
other corporations and DBA'S related to DIANA GENTRY with the following
case numbers of: ✓
Chris Wyman #12-03341, 12-032264, 12-03347 and 14-03017 ✓
Diana Gentry #12-03340, 12-0337, 14-02017 and 09-36472 ✓
Additionally, in case #12-03347, counts II and IV which are to be heard in
the US District Court per Final Pre trial order dated 1/31/2015, Doc 78
will be dismissed.
3. Bankruptcy Trustee will have removed a "Claim of Interest" filed by
BARBARA DUGGAN 5/5/2012 and recorded 5/3/12 in the Livingston County
Register of deeds Liber 2012R-015343
4. Pending final approval of this agreement and purchase agreement SAM
SWEET will have trials scheduled for June 11, 2018 indefinitely adjourned.
5. Upon acceptance of this agreement by Sam Sweet, all restrictions against
Diana Gentry and Gentry Sales Inc to use, move, maintain, repair or any
other incidental activities of any and all kind of the equipment listed in
current bankruptcy court filings shall be removed.
6. Upon acceptance of this agreement by Sam Sweet, Gentry Sales Inc will
order a proper title search on 1011 Jones Road through Select Title Agency, ⌐
Brighton, Mi and charge of same to be paid by Bankruptcy Court upon close
of sale.

The herein agreement, upon its execution by both parties, is herewith made an integral part of
the aforementioned Agreement of Sale.

DATED: 5-17-18  TIME: 3am   DATED: _____ TIME: _____
_____ Purchaser  _____ Seller
_____ Purchaser  _____ Seller
Witness _____ Agent  Witness _____ Agent

2/95                                                            Form 4

## ADDENDUM #2.

In reference to the ☒ PURCHASE AGREEMENT, ☐ EXCHANGE AGREEMENT, ☐ LEASE,
☐ COUNTER OFFER- covering the ☐ real property, ☐ business, ☐ premises - commonly
known as ___1011___ JONES ROAD HOWELL MI 48855

dated _____ 05/17/18 _____, between

GENTRY SALES INC

and _____ EASTERN MICHIGAN BANKRUPTCY COURT

the undersigned parties hereby agree as follows:
Purchaser shall be allowed 30 days from final acceptance of the agreement
to obtain cash funds from private party or other sources to make this a
cash sale.
If funds are not available within 30 days of acceptance of this purchase
agreement the sale will be a land contract sale with the sum of $5000 down
and balance of $60,000 to be paid in full within 1 year of final approval
of sale calling for interest only payments of $300 per month  at 6%
interest payable to Bankruptcy Trustee SAM SWEET.

The herein agreement, upon its execution by both parties, is herewith made an integral part of
the aforementioned Agreement of Sale.

DATED: _5-17-18_ TIME: _3 pm_  DATED: _____ TIME: _____
_____ Purchaser  _____ Seller
By _____ Purchaser  _____ Seller
Witness _____ Agent  Witness _____ Agent

2/95                                                    Form 4


CERTIFIED TRUE COPY

## COVENANT DEED

KNOW ALL MEN BY THESE PRESENTS: That Wells Fargo Bank, N.A. as Trustee for First Franklin Mortgage Loan Trust 2006-FF15, Mortgage Pass-Through Certificates, Series 2006-FF15, by its Attorney in Fact Select Portfolio Servicing whose address is 3815 SW Temple Salt Lake City, Utah 84115 covenants that it is seized of said land and has a right to convey it, conveys to:.

### Christopher Wyman

Whose Address is: ___ __

The Following described premises situated in the Township of Cohoctah, Livingston County, and State of Michigan, to-wit:

Part of the Southwest 1/4 of Section 24, Town 4 North, Range 4 East, and part of the Northwest 1/4 of Section 25, Town 4 North, Range 4 East, more particularly described as follows: Commencing at the Southwest corner of said Section 24; thence North 03 degrees 46 minutes 16 seconds West 1298.63 feet (previously recorded as North 00 degrees 45 minutes 00 seconds West 1298.33 feet); thence along the centerline of Jones Road (66 foot wide Right of Way), North 88 degrees 04 minutes 34 seconds East 183.87 feet (previously recorded as South 89 degrees 29 minutes 00 seconds East 184.60 feet) to the Point of Beginning of the parcel to be described; thence continuing along said line North 88 degrees 04 minutes 34 seconds East (previously recorded as South 89 degrees 25 minutes 00 seconds East) 331.21 feet; thence South 01 degree 58 minutes 26 seconds East 1324.84 feet; thence South 88 degrees 10 minutes 34 seconds West 331.21 feet; thence North 01 degree 58 minutes 26 seconds East 1324.26 feet to the Point of Beginning, subject to the rights of the public over the existing Jones Road. Also subject to any other easements or restriction of record.

-More commonly known as: 1011 E Jones Rd, Howell, MI 48855

Individual services may be waived by the seller through execution of a limited service agreement. Only those services set forth in paragraph (2)(b), (c), and (d) above may be waived by the execution of a limited service agreement.

## BUYER'S AGENTS

A buyer's agent, under a buyer's agency agreement with the buyer, acts solely on behalf of the buyer. A subagent of the buyer is one who has agreed to work with the buyer's agent with who, like the buyer's agent, acts solely on behalf of the buyer. Buyer's agents and their subagents will disclose to the buyer known information about the seller which may be used to benefit the buyer.

Individual services may be waived by the buyer through execution of a limited service agreement. Only those services set forth in paragraph (2)(b), (c), and (d) above may be waived by the execution of a limited service agreement.

## DUAL AGENTS

A real estate licensee can be the agent of both the seller and the buyer in a transaction, but only with the knowledge and informed consent, in writing, of both the seller and the buyer.

In such a dual agency situation, the licensee will not be able to disclose all known information to either the seller or the buyer. As a dual agent, the licensee will not be able to provide the full range of fiduciary duties to the seller or the buyer.

The obligations of a dual agent are subject to any specific provisions set forth in any agreement between the dual agent, the seller and the buyer.

## TRANSACTION COORDINATOR

A transaction coordinator is a licensee who is not acting as an agent of either the seller or the buyer, yet is providing services to complete a real estate transaction. The transaction coordinator is not an agent for either party and therefore owes no fiduciary duty to either party.

## DESIGNATED AGENCY

A buyer or seller with a designated agency agreement is represented only by agents specifically named in the agreement. Any agents of the firm not named in the agreement do not represent the buyer or seller. The named "designated" agent acts solely on behalf of his or her client and may only share confidential information about the client with the agent's supervisory broker who is also named in the agreement. Other agents in the firm have no duties to the buyer or seller and may act solely on behalf of another party in the transaction.

## LICENSEE DISCLOSURE (Check one)

I hereby disclose that the agency status of the licensee named below is:

&#9587;&#95;&#95;&#95;&#95;&#95; Seller's agent

&#95;&#95;&#95;&#95;&#95; Seller's agent – limited service agreement

&#95;&#95;&#95;&#95;&#95; Buyer's agent

&#95;&#95;&#95;&#95;&#95; Buyer's agent – limited service agreement

&#95;&#95;&#95;&#95;&#95; Dual agent

&#95;&#95;&#95;&#95;&#95; Transaction coordinator (A licensee who is not acting as an agent of either the seller or the buyer.)

&#95;&#95;&#95;&#95;&#95; None of the above

## AFFILIATED LICENSEE DISCLOSURE (Check one)

&#95;&#95;&#95;&#95;&#95; Check here if acting as a designated agent. Only the licensee's broker and a named supervisor broker have the same agency relationship as the licensee named below. If the other party in a transaction is represented by an affiliated licensee, then the licensee's broker and all named supervisory brokers shall be considered disclosed consensual dual agents.

&#95;&#95;&#95;&#95;&#95; Check here if not acting as a designated agent. All affiliated licensees have the same agency relationship as the licensee named below.

© 2018 Realcomp II Ltd. Unauthorized copying of this contract is prohibited.

Instanet forms

Further, this form was provided to the buyer or seller before disclosure of any confidential information.

_Diana Suntry_                                    5-17-18
Licensee                                          Date

_____                           _____
Licensee                                          Date

## ACKNOWLEDGMENT

By signing below, the parties acknowledge that they have received and read the information in this agency disclosure statement and acknowledge that this form was provided to them before the disclosure of any confidential information. **THIS IS NOT A CONTRACT.**

The undersigned _____ DOES _____ DOES NOT have an agency relationship with any other real estate licensee. If an agency relationship exists, the undersigned is represented as _____ SELLER _____ BUYER.

_Diana Suntry_                                    5-17-18
Potential ☒ Buyer/ ☐ Seller (circle one)          Date

_____                           6/9/18
Potential ☐ Buyer/ ☒ Seller (circle one)          Date

---

**Disclaimer** This form is provided as a service of the Michigan Association of REALTORS®. Please review both the form and details of the particular transaction to ensure that each section is appropriate for the transaction. The Michigan Association of REALTORS® is not responsible for use or misuse of the form, for misrepresentation, or for warranties made in connection with the form.

---

Form K  ©1995 Michigan Association of REALTORS®, revised 06/2011.  P.O. Box 40725, Lansing, MI 48901-7925 Ph. 800.454.7842 Fax 517.334.5568

© 2018 Realcomp II Ltd. Unauthorized copying of this contract is prohibited.

InstanEt
FORMS

 MICHIGAN ASSOCIATION OF **REALTORS**

**LEAD-BASED PAINT SELLER'S DISCLOSURE FORM**



Property Address  1011  JONES ROAD
_____ Street
HOWELL                                              MICHIGAN        48855
_____ City, Village, Township

**Lead Warning Statement**
Every purchaser of any interest in residential real property on which a residential dwelling was built prior to 1978 is notified that such property may present exposure to lead from lead-based paint that may place young children at risk of developing lead poisoning. Lead poisoning in young children may produce permanent neurological damage, including learning disabilities, reduced intelligence quotient, behavioral problems, and impaired memory. Lead poisoning also poses a particular risk to pregnant women. The seller of any interest in residential real property is required to provide the buyer with any information on lead-based paint hazards from risk assessments or inspections in the seller's possession and notify the buyer of any known lead-based paint hazards. A risk assessment or inspection for possible lead-based paint hazards is recommended prior to purchase.

**I. Seller's Disclosure (initial)**

_____ (a) Presence of lead-based paint and/or lead-based paint hazards (check one below):

☐ Known lead-based paint and/or lead-based paint hazards are present in the housing (explain):

_____

_____

☒ Seller has no knowledge of lead-based paint and/or lead-based paint hazards in the housing.

_____ (b) Records and reports available to the seller (check one below):

☐ Seller has provided the purchaser with all available records and reports pertaining to lead-based paint and/or lead-based paint hazards in the housing (list documents below):

_____

☒ Seller has no reports or records pertaining to lead-based paint and/or lead-based paint hazards in the housing.

Seller certifies that to the best of his/her knowledge, the Seller's statements above are true and accurate.

Seller(s)

Date: _____    6/4/18

Date: _____

**II. Agent's Acknowledgment (initial)**

Agent has informed the seller of the seller's obligations under 42 U.S.C. 4852d and is aware of his/her responsibility to ensure compliance.

Agent certifies that to the best of his/her knowledge, the Agent's statement above is true and accurate.

Date:  5-17-18    Agent

**III. Purchaser's Acknowledgment (initial)**

_____ (a) Purchaser has received copies of all information listed above.

_____ (b) Purchaser has received the federally approved pamphlet *Protect Your Family From Lead In Your Home.*

_____ (c) Purchaser has (check one below):

☐ Received a 10-day opportunity (or other mutually agreed upon period) to conduct a risk assessment or inspection of the presence of lead-based paint or lead-based paint hazards; or

☒ Waived the opportunity to conduct a risk assessment or inspection for the presence of lead-based paint and/or lead-based paint hazards.

Purchaser certifies to the best of his/her knowledge, the Purchaser's statements above are true and accurate.

Date:  5-17-18    Purchaser(s)

Date: _____

FORM L-3, ©1996 Michigan Association of REALTORS®, 10/96



**MICHIGAN ASSOCIATION OF REALTORS®**

## Seller's Disclosure Statement

**H**

**Property Address:** 1011 JONES ROAD      HOWELL      **MICHIGAN**
                      Street                            City, Village or Township

**Purpose of Statement:** This statement is a disclosure of the condition of the property in compliance with the Seller Disclosure Act. This statement is a disclosure of the condition and information concerning the property, known by the Seller. Unless otherwise advised, the Seller does not possess any expertise in construction, architecture, engineering or any other specific area related to the construction or condition of the improvements on the property or the land. Also, unless otherwise advised, the Seller has not conducted any inspection of generally inaccessible areas such as the foundation or roof. This statement is not a warranty of any kind by the Seller or by any Agent representing the Seller in this transaction, and is not a substitution for any inspections or warranties the Buyer may wish to obtain.

**Seller's Disclosure:** The Seller discloses the following information with the knowledge that even though this is not a warranty, the Seller specifically makes the following representations based on the Seller's knowledge at the signing of this document. Upon receiving this statement from the Seller, the Seller's Agent is required to provide a copy to the Buyer or the Agent of the Buyer. The Seller authorizes its Agent(s) to provide a copy of this statement to any prospective Buyer in connection with any actual or anticipated sale of property. The following are representations made solely by the Seller and are not the representations of the Seller's Agent(s), if any. This information is a disclosure only and is not intended to be a part of any contract between Buyer and Seller.

**Instructions to the Seller:** (1) Answer ALL questions. (2) Report known conditions affecting the property. (3) Attach additional pages with your signature if additional space is required. (4) Complete this form yourself. (5) If some items do not apply to your property, check NOT AVAILABLE. If you do not know the facts, check UNKNOWN. FAILURE TO PROVIDE A PURCHASER WITH A SIGNED DISCLOSURE STATEMENT WILL ENABLE A PURCHASER TO TERMINATE AN OTHERWISE BINDING PURCHASE AGREEMENT.

**Appliances/Systems/Services:** The items below are in working order. (The items listed below are included in the sale of the property only if the purchase agreement so provides.)

| | Yes | No | Unknown | Not Available | | Yes | No | Unknown | Not Available |
|---|---|---|---|---|---|---|---|---|---|
| Range/oven | | | | | Lawn sprinkler system | | | | |
| Dishwasher | | | | | Water heater | | | | |
| Refrigerator | | | | | Plumbing system | | | | |
| Hood/fan | | | | | Water softener/ | | | | |
| Disposal | | | | | conditioner | | | | |
| TV antenna, TV rotor | | | | | Well & pump | | | | |
| & controls | | | | | Septic tank & drain | | | | |
| Electric System | | | | | field | | | | |
| Garage door opener & | | | | | Sump pump | | | | |
| remote control | | | | | | | | | |
| Alarm system | | | | | City water system | | | | |
| | | | | | City sewer system | | | | |
| Intercom | | | | | Central air conditioning | | | | |
| Central vacuum | | | | | Central heating system | | | | |
| Attic fan | | | | | Wall furnace | | | | |
| Pool heater, wall liner | | | | | Humidifier | | | | |
| & equipment | | | | | Electronic air filter | | | | |
| Microwave | | | | | Solar heating system | | | | |
| Trash compactor | | | | | | | | | |
| | | | | | Fireplace & chimney | | | | |
| Ceiling fan | | | | | Wood burning system | | | | |
| Sauna/hot tub | | | | | Dryer | | | | |
| Washer | | | | | | | | | |

*(handwritten across table: "Seller did not know")*

Explanations (attach additional sheets, if necessary): _____

UNLESS OTHERWISE AGREED, ALL HOUSEHOLD APPLIANCES ARE SOLD IN WORKING ORDER EXCEPT AS NOTED, WITHOUT WARRANTY BEYOND DATE OF CLOSING.

**Property conditions, improvements & additional information:**
1. Basement/Crawlspace: Has there been evidence of water?      yes _____ no _____
    If yes, please explain: _____
2. Insulation: Describe, if known: _____
    Urea Formaldehyde Foam Insulation (UFFI) is installed?    unknown _____ yes _____ no _____
3. Roof: Leaks?      yes _____ no _____
    Approximate age, if known: _____
4. Well: Type of well (depth/diameter, age and repair history, if known): _____
    Has the water been tested?      yes _____ no _____
    If yes, date of last report/results: _____

PAGE 1 OF 2                                        BUYER'S INITIALS _____

FORM H JAN/06                                      SELLER'S INITIALS _____

© 2018 Realcomp II Ltd. Unauthorized copying of this contract is prohibited. **Instanet**

## Seller's Disclosure Statement

**Property Address:** 1011  JONES ROAD      HOWELL      **MICHIGAN**
           Street            City, Village or Township

5.  Septic tanks/drain fields: Condition, if known: _____
6.  Heating system: Type/approximate age: _____
7.  Plumbing system: Type: copper _____ galvanized _____ other _____
    Any known problems? _____
8.  Electrical system: Any known problems? _____
9.  History of Infestation, if any: (termites, carpenter ants, etc.) _____
10. Environmental problems: Are you aware of any substances, materials or products that may be an environmental hazard such as, but not limited to, asbestos, radon gas, formaldehyde, lead-based paint, fuel or chemical storage tanks and contaminated soil on property.

|  | unknown | yes | no |
|---|---|---|---|
| If yes, please explain: | | | |
| 11. Flood Insurance: Do you have flood insurance on the property? | unknown | yes | no |
| 12. Mineral Rights: Do you own the mineral rights? | unknown | yes | no |

Other Items: Are you aware of any of the following:

| | | | |
|---|---|---|---|
| 1. Features of the property shared in common with the adjoining landowners, such as walls, fences, roads and driveways, or other features whose use or responsibility for maintenance may have an effect on the property? | unknown | yes | no |
| 2. Any encroachments, easements, zoning violations or nonconforming uses? | unknown | yes | no |
| 3. Any "common areas" (facilities like pools, tennis courts, walkways or other areas co-owned with others), or a homeowners' association that has any authority over the property? | unknown | yes | no |
| 4. Structural modifications, alterations or repairs made without necessary permits or licensed contractors? | unknown | yes | no |
| 5. Settling, flooding, drainage, structural or grading problems? | unknown | yes | no |
| 6. Major damage to the property from fire, wind, floods, or landslides? | unknown | yes | no |
| 7. Any underground storage tanks? | unknown | yes | no |
| 8. Farm or farm operation in the vicinity; or proximity to a landfill, airport, shooting range, etc.? | unknown | yes | no |
| 9. Any outstanding utility assessments or fees, including any natural gas main extension surcharge? | unknown | yes | no |
| 10. Any outstanding municipal assessments or fees? | unknown | yes | no |
| 11. Any pending litigation that could affect the property or the Seller's right to convey the property? | unknown | yes | no |

If the answer to any of these questions is yes, please explain. Attach additional sheets, if necessary: _____

The Seller has lived in the residence on the property from _____ (date) to _____ (date).
The Seller has owned the property since _____ (date).
The Seller has indicated above the conditions of all the items based on information known to the Seller. If any changes occur in the structural/mechanical/appliance systems of this property from the date of this form to the date of closing, Seller will immediately disclose the changes to Buyer. In no event shall the parties hold the Broker liable for any representations not directly made by the Broker or Broker's Agent.

Seller certifies that the information in this statement is true and correct to the best of Seller's knowledge as of the date of Seller's signature.

**BUYER SHOULD OBTAIN PROFESSIONAL ADVICE AND INSPECTIONS OF THE PROPERTY TO MORE FULLY DETERMINE THE CONDITION OF THE PROPERTY. THESE INSPECTIONS SHOULD TAKE INDOOR AIR AND WATER QUALITY INTO ACCOUNT, AS WELL AS ANY EVIDENCE OF UNUSUALLY HIGH LEVELS OF POTENTIAL ALLERGENS INCLUDING, BUT NOT LIMITED TO, HOUSEHOLD MOLD, MILDEW AND BACTERIA.**

**BUYERS ARE ADVISED THAT CERTAIN INFORMATION COMPILED PURSUANT TO THE SEX OFFENDERS REGISTRATION ACT, 1994 PA 295, MCL 28,721 TO 28.732 IS AVAILABLE TO THE PUBLIC. BUYERS SEEKING SUCH INFORMATION SHOULD CONTACT THE APPROPRIATE LOCAL LAW ENFORCEMENT AGENCY OR SHERIFF'S DEPARTMENT DIRECTLY.**

**BUYER IS ADVISED THAT THE STATE EQUALIZED VALUE OF THE PROPERTY, PRINCIPAL RESIDENCE EXEMPTION INFORMATION, AND OTHER REAL PROPERTY TAX INFORMATION IS AVAILABLE FROM THE APPROPRIATE LOCAL ASSESSOR'S OFFICE. BUYER SHOULD NOT ASSUME THAT BUYER'S FUTURE TAX BILLS ON THE PROPERTY WILL BE THE SAME AS THE SELLER'S PRESENT TAX BILLS. UNDER MICHIGAN LAW, REAL PROPERTY OBLIGATIONS CAN CHANGE SIGNIFICANTLY WHEN PROPERTY IS TRANSFERRED.**

Seller _____ Date: 6/14/18

Seller _____ Date: _____

Buyer has read and acknowledges receipt of this statement.

Buyer _____ Date: 5-17-18 Time 3 pm

Buyer _____ Date: _____ Time _____

Disclaimer: This form is provided as a service of the Michigan Association of REALTORS®. Please review both the form and details of the particular transaction to ensure that each section is appropriate for the transaction. The Michigan Association of REALTORS® is not responsible for use or misuse of form for misrepresentation or for warranties made in connection with the form.

PAGE 2 OF 2

FORM H JAN/06
© 2018 Realcomp II Ltd. Unauthorized copying of this contract is prohibited.

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION - FLINT

IN RE:

CHRISTOPHER D. WYMAN,

DEBTOR,

_____/

CASE NO. 12-32264-dof
CHAPTER 7
HONORABLE DANIEL S. OPPERMAN

### NOTICE OF REQUIREMENT OF WRITTEN RESPONSE TO TRUSTEE'S MOTION TO SELL CERTAIN REAL PROPERTY AND SETTLE AND RESOLVE VARIOUS ADVERSARY PROCEEDINGS IN THIS MATTER

Trustee, Samuel D. Sweet, has filed papers with the Court for the Authority to Sell Real Property located at 1011 Jones Road, Howell, Michigan to Gentry Sales, Inc. for the gross sum of $65,000.00 and to settle and resolve various adversary proceedings in this matter.

**Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one in this bankruptcy case. (If you do not have an attorney, you may wish to consult one.)**

If you do not want the Court to allow the Trustee's Motion, or if you want the Court to consider your views on the Motion, within twenty-one (21) days, you or your attorney must:

1. File with the Court a written response or an answer which must comply with F.R.Civ.P. 8(b), (c) and (e) explaining your position pursuant to L.B.R. 9014-1 at:

   Clerk of the United States Bankruptcy Court
   Eastern District of Michigan-Southern Division
   226 West Second Street, Flint, Michigan 48462-0757

   If you mail your response to the Court for filing, you must mail it early enough so the Court will **receive** it on or before the date stated above.

   You must also mail a copy to:

   Samuel D. Sweet, Attorney for Trustee (at the address below)

2. If a response or answer is timely filed and served, the Clerk will schedule a hearing on the motion/objection and you will be served with a notice of the date, time and location of the hearing.

**If you or your attorney do not take these steps, the Court may decide that you do not oppose the relief sought in the motion or objection and may enter an Order granting that relief.**

SAMUEL D. SWEET, PLC

/s/ Samuel D. Sweet
By: Samuel D. Sweet (P 48668)
Attorneys for Trustee
P.O. Box 757
Ortonville, MI 48462-0757
(248) 236-0985
ssweet@trusteesweet.us

Date Served: 6/7/2018

¹Response or answer must comply with F.R. Civ. P 8 (b) (c) and (e)

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION - FLINT**

IN RE:

CHRISTOPHER D. WYMAN,

          DEBTOR,

_____/

CASE NO. 12-32264-dof
CHAPTER 7
HONORABLE DANIEL S. OPPERMAN

## CERTIFICATE OF SERVICE

*The undersigned hereby certifies that a copy of the following:*

Trustee's Motion to Sell Certain Real Property and Settle and Resolve Various Adversary Proceedings in this Matter

*was electronically served on the 7th day of June, 2018, upon:*

Dennis L. Perkins
Attorney for Debtor
bkperk@sbcglobal.net
(Via ECF Only)

*was served via First Class Mail, pre-paid postage, on this 7th day of June, 2018, addressed as follows:*

Christopher D. Wyman
6241 Grand River Road
Brighton, MI 48114

\*\*NOTICE TO CREDITORS AND OTHER PARTIES OF INTEREST WAS SERVED ON ALL PARTIES LISTED ON THE ATTACHED COURT MATRIX\*\*

/s/ Jessica A. Will
SAMUEL D. SWEET, PLC
Jessica A. Will, Legal Assistant
P.O. Box 757
Ortonville, MI 48462-0757
(248) 236-0985
jwill@trusteesweet.us

IN RE:

CHRISTOPHER D. WYMAN,

        DEBTOR,

_____/

CASE NO. 12-32264-dof
CHAPTER 7
HONORABLE DANIEL S. OPPERMAN

### TRUSTEE'S AMENDED MOTION FOR SALE OF CERTAIN PROPERTY FREE AND CLEAR OF LIENS, INTERESTS, AND ENCUMBRANCES WITH ALL LIENS, INTERESTS, AND ENCUMBRANCES TRANSFERRING TO THE PROCEEDS OF SALE

NOW COMES Trustee, Samuel D. Sweet, ("Trustee"), by and through his counsel, Samuel D. Sweet, PLC, and hereby states as follows:

1.      On May 24, 2012 Christopher D. Wyman ("Debtor") filed a Voluntary Bankruptcy under Chapter 7 of the Bankruptcy Reform Act of 1978, as Amended, Title 11 ("Petition Date").

2.      Subsequent of the aforementioned bankruptcy filing, Michael Mason was appointed the duly qualified and acting Trustee in this matter, whereupon Mr. Mason resigned his position as Trustee in this case and Samuel D. Sweet ("Trustee") was appointed the Chapter 7 Trustee herein.

3.      Both Trustees and various parties in this case including the Debtor have engaged in years of protracted litigation in this matter on various fronts.

4.      Mr. Mason originally hired Michael Tindall to represent him in this litigation and after Mr. Sweet was appointed the Trustee, Mr. Tindall was disbarred from practice. Mr. Tindall has not filed an application for fees nor has requested any fees from this bankruptcy estate to this point.

5.      Samuel Sweet entered into and resolved all litigation matters with the various parties including Michelle Pichler, Diana Gentry, and Christopher Wyman.

6.      Among those settlements include Michelle Pichler transferring the real property located at 1011 Jones Road, Howell, Michigan to the bankruptcy estate, Diana Gentry purchasing said property from the bankruptcy estate for $65,000.00.

7.      As a result of the foregoing the Trustee is desirous to transfer this property to Diana

Gentry or her company Gentry Sales, Inc. for the full price of $65,000.00. The Trustee is required to pay certain obligations at closing including outstanding real estate taxes on said property.

8.      Among the items identified in the chain of title in this matter is a mortgage between Michelle Pichler and Edward Linck identified as document number 2010R-002922 which appears to be resolved relative to the "Linck Litigation". As a result of the foregoing the Trustee requests that this item be transferred to the proceeds of sale so that he may resolve this matter at a future date.

9.      Also, recorded in this chain of title is a "Notice of Claim of Interest" which was recorded between Mr. Tindall and Ms. Duggan who is a creditor of this estate those being 2012R-015343 and 2018R-022732. Those specific items are recorded in the chain of title in this case. The first recorded claim of interest on behalf of Ms. Duggan is recorded based upon a Judgment obtained against Mr. Wyman at a time in which this property in question was owned by Michelle Pichler. This Notice of Claim of Interest appears to be inappropriate and not attachable to the property based upon the Judgment received.

10.      Additionally, Mr. Tindall filed a Notice of Claim of Interest relative to what appears to be fees that he is owed or claims to be owed.

11.      It is the Trustees request that these items be transferred to the proceeds of sale as they are each not with merit and are certainly within bonafide dispute pursuant to Section 363(f) of the Bankruptcy Code.

**WHEREFORE**, Trustee prays this Honorable Court enter the Order attached hereto as Exhibit "A" and for such other and further relief this Court deems just and proper.

Respectfully submitted,

SAMUEL D. SWEET, PLC

By:__/s/ Samuel D. Sweet_____
Samuel D. Sweet (P48668)
Attorneys for Trustee
P.O. Box 757
Ortonville, MI 48462-0757
Dated:___12/11/2018___      (248) 236-0985
ssweet@trusteesweet.us

IN RE:

CHRISTOPHER D. WYMAN,

DEBTOR,

_____/

CASE NO. 12-32264-dof
CHAPTER 7
HONORABLE DANIEL S. OPPERMAN

### ORDER GRANTING TRUSTEE'S AMENDED MOTION FOR SALE OF CERTAIN PROPERTY FREE AND CLEAR OF LIENS, INTERESTS, AND ENCUMBRANCES WITH ALL LIENS, INTERESTS, AND ENCUMBRANCES TRANSFERRING TO THE PROCEEDS OF SALE

This matter having come before this Honorable Court based upon the Trustee's Amended Motion for Sale of Certain Property Free and Clear of Liens, Interests, and Encumbrances with all Liens, Interests, and Encumbrances Transferring to the Proceeds of Sale; or any filed objection having been resolved; notice having been provided properly, pursuant to Rule 2002 and 9019 of the Federal Rules of Bankruptcy Procedures; and the Court being fully advised in the premises;

**IT IS HEREBY ORDERED** that the Trustee shall be and is hereby authorized to transfer the real property located at 1011 Jones Road, Howell, Michigan with a legal description of:

Part of the Southwest 1/4 of Section 24, Town 4 North, Range 4 East, and part of the Northwest 1/4 of Section 25, Town 4 North, Range 4 East, Township of Cohoctah, Livingston County, Michigan, described as follows: Commencing at the Southwest corner of said Section 24; thence North 03 degrees 46 minutes 16 seconds West 1298.63 feet (previously recorded as North 00 degrees 45 minutes 00 seconds West 1298.33 feet); thence along the centerline of Jones Road (66 foot wide Right of Way), North 88 degrees 04 minutes 34 seconds East 183.87 feet (previously recorded as South 89 degrees 29 minutes 00 seconds East 184.60 feet) to the Point of Beginning of the parcel to be described; thence continuing along said line North 88 degrees 04 minutes 34 seconds East (previously recorded as South 89 degrees 25 minutes 00 seconds East) 331.21 feet; thence South 01 degrees 58 minutes 26 seconds East 1324.84 feet; thence South 88 degrees 10 minutes 34 seconds West 331.21 feet; thence North 01 degrees 58 minutes 26 seconds West 1324.26 feet to the point of beginning. Subject to the rights of the public over the

existing Jones Road.

free and clear of all liens, interests, and encumbrances including but not limited to the following:

a.    real estate property taxes;

b.    the mortgage between Michelle Pichler and Edward Linck;

c.    the Notice of Claim of Interest filed by Ms. Duggan;

d.    the Notice of Claim of Interest filed by Michael Tindall;

e.    any and all other documents or Notices filed in this case subsequent to August 2019

shall be and hereby are attached to the proceeds of sale in this matter.

**IT IS FURTHER ORDERED** that Trustee's Motion is granted and he is authorized to sell the real property located at 1011 Jones Road, Howell, Michigan, Tax Id No. 470224300007, to Gentry Sales, Inc. for the gross sum of $65,000.00.

**IT IS FURTHER ORDERED** that the Trustee is authorized to pay outstanding real estate taxes, tax prorations, transfer taxes, and normal closing costs charged to the Seller.

**IT IS FURTHER ORDERED** that the following Adversary Proceedings shall be and are hereby dismissed:

1)    12-3341-dof, Mason v. Wyman;

2)    12-3340-dof, Mason v. Gentry;

3)    12-3347-dof, Mason v. Gentry; and

4)    14-3017-dof, Mason v. Gentry.

HONORABLE DANIEL S. OPPERMAN
UNITED STATES BANKRUPTCY JUDGE

IN RE:

CHRISTOPHER D. WYMAN,

　　　　DEBTOR,
_____/

CASE NO. 12-32264-dof
CHAPTER 7
HONORABLE DANIEL S. OPPERMAN

**NOTICE OF REQUIREMENT OF WRITTEN RESPONSE TO TRUSTEE'S AMENDED
MOTION FOR SALE OF CERTAIN PROPERTY FREE AND CLEAR OF LIENS,
INTERESTS, AND ENCUMBRANCES WITH ALL LIENS, INTERESTS, AND
ENCUMBRANCES TRANSFERRING TO THE PROCEEDS OF SALE**

　　　　Trustee, Samuel D. Sweet, has filed papers with the Court for the Authority to Sell Certain Property Free and Clear of Liens, Interests, and Encumbrances with all Liens, Interests, and Encumbrances Transferring to the Proceeds of Sale.

　　　　**Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one in this bankruptcy case. (If you do not have an attorney, you may wish to consult one.)**

　　　　If you do not want the Court to allow the Trustee's Motion, or if you want the Court to consider your views on the Motion, within twenty-one (21) days, you or your attorney must:

　　　　1.　　File with the Court a written response or an answer which must comply with F.R.Civ.P. 8(b), (c) and (e) explaining your position pursuant to L.B.R. 9014-1 at:

　　　　　　　　Clerk of the United States Bankruptcy Court
　　　　　　　　Eastern District of Michigan-Southern Division
　　　　　　　　226 West Second Street, Flint, Michigan 48462-0757

　　　　If you mail your response to the Court for filing, you must mail it early enough so the Court will **receive** it on or before the date stated above.

　　　　You must also mail a copy to:

　　　　　　　　Samuel D. Sweet, Attorney for Trustee (at the address below)

　　　　2.　　If a response or answer is timely filed and served, the Clerk will schedule a hearing on the motion/objection and you will be served with a notice of the date, time and location of the hearing.

　　　　**If you or your attorney do not take these steps, the Court may decide that you do not oppose the relief sought in the motion or objection and may enter an Order granting that relief.**

　　　　　　　　　　　　　　　　SAMUEL D. SWEET, PLC

　　　　　　　　　　　　　　　　/s/ Samuel D. Sweet
　　　　　　　　　　　　　　　　By: Samuel D. Sweet (P 48668)
　　　　　　　　　　　　　　　　Attorneys for Trustee
　　　　　　　　　　　　　　　　P.O. Box 757
　　　　　　　　　　　　　　　　Ortonville, MI 48462-0757
Date Served:　12/11/2018　　　　(248) 236-0985
　　　　　　　　　　　　　　　　ssweet@trusteesweet.us

¹Response or answer must comply with F.R. Civ. P 8 (b) (c) and (e)

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION - FLINT**

IN RE:

CHRISTOPHER D. WYMAN,

          DEBTOR,

_____/

CASE NO. 12-32264-dof
CHAPTER 7
HONORABLE DANIEL S. OPPERMAN

## CERTIFICATE OF SERVICE

*The undersigned hereby certifies that a copy of the following:*

      Trustee's Amended Motion for Sale of Certain Property Free and Clear of Liens, Interests, and Encumbrances with all Liens, Interests, and Encumbrances Transferring to the Proceeds of Sale; Proposed Order; Notice of Motion and Right to Object; and this Certificate of Service

*was electronically served on the 11ᵗʰ day of December, 2018, upon:*

      Dennis L. Perkins
      Attorney for Debtor
      bkperk@sbcglobal.net
      (Via ECF Only)

*was served via First Class Mail, pre-paid postage, on this 11ᵗʰ day of December, 2018, addressed as follows:*

      Christopher D. Wyman
      6241 Grand River Road
      Brighton, MI 48114

**\*\*NOTICE TO CREDITORS AND OTHER PARTIES OF INTEREST WAS SERVED ON ALL PARTIES LISTED ON THE ATTACHED COURT MATRIX\*\***

                    /s/ Jessica A. Will
                    SAMUEL D. SWEET, PLC
                    Jessica A. Will, Legal Assistant
                    P.O. Box 757
                    Ortonville, MI 48462-0757
                    (248) 236-0985
                    jwill@trusteesweet.us

```
 1                    UNITED STATES BANKRUPTCY COURT
                       EASTERN DISTRICT OF MICHIGAN
 2                           SOUTHERN DIVISION

 3   IN THE MATTER OF,              Case No. 12-32264

 4   CHRISTOPHER D. WYMAN
     _____/
 5
     MICHAEL A. MASON, TRUSTEE     Adversary No. 12-3347
 6   and BARBARA DUGGAN,           Flint, Michigan
                                   February 10, 2015
 7        Plaintiffs,              10:37 a.m.
                                   Appeal No. 16-2535
 8            v

 9   CHRISTOPHER D. WYMAN and
     DIANA KAYE GENTRY,
10
          Defendants.
11   _____/

12                            IN RE: TRIAL
                   BEFORE THE HONORABLE DANIEL S. OPPERMAN
13            TRANSCRIPT ORDERED BY: MICHAEL TINDALL, ESQ.

14   APPEARANCES:

15   For the Plaintiffs:          MICHAEL E. TINDALL, ESQ.
                                  (P29090)
16                                Tindall Law
                                  P.O. Box 46546
17                                Mt. Clemens, MI 48046
                                  248-250-8819
18
     For the Defendants:          RICHARD PONSETTO, JR., ESQ.
19                                (P38905)
                                  2425 S. Linden Road
20                                Suite C
                                  Flint, MI 48532
21                                810-720-4333

22   Chapter 7 Trustee:           SAMUEL SWEET, ESQ. (P48668)
                                  Chapter 7 Trustee
23                                P.O. Box 757
                                  Ortonville, MI 48462-0757
24                                248-236-0985

25
```

```
 1              THE CLERK:  Thank you.  Have a seat right there.

 2                        DIRECT EXAMINATION

 3  BY MR. TINDALL:

 4  Q    Would you state your name for the record, please?

 5  A    My name is Samuel Sweet.

 6  Q    And what is your relation to this case?

 7  A    I have been appointed to be the Chapter 7 trustee of this

 8  -- the underlying case which is Christopher Wyman's case.

 9  Q    And you are the successor to Mr. Mason, is that correct?

10  A    That's correct.

11  Q    When did you become his successor?

12  A    I believe it was roughly August of this past year.

13  Q    You had occasion to be in Court in September and I

14  believe October, was that right?

15  A    That's correct.

16  Q    Okay.  And at that point there were arguments going on

17  about this property that Mr. Mason recovered from Mr. Linck,

18  is that correct?

19              MR. PONSETTO:  Objection, Your Honor, which property

20  are we talking about?

21              MR. TINDALL:  The equipment.

22  A    There -- there was discussion about a list of equipment

23  that -- that was at issue.

24  Q    Okay.  And the Court asked -- do you recall what the

25  Court asked the parties to do at that time?
```

1  A    I think if I'm not mistaken the Court said figure out

2  what you want to do with this equipment as it pertains to this

3  adversary and -- and let me know basically.

4  Q    And you told the Court you needed to inspect it, did you

5  not?

6  A    That's true, yes.

7  Q    Okay.  And the Court -- did the Court indicate that the

8  parties should allow you to inspect this property?

9  A    I -- I believe that's what the Court in some form or

10  fashion, that's what the Court said.

11  Q    And how many times in that -- since that time have you

12  requested to see the property and know its location?

13  A    I've spoken with Mr. Ponsetto a few times over the course

14  of the last few months about looking at the property.

15  Q    Has he cooperated with you in making that happen?

16  A    Mr. Ponsetto sent me an email I think it was Friday of --

17  the Friday before the original trial date which would have

18  been sometime January 30th maybe, 29th.  I forget.  I'm not sure

19  what that Friday date was.

20  Q    Uh-huh.

21  A    Indicating that a few pieces of the equipment was at Ms.

22  Gentry's home and the other equipment on the list was at

23  various other locations and that I should contact them and

24  figure out how to get -- how to get access to them.

25  Q    Did he tell you specifically what those locations were?

```
 1   A     No, huh-uh.

 2   Q     Okay.  So as we sit here today, you still do not know

 3   where all these various pieces of equipment are?

 4   A     That's correct.  I know that they have indicated that

 5   four pieces of the equipmenbt are at I believe it's Ms.

 6   Gentry's home if I'm not mistaken.  It might be a commercial

 7   piece of property that she owned, I -- either a home or a

 8   commercial -- under her control I guess I would say.

 9   Q     Okay.  And this is after how many requests?

10   A     I spoke to Mr. Ponsetto several times about this, about

11   trying to get a look at this.

12   Q     Did you speak to anyone else in addition to Mr. Ponsetto?

13   A     I spoke to Mr. Toll when we originally, I believe it was

14   at the hearings because I assumed he would be able to have

15   some access to it, but I'm not sure that he did.

16   Q     Uh-huh.

17   A     So -- so really they're the only two that I've spoken to

18   about it.

19   Q     That was the one time.  And the debtor has not contacted

20   you, neither has Mr. Perkins to inform you where the property

21   is?

22   A     No, they have not.

23   Q     Okay.  Now have you reviewed Mr. Wyman's bankruptcy

24   petition?

25   A     I have, yes.
```

Sweet - Direct/Cross                         PAGE    62

```
 1  Q    And is this the property that he listed as being in his
 2  possession on the date of filing the petition?
 3  A    I believe it's the same property, yes.  There's equipment
 4  that he had in his possession on the date of filing.
 5  Q    And have you reviewed his testimony at the 341 and 2004
 6  exams?
 7  A    I have reviewed a 2004 transcript.  I don't recall the
 8  341 transcript, although I have some discussion with the prior
 9  trustee about those issues.
10  Q    Okay.  Is it your understanding that this is what was
11  commonly referred to as Mr. Linck's property on his petition?
12  A    I think that's what everyone has called it is Mr. Linck's
13  property.
14          MR. TINDALL:  Thank you, Your Honor.  That's all.
15          THE COURT:  Thank you.  Mr. Ponsetto, cross
16  examination.
17                      CROSS EXAMINATION
18  BY MR. PONSETTO:
19  Q    Mr. Sweet, we have had a couple of discussions about this
20  equipment, right?
21  A    Correct.
22  Q    All right.  And I have told you that the vast majority of
23  the equipment is junk and asked you if you wanted to see the
24  junk, isn't that true?
25  A    We have discussed that, yes.
```

1  Q    All right.

2  A    You indicated I think that -- I think --

3  Q    And isn't it true --

4  A    Well, I think you told -- can I answer the question or

5  not?

6         THE COURT:  I think I'd like to hear the answer from

7  Mr. Sweet.  So go ahead, Mr. Sweet.

8  A    I think you specifically told me that you believed this

9  equipment to be of very little value.  And that it's spread

10  out at various job sites and fields, all over the place

11  basically is what I think you told me.

12  Q    Right.  And then did I also tell you why a bunch of this

13  stuff was moved away from a house that Mr. Tindall was in the

14  process of seizing and trying to seize other things?

15  A    Did you tell me why it was moved?

16  Q    Yeah.

17  A    I think you did mention that there was some moving of the

18  equipment so that Mr. Tindall wouldn't take possession of the

19  equipment if I'm not mistaken.  I think that's what -- I think

20  that's what you told me.  They moved it from the house that

21  Mr. Tindall was taking possession of to some other location.

22  Q    And Mr. Tindall knew of it?

23  A    Pardon me?

24  Q    And it was allowed?

25  A    I'm -- I don't -- I wasn't in the case at that time so

1   I'm really not sure what transpired there.  But I -- you had

2   mentioned to me --

3   Q     All right.  So -- so you're kind of speculating.

4   A     I'm speculating based on what you told me, yes.

5   Q     All right.  And based on -- but based on what I have told

6   you, you were interested in four specific pieces of equipment?

7   A     They seemed to be the pieces of equipment that I would

8   have assumed had the greatest value, yes.  They -- they seemed

9   to be the lion's share of what I would consider to be the

10  value of the equipment.

11  Q     A backhoe?

12  A     There was a backhoe, a bulldozer, some type of excavator,

13  and some other machine.  I forget what the exact items were.

14  But there was -- there was four pieces that seemed to be the

15  largest of the -- from the list.

16  Q     And then the rest of them are things like batteries and

17  saws, and --

18  A     They did seem to be a list of things that had a, I guess,

19  what I would consider to be a lesser value and things that

20  probably had a tendency to depreciate much quicker than the

21  machinery that -- the list of four pieces.

22  Q     Have I ever told you that you couldn't look at any of

23  this stuff?

24  A     You've never told me that, no.

25  Q     As a matter of fact, the Friday before February 2nd, we

1  made sure that you had the address of the four major pieces of

2  equipment that you wanted to know where they were, right?

3  A    You -- you did -- you sent me an email, I think it was

4  Friday afternoon and then said these are the four pieces that

5  we have -- I don't have it in front of me, I'm just -- I'm

6  trying to paraphrase what they even said.

7  Q    Trying to -- and --

8  A    These are the four pieces that we talked about.  I don't

9  recall there being an exact address, but there could have

10 been.

11 Q    Right.  I'm pretty sure I did.

12 A    There may have -- there may have been.  And, you know,

13 these are it.  You know, let us know when you want to see

14 them.  You know, the difficulty I had was that was Friday

15 afternoon, the trial was Monday morning.  You know, I wasn't

16 sure did you mean you wanted me to review them before the

17 trial.  I guess I was kind of -- and I don't think I even got

18 the email honestly until the next day because I think it came

19 late in the day if I'm not mistaken, so --

20 Q    That we want to cooperate and you're getting that

21 impression, aren't you?

22 A    I'm getting the impression you sent me an email on Friday

23 afternoon before a Monday morning trial that said these are

24 the pieces of equipment.  I mean --

25 Q    And that trial there was a snow storm and it's been

 1  adjourned and there's been --

 2  A    Correct.

 3  Q    -- an additional week.  And --

 4  A    Correct.

 5  Q    And -- and I think we should look at these.

 6  A    One of the difficulties I have is, I have a whole list of

 7  equipment.  And you've indicated there's four pieces that are

 8  what you believe, and I tend to agree, although I haven't seen

 9  any of this, that that is the lion's share of the -- the

10  asset.

11       Part of the difficulty is, there is property, I'm getting

12  the sense, and I think you've specifically told me all over

13  the place in different people's property, at job sites.  That

14  has a tendency to be fairly difficult to go to people's

15  property and say show me this equipment because I've done that

16  in the past and sometimes you get a gun pointed at you.  And I

17  am not excited over this equipment to get a gun pointed at me

18  by going on to someone's property.

19  Q    And then that's why Diana volunteered to go with you,

20  correct?

21  A    She did.  She did.  I think it was in your email you said

22  we can show you this other equipment that's not specifically

23  at I thought it was her house, but I -- like I said, I could

24  be wrong.  So I guess I'm not -- is there more you want me to

25  talk about on that issue?

1            MR. PONSETTO:  Judge, I have no further questions.

2            THE COURT:  Thank you, Mr. Ponsetto.  Mr. Tindall,

3   redirect.

4            MR. TINDALL:  Sure, I do.

5                      REDIRECT EXAMINATION

6   BY MR. TINDALL:

7   Q    Have you formed a final conclusion that these four pieces

8   are the only ones that have any value?

9   A    No.  I've formed no conclusions because I haven't seen

10  any of it yet.

11  Q    So you need to see all of the equipment in order to

12  determine whether or not your preliminary thoughts on value

13  are accurate?

14  A    Yeah.  I mean it -- there's a -- there's a fairly

15  substantial list of equipment.  Some with greater value, some

16  with lesser value, so --

17  Q    What about the vehicle?

18  A    That was on the list of equipment, you mean?  Is that

19  what you're referring to?

20  Q    I believe it's a Chevy SUV and I forget the year,

21  probably '08.

22            MR. PONSETTO:  Objection, Your Honor, relevance.

23  This is somebody else's vehicle.  My client has no control

24  over somebody else's vehicle.

25            MR. TINDALL:  This is the vehicle that was

```
 1   transferred by Mr. Linck without payment that Mr. Wyman

 2   testified he left at Ms. Gentry's home.

 3           THE COURT:  The Court overrules the objection and

 4   allows the answer.

 5   A    I have not seen that vehicle either.

 6   Q    Okay.  And so if I understand your testimony correctly

 7   for five months -- I'm sorry, four months, October, November,

 8   December, and January, you made repeated requests to be

 9   allowed to inspect this property and be told where it was and

10   heard nothing until late Friday afternoon before the trial

11   date?

12   A    Well, I had many discussions with Mr. Ponsetto about --

13   see, I do 341's every Thursday and he's there pretty much

14   every week.

15   Q    Uh-huh.

16   A    We talked about this case several times.

17   Q    Uh-huh.

18   A    That was an issue, the equipment.  I never got a formal

19   offer hey, here's the equipment, come and look at it until the

20   Friday before trial started.

21   Q    Okay.  Now when -- you said you spoke with Mr. Mason?

22   A    Yes.

23   Q    I don't know whether it was before or after you took

24   over?

25   A    I believe it was -- I believe it was after.  I believe I
```

1   just got a notice that you are the new trustee of this case.

2   And once I got that I called Mr. Mason and said hey, what's --

3   what's going on with this case.

4   Q     Did he tell you who I am?

5   A     He did mention your name, yes.

6   Q     And who did he tell you I was?

7   A     He said you were an attorney that had been retained to

8   prosecute some adversary proceedings that were pending in the

9   Court.

10  Q     I was his attorney?

11  A     That's correct.  Or the estate's --

12  Q     So I was acting on his behalf?

13  A     The estate's attorney, yes, uh-huh.

14  Q     And so Mr. Ponsetto told you that these people moved this

15  equipment away from the debtor's then residence where he's

16  occupying and where he identified it was on the petition in

17  order to avoid my seizing it on behalf of the trustee?

18  A     I don't know if it was on behalf of the trustee or what

19  -- I don't know what the whole -- all the ramifications.  But

20  I understand you represent a creditor and the estate in the

21  case.  So I don't know what the whole gist of what he was

22  getting at.  He did indicate they -- they moved it because

23  they were concerned that you were going to take possession of

24  it.

25  Q     Okay.  And did he tell that we had attempted to seize the

1  house as well?

2  A    He indicated that you were attempting to seize the house

3  that there was some dispute as to whether you could do that.

4  But yeah, he -- he mentioned it to me.  I think Mr. Mason

5  mentioned it to me as well.

6  Q    And whose benefit -- whose behalf was I seizing the house

7  for?

8  A    Well, it would be the estate's I'm assuming.

9           MR. TINDALL:  Thank you.

10           THE COURT:  Mr. Ponsetto, further questions?

11           MR. PONSETTO:  Yes.

12                      RECROSS EXAMINATION

13  BY MR. PONSETTO:

14  Q    Mr. Sweet, when did you first ask me if I could see the

15  property?

16  A    I'm not sure the exact date.  We talked about it a number

17  of times about going to see the property.

18  Q    And I volunteered, right?  I volunteered to -- I

19  volunteered to let you go see it.  I brought this up, right?

20  A    You sent me an email that said hey, this is where the

21  property is at.  I don't recall an exact address, but you've

22  indicated it's there, I have no reason to believe that you're

23  not accurate.  These are four pieces, the rest of it is

24  scattered around in different places.  Let us know --

25  Q    But before that during these 341's when we were talking,

1   when was the first time you said, I want to see these four

2   pieces of equipment and then when you said that did I say no?

3   A     You never told me no, I couldn't see it.  I mean we

4   talked about it and discussed the equipment and what it was.

5   You indicated always that you thought it had very de minimis

6   value of the age and it had been used.

7   Q     Some of it was broken?

8   A     Some of it was broken.

9   Q     Needed repairs.

10  A     Some if it was broke down.  It was in fields, it was not

11  -- you know, I think if I'm not mistaken you thought it was

12  scrap value most of the -- the iron I'll call it, the iron

13  equipment like the bulldozers and things of that nature.  I

14  mean you never told me no, I can't see the equipment.

15  Q     And then the stuff that was over at the house, are you

16  aware that those things were titled in the name of a

17  corporation?

18  A     These are the -- when you say these things, you mean the

19  pieces of equipment?

20  Q     The -- whatever was over at the house that Mr. Tindall

21  seized and was trying to seize other stuff.

22  A     Well, as I understand it these are not items that would

23  be titled.  They're items that may have bills of sale that

24  relate to them.  I don't know that they're titled to anyone to

25  be honest with you.

```
 1  Q     You haven't done a Secretary of State search?

 2  A     Oh, we did, yeah.  They're not -- I mean it's not --

 3  these aren't titled items.  A bulldozer is not a titled item.

 4  You don't get a title for a bulldozer, or a backhoe, or --

 5  they're not a vehicle, they're not things on the -- on the

 6  road like a boat or a trailer, those kind of things.

 7  Q     So the issue of who they belong to, would still be a

 8  valid issue?

 9  A     Could very well be, sure.

10  Q     All right.  Bottom line -- but the bottom line is, is

11  that we have never denied you access?

12  A     You've never told me no, you can't look at it, although

13  there's been some difficulty of where exactly it's at.

14  Because it's spread out all over the place.

15  Q     Well, there's going to be some testimony on that.  It

16  wasn't spread out all over the place as Mr. Tindall said.

17  A     That's what you told me is it was spread out in various

18  locations.  I think you told me that several times.

19  Q     It is.

20  A     So that's what I'm saying.  So I don't care what other

21  testimony there is, that's what you told me and I -- I tend to

22  think that's accurate.

23  Q     All right.

24  A     Right.

25  Q     But you can't -- you can't expound on it further that
```

1 | it's spread all over the place to hide it?

2 | A    Well, I think I've said where is it and you've said well,

3 | it's all over the place, it's in different locations and it's

4 | movable equipment, so it's -- it sounded to me like it was

5 | equipment that was used on job sites.  That one day it might

6 | be in one location, the next day it might be in a different

7 | location.  So it was very difficult to determine on any given

8 | day exactly where everything is at.

9 | Q    But we've never said you can't look at it?

10 | A    No, you never told me that, huh-uh.

11 |        MR. PONSETTO:  All right.  Thank you.

12 |        THE COURT:  Mr. Tindall, any further questions?

13 |        MR. TINDALL:  No, Your Honor.

14 |        THE COURT:  Mr. Sweet, how long do you need to look

15 | at all this equipment, or at least the equipment you think is

16 | worth looking at?

17 | A    Well, I'd like to think I could do it all in one day.

18 | One of the difficult parts is, I'm not 100% sure where it's

19 | at.  I -- I think I've been given the indication that there's

20 | certain pieces at one location.  I don't -- I don't know where

21 | the rest of it's at.

22 |    I guess if -- and I don't know if I have access to it at

23 | whatever location it's in.  I don't know if it's indoors,

24 | outdoors.  It might be in someone's barn.  It might be in a

25 | building.  It might be sitting out in a field.  I guess I just

1   don't -- I don't know.

2       It sounds like it's geographically fairly close to one

3   location within a few miles.  But then again I -- I don't

4   know. I'd like to think I could do it in one day.

5           MR. TINDALL:  Allow yourself two, they don't shovel

6   -- they don't shovel the roads too well.

7           THE COURT:  And that's assuming that you know right

8   where everything is and then maybe someone escorts you from

9   one spot to another in certain cases.

10  A   And that I have access to it when I get to the -- if it's

11  way out in the middle of a field --

12          THE COURT:  Right.

13  A   It might be difficult to go look at because of the snow.

14          THE COURT:  Right.

15  A   Or if it's indoors, it might be difficult unless someone

16  gives me access to the location.  But yeah, assuming I can --

17  I can go look at it, I -- I can't imagine from a list I've

18  seen that it would take more than a few hours.

19          THE COURT:  Fair enough.  Mr. Tindall, after the

20  questioning, line of questioning, anything further?

21          MR. TINDALL:  No, Your Honor.

22          THE COURT:  Mr. Ponsetto?

23          MR. PONSETTO:  No, Judge.  Thank you.

24          THE COURT:  Very good.  Mr. Sweet, I think you can

25  step down for the time being. I'm not too sure that your

1  testimony is complete though because it sounds like you need

2  to look at this and find out what you think it's worth.

3      (WITNESS SAMUEL SWEET WAS EXCUSED AT 12:16 P.M.)

4          MR. SWEET:  I think that's probably accurate.  I

5  suspect if the Court sets another date, maybe between now and

6  that date, I'll --

7          THE COURT:  And that's why I asked some of those

8  questions.

9          MR. SWEET:  Right.

10         THE COURT:  Because I want to know how long you're

11  going to need.  And I know that it's not like you're going to

12  do it tomorrow or the next day and you come back next

13  Wednesday.

14         MR. SWEET:  Sure, sure.

15         THE COURT:  That's not what we're talking about,

16  but --

17         MR. SWEET:  I can't imagine, I mean if Mr.

18  Ponsetto's offer is so good, I can't imagine it not taking

19  more than a day to go look and be pointed out to where exactly

20  the stuff is at.

21         THE COURT:  And is your schedule -- I guess you're

22  probably still under oath.  But is your schedule such that you

23  can do it in the next month, or are you booked so solid that

24  you're going to need three or four months to --

25         MR. SWEET:  I can't imagine this taking more than a

```
 1   -- I'm probably thinking like a week.  I can probably find a

 2   day, assuming it works for --

 3              THE COURT:  Right, everybody else.

 4              MR. SWEET:  Everybody else.  And I would want to get

 5   pictures of the stuff and discuss it with my auctioneer

 6   because depending on where it's at, it depends on how

 7   expensive it is to move versus --

 8              THE COURT:  Right.

 9              MR. SWEET:  -- the cost at auction.  You know,

10   there's some dynamics that go into determining the value of --

11   of the equipment.

12              THE COURT:  Fair enough.  Thank you.

13              MR. TINDALL:  It had been my intention, Your Honor,

14   to move for an order compelling that within a given period of

15   time whatever the Court found reasonable that they identify

16   the location of each piece of equipment and not just the four

17   they think are worth something.  All of it because the trustee

18   needs to determine for himself whether or not the property has

19   value and ordering that they allow him access to it.  Because

20   obviously the suggestion that this could be worked out has not

21   panned out in four months.

22              THE COURT:  Mr. Ponsetto, what about that?

23              MR. PONSETTO:  You know what, it hasn't worked out

24   for four months.  I've been involved in this case for three

25   years.  And in the past month this is the first time I've ever
```

1  had a serious conversation with anybody about valuation.

2     So I'm tired of that.  I'm over it.  We're going to move

3  on.  But the bottom line is, is that I don't have a problem

4  and neither does my client showing them whatever they want to

5  be shown.  She will volunteer to an order.  She doesn't have

6  to be compelled, nor does she want it to be an order

7  compelling her to do it because that means something three

8  steps down the road.

9     She will volunteer to do it.  We need a list of what it

10 is they're talking about.  There are four different lists of

11 what equipment we're talking about.  You give me a list of an

12 equipment that you want to look at, Diana will give you an

13 address of all of them, even if it means that you have to go

14 to the dump because the saw got thrown away in 1999.

15    I don't have a problem with it, but we will resolve it

16 one way or the other.  But I need a list.

17         MR. TINDALL:  Your Honor, I have supplied – I'm

18 sorry, I didn't meant to interrupt.  I have supplied Mr.

19 Ponsetto on at least four separate occasions with the entire

20 bill of sale including what Mr. Linck executed.  Including the

21 descriptions of each piece of equipment.  Nobody should be in

22 any doubt about what it is we're looking for.  The only doubt

23 is where is it and what's it worth.

24         MR. PONSETTO:  Judge, I don't have a problem with

25 that

1          MR. TINDALL:  If he needs a fifth copy, I'll give

2   him a fifth copy.

3          MR. PONSETTO:  Judge, I don't have a problem with

4   that.  The bill of sale he's talking about is the bill of sale

5   from the bank to Diana back in 2006 when they transferred all

6   this equipment to her.

7          MR. TINDALL:  No, I'm talking about --

8          MR. PONSETTO:  There is no bill of sale from Mr.

9   Linck or to Mr. Linck.  And if that's the bill of sale he's

10  talking about, I need to see it.  If he's talking about the

11  bill of sale from 2006, that has Crest Housing with a circle

12  in it, where the bank gave Diana that -- or gave the

13  corporations that stuff after taking it from Wyman, then we

14  have that list.  And that is the list that we will use.

15         MR. TINDALL:  I am talking about the bill of sale

16  dated May 30th, I could be off, 2014 including Mr. Linck and

17  trustee Mason that has attachments to it that describe these

18  pieces of the property.

19         MR. PONSETTO: I've never seen that, Judge.

20         MR. TINDALL:  And some of those may very well be

21  those 2003 documents.

22         MR. PONSETTO:  I've never seen that.

23         MR. TINDALL:  And I have sent them to him at least

24  four times.  And I'll produce the emails I sent each time I

25  sent them one.

1          THE COURT:  Well, I'm not sure that's needed.  I was

2   looking to see if the bill of sale was actually attached to

3   one of your pleadings, Mr. Tindall.  I can't find it.  Because

4   I was just going to slap it right up on the wall like we've

5   done it before.  So this is the bill of sale.

6       But I certainly think it's appropriate to have an order.

7   One, to find exactly what the equipment is so that there's no

8   issue of what it may be.

9          MR. TINDALL:  I've attach the bill of sale and all

10  its exhibits to that order.

11          THE COURT:  Yeah, exactly right.  And then you know,

12  Mr. Sweet needs to arrange some times to do that.  And he's a

13  busy enough man that he just can't drop it all and do it

14  tomorrow or the next day.  So I want that done before I have

15  this case started again which gets us to the issue -- Ms.

16  McFarlane, we have March 10th?

17          THE CLERK:  Yes.

18          THE COURT:  March 10 is available.  Now I want to

19  clear that date before we go any further and that's a Tuesday.

20          MR. PONSETTO:  I'm sorry, Judge.  March 10th is the

21  next --

22          THE COURT:  March 10th.  And that would be a full

23  day.

24          MR. PONSETTO:  March 10 full day should be fine,

25  Judge.

1          THE COURT:  Okay.  Mr. Tindall, what do you think?

2    Do you need to look at some --

3          MR. TINDALL:  I know I have a number of proceedings

4    in front of Judge Shapero and March 5th is one of them.  I

5    don't know whether the 10th is, but I can -- I'm going to say

6    right now it's fine.

7          THE COURT:  I see.  Do you think the proceedings are

8    in front of Judge Shapero?

9          MR. TINDALL:  Yes.

10          THE COURT:  Okay.  Well, let's see.

11          MR. TINDALL:  I know March 5 there are summary

12    judgment motions up.

13          THE COURT:  Fair enough.  Judge Shapero has a trial

14    on March 10, it's <u>Diehl v Lynch</u>.

15          MR. TINDALL:  Oh.

16          THE COURT:  That's not you?

17          MR. TINDALL:  That is not me.

18          THE COURT:  Okay.

19          MR. TINDALL:  That's fine.

20          THE COURT:  Then it looks like, you know, like I

21    said, I'm looking at Judge Shapero's calendar.

22          MR. TINDALL:  Uh-huh.  I just know he's moved it

23    around because opposing counsel is gone to Florida and then he

24    scheduled something else in April and just yesterday --

25          THE COURT:  Uh-huh.

 1              MR. TINDALL:  He came out with a notice on something

 2  else and --

 3              THE COURT:  Well, as it stands right now it doesn't

 4  look like that's your trial, Mr. --

 5              MR. TINDALL:  It's not the 10th, so, that's okay.

 6  Then I'm fine.

 7              THE COURT:  March 10.  And Mr. Sweet, does that give

 8  you enough time to -- assuming that Mr. Tindall gets the list

 9  to Mr. Ponsetto and they can figure out what those items are

10  and that should give you enough time to go out there and take

11  a look at what you want to look at?

12              MR. SWEET:  I think so, sure.

13              THE COURT:  Very good.  Well, that will be the

14  adjourned date then, March 10 at 9:30.  And if need be, if

15  someone needs to file a report with the Court saying that they

16  have tried to look at this equipment and it's not been made

17  available, or if they've tried a number of times to set

18  meetings and you know, the trustee's not been available, I'd

19  like to know that.  But I'm assuming that when we come back

20  next month this equipment will all be reviewed by Mr. Sweet so

21  we can have a better idea what he's trying to do.

22              MR. PONSETTO:  Judge, Diana has brought up a good

23  point.  There are four lists of equipment.  All of them deal

24  with different points during this matter.

25              THE COURT:  Uh-huh.

1          MR. PONSETTO:  The equipment that is -- that is at

2  issue is the equipment that Linck purchased from Diana.  So

3  the only list that matters is the list of equipment that was

4  purchased by Linck.

5      That's the only list that matters.  Any lists from

6  specifically the 2006, I think it is, transfer from the bank

7  to Crest Housing.  That -- that has nothing to do with this.

8      If -- if there is a list that is in existence, I mean and

9  it should be, I mean the whole purpose of Linck purchasing it

10  would be reduced to writing and then the transfer back.  That

11  -- that should be a writing somewhere.

12      But that begs the question as to whether or not Linck

13  ever had ownership to transfer.  And if Linck never had

14  ownership to transfer, then what are we talking about.

15      So there's got to be a list of the equipment that Linck

16  allegedly purchased and allegedly got -- was gotten back by

17  Diana.  And that's the only list that counts.

18          MR. TINDALL:  And those -- those are the lists that

19  were attached to the bill of sale and they are copies of

20  previous years documents from 2003, 2006, and I forget when

21  the other ones were as well as the title to the vehicle that

22  belonged to Ms. -- well, it was transferred to Mr. Wyman but

23  for which he didn't pay which therefore is Mr. Linck's.

24      Those were all attachments to the bill of sale.  They

25  clearly set forth all the equipment that Mr. Linck believed

1   and were his.  That the bankruptcy petition seemed to confirm

2   were his.  That his testimony and Mr. Wyman's seemed to

3   confirm were his.  And so they were all attached to the bill

4   of sale.  There is no different list than those which

5   obviously were attached to the bill of sale.  That's how we

6   incorporated them.

7           MR. PONSETTO:  And then who attached those to the

8   bill of sale, Mr. Linck, or you?

9           MR. TINDALL:  Mr. Linck's attorney and I both.  Mr.

10  Linck signed them with them attached.  They were exhibits to

11  the bill of sale at the time it was signed and conveyed over

12  as far as the settlement.

13          MR. PONSETTO: Where is the bill of sale?

14          MR. TINDALL:  As I said, you've got four copies of

15  it now.

16          THE COURT:  All right.  Well, let's do this.

17          MR. TINDALL:  But I will attach it to the order I

18  submit.  Now do you want him to review the order, Judge, or do

19  you want me to just submit it?

20          THE COURT:  No, I want you to give it to Mr.

21  Ponsetto to review.  And if there's a problem with the bill of

22  sale, someone could give us a call.

23      And what I'm going to -- I'm just going to tell you

24  what's going to happen.  If someone gives us a call and say we

25  can't agree on the settlement of this order, I'm going to ask

1  Ms. McFarlane to set it for a telephonic hearing and I'm going

2  to ask you, Mr. Tindall is submit what you think is the right

3  order and the bill of sale.

4          MR. TINDALL:  Uh-huh.

5          THE COURT:  And Mr. Ponsetto, same rule for you.

6  Proper order, bill of sale.  And that way I've got the

7  plaintiff and I got the defendants' version.  And I'll get it

8  flushed out one way or another.  And that way we'll have an

9  agreed order and I want this done so that Mr. Sweet doesn't

10  get an email, you know, the Friday before this Tuesday trial

11  and say hey, by the way, I got all day Monday open and really

12  it's too bad because that's when your first meeting of

13  creditors are, Mr. Sweet.  That's --

14          MR. TINDALL:  Well, that's fine, Judge.  What I'll

15  do then is I'll prepare the order, I'll send it over to Mr.

16  Ponsetto to review and I will submit it with a seven day

17  notice.  And that way you'll have from the --

18          THE COURT:  Okay.

19          MR. TINDALL:  -- jump to figure out when you have an

20  opening to deal with it if you have to.

21          THE COURT:  Right.

22          MR. PONSETTO:  And then if I have a problem, I'll

23  file an objection and easy peasy.

24          THE COURT:  But that's probably just as -- yeah, if

25  you can't agree on it, do the notice of presentment.  Mr.

1  Tindall, the only thing I'm going to caution you on is we

2  can't have attachments to the order, so if you want to make it

3  an exhibit and refer to the order as the exhibit, file it,

4  whatever it is, that's fine.

5          MR. TINDALL:  That's what I would do, attach it to

6  the notice.

7          THE COURT:  Yeah, they're going to kick it back on

8  you if you do it otherwise.

9          MR. TINDALL:  Yeah.

10         THE COURT:  I've -- I've seen it happen too many

11 times, so --

12         MR. TINDALL:  In fact I -- I -- I was going to say

13 but I won't bother wasting the Court's time to confirm it.  I

14 believe this bill of sale was attached to the motion to hold

15 me in contempt.  So I believe that this bill of sale is

16 already on the record somewhere, but --

17         THE COURT:  The motion to, I'm sorry, what?

18         MR. TINDALL:  Motion to hold Mr. Wyman and Ms.

19 Gentry in contempt.

20         THE COURT:  And would that be -- in what case would

21 that be?

22         MR. TINDALL:  Well, that's a good question, Judge.

23 I filed the case -- oh, motion and brief, there you go.  I

24 filed the motion originally in the Pickler matter.  Because

25 the order and the bill of sale emanated from the consent

```
 1   judgment in the Pickler matter.

 2           THE COURT:  Uh-huh.

 3           MR. TINDALL:  Mr. Ponsetto and Mr. Perkins then

 4   filed responses in I think it was Mrs. Gentry's bankruptcy

 5   case.  And Mr. Perkins may have done it in the adversary

 6   proceeding having to do with Mr. Wyman's discharge.  I don't

 7   know.

 8       They seem to file them all over the place.  But let me --

 9   ah, let me see.  Exhibit 1 to that motion was a proposed

10   order, notice.  Number 4 certificate of service.  Exhibit

11   number -- ah, yes.  6-1 was the bill of sale but it did not

12   have -- oh, yes it did.  It had exhibits attached to the bill

13   of sale.

14           THE COURT:  What -- what case and what docket

15   number, Mr. Tindall?

16           MR. TINDALL:  This would be the Pickler case and --

17           THE COURT:  I got that.

18           MR. TINDALL:  As luck would have it, my version is

19   an original not the --

20           THE COURT:  Well, about what date was it filed?

21           MR. TINDALL:  July 31, 2014, motion and brief for

22   order of contempt against debtor, Christopher Wyman, Diana

23   Gentry to enforce the judgment of this Court.

24           THE COURT:  Motion for contempt.  It's taking a

25   little longer to download.
```

1    MR. TINDALL:  Well, just for the record, 6-1 was the

2 bill of sale itself, or Exhibit 6.

3    THE COURT:  Yeah.

4    MR. TINDALL:  Exhibit 6-1 was the page of the

5 petition that described the equipment.  Then there was a copy

6 of the certificate for a 2004 Chevrolet Silverado.  There was

7 a list of construction equipment constituting three, six,

8 seven items.  Then there was a copy of the October 16 bill of

9 sale.  And there was a copy of Mr. Linck's check, along with

10 his deposition testimony as to what he bought or didn't buy.

11    THE COURT:  I'm still waiting.

12    MR. TINDALL:  I will tell you that Mr. Ponsetto's --

13 one of Mr. Ponsetto's responses was docket number 269 filed 12

14 days later, so it's going to be in that neighborhood.

15    THE COURT:  Well, here we go.  This is Exhibit 6,

16 that's it.  Exhibit 6-1 is a bill of sale it looks like it.

17    MR. TINDALL:  Exhibit 1 to that.

18    THE COURT:  Yeah, then it says see attached, right?

19    MR. TINDALL: Yes.

20    THE COURT:  And then we go to Exhibit 1 which is --

21    MR. TINDALL:  That's the page of Wyman's petition

22 that lists the equipment that he testified belonged to Mr.

23 Linck that was in his custody.

24    THE COURT:  Okay.  And then we go --

25    MR. TINDALL:  The vehicle --

```
 1              THE COURT:  You know what's amazing?  Is the screen
 2  copy is better than the monitor copy.
 3              MR. TINDALL:  Higher resolution.
 4              THE COURT:  I don't know.
 5              MR. TINDALL:  That's the construction equipment, all
 6  seven pieces of it.
 7              THE COURT:  Now this is the bill of sale that Mr.
 8  Ponsetto was I think referencing earlier too.
 9              MR. TINDALL:  Apparently according to Mr. Linck's --
10  that was included too as part of the equipment they were
11  selling.
12              THE COURT:  So there's a road map, Mr. Ponsetto.
13              MR. PONSETTO:  All right.  So it's 12-03348 docket
14  243-6.
15              MR. TINDALL:  Do you still want me to include
16  another copy of that with the order, Judge?
17              THE COURT:  No, just reference it so that I can look
18  -- look it up.  You're going to need it for your order anyway.
19  But I don't need a copy because I -- I just needed the road
20  map.
21              MR. TINDALL:  Uh-huh.
22              THE COURT:  So there you go, Mr. Ponsetto.  That's
23  where we're starting.
24              MR. PONSETTO:  Thank you, Judge.
25              THE COURT:  You're welcome.  Anything more, Mr.
```

1

2

3

4

5

6

7   I certify that the foregoing is a correct transcript from the

8   electronic sound recording of the proceedings in the

9   above-entitled matter.

10

11   /s/Deborah L. Kremlick, CER-4872         Dated: 5-30-16

12

13

14

15

16

17

18

19

20

21

22

23

24

25

IN RE:

      CHRISTOPHER D. WYMAN,              Case No. 12-32264-dof
                                        Chapter 7 Proceeding
            Debtor.                     Hon. Daniel S. Opperman

_____/

MICHAEL A. MASON and
BARBARA DUGGAN,

      Plaintiffs,

v.                                        Adversary Proceeding
                                        Case No. 12-3347-dof

DIANA KAYE GENTRY,

      Defendant.

_____/

<u>ORDER REGARDING INSPECTION OF PERSONAL PROPERTY</u>

      This matter having come before this Court for trial on February 10, 2015, and after consideration of the testimony of Trustee Sweet regarding the location of the equipment, machinery and vehicle(s) described in the attachments to the Bill of Sale, DE 243-6, Case No. 12-3348, attached as Exhibit 1, and the need to inspect this property by the Trustee; and the Court being fully advised in the premises;

      IT IS HEREBY ORDERED that the Defendant, the Debtor, their agents, attorneys, employees, successors and assigns shall disclose the exact location of and/or account for each item listed in the attachments to the Bill of Sale within three (3) days of the date of entry of this Order;

1

IT IS FURTHER ORDERED that the equipment, machinery, vehicle(s), or other property described in the attachments to the Bill of Sale shall not be moved without written notice to the Trustee;

IT IS FURTHER ORDERED that the Debtor and/or the Defendant shall make themselves available to the Trustee on forty-eight (48) hours advanced notice to their respective attorneys at such place and time as the Trustee shall designate to assist the Trustee in locating, inspecting, and determining the value of each item described in the attachments to the Bill of Sale, which shall be completed by March 10, 2015.

Signed on February 26, 2015

```
        /s/ Daniel S. Opperman
      Daniel S. Opperman
      United States Bankruptcy Judge
```

2

## OFFER TO PURCHASE REAL ESTATE

1. THE UNDERSIGNED hereby offers and agrees to purchase the following land situated in the **TOWNSHIP** of **COHOCTAH** **LIVINGSTON** County, Michigan, described as follows: ...

being commonly known as **JONES**

together with all improvements and appurtenances, if any, now in or on the premises (unless specifically excepted herein), including all buildings, fixtures, built in appliances, all window treatments including hardware, attached floor coverings, attached fireplace doors, screens, gas logs, garage door opener and controls, screens, storm windows and doors, landscaping, fences and mailboxes, all ceiling fans, alarm system, radio and television antennas, rotors and controls, water softener (unless rented), water pump, pressure tank, fuel in tank, incinerator, if any, and gas, oil and mineral rights owned by Seller and to pay therefor the sum of

**Eighty-Two Thousand** Dollars ($ **82,000.00** ) subject to the existing building and use restrictions, easements of record and zoning ordinances, if any, providing said restrictions, easements and zoning ordinances do not unreasonably restrict the Purchaser's intended use of the property; upon the following conditions:

**THE SALE TO BE CONSUMMATED BY:** ☒ A ☐ B ☐ C ☐ D OR ☐ E.

**A.** **CASH SALE.** Delivery of the usual Warranty Deed conveying a marketable title. Payment of purchase money is to be made by cash, cashier's or certified check.

**B.** **CASH SALE WITH NEW MORTGAGE.** ...

**C.** **MORTGAGE ASSUMPTION (SIMPLE) OR LAND CONTRACT ASSIGNMENT.** ...

**D.** **SALE TO EXISTING MORTGAGE - REQUALIFICATION REQUIRED.** ...

**E.** **SALE ON LAND CONTRACT.** Payment of the sum of $ ...

2. The Seller shall deliver and the Purchaser shall accept possession of said property subject to the rights of the following tenants: **N/A**

3. The Broker is hereby authorized to make this offer and the deposit of $ **3,500.00** in the form of cash, cashier's check, certified check, personal check, promissory note shall be held by the Broker ...

4. **APPLICABLE TO V.A. OR F.H.A. SALES ONLY:** ...

5. It is further understood between Purchaser and Seller that the additional personal property listed herein has a value of $ **.00**

6. **ADDITIONAL OFFERS.** ...

7. **SELLER'S DISCLOSURE:** Purchaser ☐ has ☒ has not received a copy of a Seller's Disclosure Statement ...

8. **AGENCY:** ...

ADDITIONAL CONDITIONS, if any: (Use reverse side if needed)
CONTINGENT UPON PURCHASERS SATISFACTORY HOME INSPECTION/WALK THROUGH. INSPECTION/WALK THROUGH TO BE COMPLETED WITHIN 48 HOURS AFTER COURT APPROVAL/ACCEPTANCE. CONTINGENT UPON PURCHASERS SATISFACTORY REVIEW OF TITLE WORK. CONTINGENT UPON APPROVAL OF OFFER BY THE COURT.

NOTE: GENERAL CONDITIONS of sale printed on reverse side are incorporated and made a part hereof. Purchaser and Seller shall initial the reverse side of this agreement.

By the execution of this instrument, the Purchaser acknowledges receipt of a copy of this agreement.
IN THE PRESENCE OF:

Witness _____

Witness _____ Purchaser _____ L.S.

Dated **7-15-14** Purchaser _____ L.S.

Address **910 S ORTONVILLE RD #200 ORTONVILLE MI**

Received from the above named Purchaser the deposit money above mentioned which will be applied as indicated in Paragraphs 3' above and 12' reverse, or will be returned forthwith after tender if this foregoing offer and deposit is declined.

Broker By _____

**ACCEPTANCE:** By affixing Seller(s) signature(s) hereto, the Seller(s) accepts this offer ... a commission of **0** percent of the sale price stated above.

IN THE PRESENCE OF:

Witness _____

Witness _____ Seller _____ L.S.

Dated _____ CHRISTOPHER D NOXAN - TROSTER

FOR MICHAEL MASON BANKRUPT Estate - Case No. Address **12-32264**

The undersigned Purchaser hereby acknowledges receipt of a copy of the Seller's signed acceptance of the foregoing Offer to Purchase.

Purchaser _____ L.S.

# GENERAL CONDITIONS OF SALE

9. As evidence of title, Seller agrees to furnish Purchaser at the time of closing, a commitment for a Policy of Title Insurance without standard exceptions in an amount not less than the purchase price, bearing date later than the acceptance hereof and guaranteeing the title to the condition required for the performance of this offer. Said Commitment of Title Insurance shall be converted to a Policy of Title Insurance subsequent to closing and forwarded to Purchaser as soon as all necessary documents have been processed and recorded to cause the issuance of a Policy of Title Insurance.

10. If this offer is accepted by Seller and title can be conveyed in the condition required hereunder, the Purchaser agrees to complete the sale within ten days after the issuance of the Commitment for Title Insurance. However, if the sale is to be consummated in accordance with Paragraph B or D, then closing will be as soon as the mortgage application is approved and a closing date can be obtained from the lender. The location of closing shall be determined by the Listing Broker or lending institution, if applicable.

11. If objection to title is made, based upon a written opinion of Purchaser's attorney that the title is not in the condition required for performance hereunder, the Seller shall have thirty days from the date he is notified in writing of the particular defects claimed, either to (1) make a good faith effort to remedy the title defect(s) or (2) obtain a Title Commitment (insuring over said defect(s). The Purchaser agrees to complete the sale within ten days following delivery of the retained Title Commitment. If the Seller is unable to remedy the title or obtain Title Insurance within the time specified, the deposit shall be refunded forthwith to Purchaser in full termination of this agreement, unless Purchaser elects to proceed with the sale accepting such title as Seller is able to convey.

12. In event of default by the Purchaser hereunder, the Seller may, at his option, elect to enforce the terms hereof or declare a forfeiture hereunder and retain the deposit as liquidated damages. In event of default by the Seller hereunder, the Purchaser may, at his option, elect to enforce the terms hereof, or demand and be entitled to an immediate refund of his entire deposit in full termination of this agreement.

13. All taxes and assessments which have become a lien upon the land, whether recorded or not recorded, at the date of closing shall be paid by the Seller. Excepting, however, those taxes which, pursuant to Michigan Public Act 80 of 1994 became a lien on December 31 of the year prior to the date of this agreement, and which first become due and payable on a date subsequent to the date of closing. Current taxes, if any, shall be prorated and adjusted as of the date of closing in accordance with the DUB DATE basis of the municipality or taxing unit in which the property is located on a $45 per basis. Interest, rents, insurance, condominium or association dues or fees shall be prorated and adjusted in a like manner, Broker may retain from the amount due Seller at closing, a minimum of two hundred ($200.00) dollars for water charges. (Based upon water usage of the community.) When the final water bill or reading is received, all water adjustments shall be made through the day of ☒ closing ☐ occupancy.

14. Purchaser and Seller hereby acknowledge notice of the fact that Broker may accept a fee or consideration with regard to the placement of an abstract, loan or mortgage, life, fire, theft, flood, title other casualty or hazard insurance arising from this transaction and expressly consent thereto as required by Michigan Law. Purchaser shall pay the cost of recording the deed and/or security interests, all mortgage loan closing costs required by mortgagee.

15. By the execution of this agreement, the Purchaser acknowledges that he has examined the above described premises and is satisfied with the physical condition of structures thereon and is purchasing said real estate in an "AS IS CONDITION" and that neither the Seller nor Broker make any warranties as to the land and structure being purchased or the condition thereof. Purchaser acknowledges that he has inspected the premises covered hereby and that he is satisfied with its condition. Seller agrees to maintain the premises in the same condition as exists at time of acceptance of this offer until possession is delivered to Purchaser. In the event property herein has been winterized, it shall be the obligation and expense of the Seller to de-winterize same prior to closing.

16. Purchaser shall have the right to a walk-through inspection of the premises being purchased within twenty-four hours prior to closing in order to determine, among other things, if the premises and any personal property said equipment being purchased have been maintained and are in no worse condition at the time of closing than they were at the time this agreement was accepted by the Seller, normal wear and tear excepted.

17. It is understood and agreed between both Purchaser and Seller herein that in the event a balloon note or payment shall become due in any of the above methods of financing, or that in the event Purchaser elects to finance subject property through an Adjustable Rate Mortgage and future interest rates increase to the displeasure of Purchaser, that Broker(s) herein shall be held harmless of any wrongdoing or liability with regard to the possible "lack of availability" of favorable financing when said note or balloon payment becomes due or future adjustments occur in mortgage interest rates.

18. At all times under this agreement where certain time constraints are set forth, the parties have agreed that TIME IS OF THE ESSENCE and that no extensions of said time limits are expected or agreed to unless specifically agreed to in writing.

19. This is a legal and binding document, and both Purchaser and Seller acknowledge that they have been advised to consult an attorney to protect their interests in this transaction. Where the transaction involves financial and tax consequences, the parties acknowledge that they have been advised to seek the advice of their accountant or financial advisor.

20. This agreement supersedes any and all understandings and agreements and constitutes the entire agreement between the parties hereto and Broker (other than the listing/commission agreement) and no oral representations or statements shall be considered a part hereof.

21. If two or more persons execute this agreement as Purchaser or Seller their obligations hereunder shall be joint and several and the covenants herein shall bind and inure to the benefit of the personal representatives, administrators, successors and assigns of the respective parties. Whenever any words, including pronouns, are used herein in the masculine gender, they shall be construed as though they were also used in the feminine or neuter gender in all cases where they would so apply. Whenever any words, including pronouns, are used herein in the singular or plural form, they shall be read and construed in the plural or singular respectively, whenever they would so apply.

22. RISK OF LOSS. The Seller is responsible for any damage to the property, except for normal wear and tear, until the closing. If there is damage, the Purchaser has the option to cancel this agreement and the deposit shall be refunded to the Purchaser or he can proceed with the closing and either:
a. require that the Seller repair the damage before the closing; or
b. deduct from the purchase price a fair and reasonable estimate of the cost to repair the property.

23. Purchaser and Seller acknowledge that no representations, promises, guaranties, or warranties of any kind including, but not limited to, representations as to the condition of the premises were made by the Broker, his/her sales persons, other cooperating sales persons or persons associated with Broker.

24. In consideration of the Broker's effort to obtain the Seller's approval, it is understood that this offer is irrevocable for five (5) days from the date hereof, and if not accepted by the Seller within that time, the deposit shall be returned forthwith to the Purchaser. If the offer is accepted by the Seller, the Purchaser agrees to complete the purchase of said property within the time indicated above.

25. Purchasers ☒ DO ☐ DO NOT choose to have property privately inspected at their expense. (Note: Inspections required by FHA, VA, other lenders or municipalities are not made for, nor should they be relied upon by Purchasers.) If property is to be privately inspected, the following clause shall govern: Sellers shall permit an inspector(s) of Purchaser's choosing to have access to the property for the purpose of inspecting and reporting upon the general physical condition of the property, and its plumbing, heating and electrical systems, air quality and verification of square footage. Purchaser assumes liability for any damage to Sellers property caused by such inspection. The inspection shall be concluded within _____ calendar days after acceptance of this offer. If the inspection discloses any defects in the property which remains in the Purchasers having substantial cause to be dissatisfied with the current physical condition of the property and its systems, they shall notify the Sellers, in writing, within three calendar days following the inspection. Failure to notify Sellers of such defects within this time period shall constitute a waiver of this paragraph by the Purchasers and they shall take the property "AS IS."
If Sellers are notified of defects, they shall have _____ calendar days in (a) repair or provide for repair to the satisfaction of the Purchaser, or (b) declare their unwillingness to repair, in which case this Agreement shall be null and void and Purchaser's deposit shall be returned. Purchasers acknowledge that the Salesperson(s) have recommended that Purchasers obtain a private inspection.

26. ☐ ARBITRATION. Any claim or demand of Seller(s), Purchaser(s), Broker(s), or Agent(s) or any of them, arising out of this Offer To Purchase but limited to any dispute over the disposition of any earnest money deposits or arising out of or related to the physical condition of any property covered by this Offer To Purchase, including without limitation, claims of fraud, misrepresentation, warranty and negligence, shall be settled in accordance with the rules, then in effect, adopted by the American Arbitration Association and the Michigan Association of REALTORS®. This is a legally binding arbitration agreement, between the Purchaser(s), Seller(s), and/or Broker(s). Failure to agree to arbitrate does not affect the validity of this Offer To Purchase. A judgment of any circuit court shall be rendered upon the award of arbitrations, MCL 600.5001, MSA 27A.5001, as amended, and the applicable court rules, MCR 3.602, as amended. The terms of this Offer To Purchase shall survive the closing.

The parties acknowledge that they understand that, by agreeing to binding arbitration, they have given up the right to a day in court and they understand the arbitration process and that the award of the arbitrator is final and conclusive and not appealable except for limited due process reasons as set forth in the Michigan law and court rules herein before set forth.

☒ The parties do not wish to agree at this time to arbitrate any future disputes.

27. FACSIMILE AUTHORITY. It is agreed to by the parties that offers, acceptances and notices required hereunder can be delivered by Facsimile (Fax) copy to the parties or their agents provided, a hard copy (originally signed copy) is mailed or delivered in a timely manner and the date and time of the receipt of the Fax shall be the date and time of said offer, acceptance or notice.

28. In the event Seller makes any written change in any of the terms and conditions of the offer presented by Purchaser, such changed terms and conditions shall constitute a counteroffer by Seller to Purchaser and which shall remain valid until ___NOON___ at ___7/31/12___, unless earlier withdrawn in writing, and shall require acceptance by the Purchaser by initialing such change before such date and time.

29. The following ADDENDUM(S) are attached hereto and made a part hereof: ___N/A___

**ADDITIONAL CONDITIONS:**
SELLER TO CREDIT PURCHASER $5,000.00 TOWARDS REAL ESTATE COMMISSIONS ETC. SELLER TO CREDIT PURCHASER $4,700.00 TOWARDS WELL AND ARSENIC WATER ISSUES PER THE ATTACHED WELL INFORMATION FROM LIVINGSTON COUNTY. CLOSING WITHIN 30 DAYS OF COURT APPROVAL. EARNEST MONEY DEPOSIT SHALL BE MAILED TO TRUSTEE UPON COURT APPROVAL/ACCEPTANCE OF OFFER. CASE NO. 12-32264 - MICHAEL MASON BANKRUPT ESTATE.

30. ATTORNEY REVIEW AND APPROVAL. Buyer initial ☐ Yes ☐ No Seller initial ☐ Yes ☐ No. This offer is contingent upon the review and approval by legal counsel of the buyer and/or the seller within _____ calendar days. If either party objects in writing in care of the listing or selling broker within the time specified in writing in care of this listing or selling broker, then this transaction may be considered null and void and neither party shall have any further obligation to each other and the selling broker is authorized to release any and all earnest money deposited back to the buyer.

The parties hereto have read the GENERAL CONDITIONS of this contract and have affixed their initials as acknowledgement and acceptance:

Purchaser(s) initials: _____

Seller(s) initials: _____

CASH ONLY IF ALL CheckLock™ SECURITY FEATURES LISTED ON BACK INDICATE NO TAMPERING OR COPYING

**Rison Construction, L.L.C.**
910 S. Ortonville Road, Ste. 200
Ortonville, MI 48462
(248) 627-2168

OXFORD BANK
Ortonville, Michigan 48462
74-433/724

**10080**

7/15/2014

PAY TO THE
ORDER OF   Christopher D Wyman, Trustee                                         $ **3,500.00

Three Thousand Five Hundred and 00/100************************************************  DOLLARS

Christopher D Wyman, Trustee
for Michael Mason Bankrupt Estate
Case No. 12-32264

MEMO   EMD for 1011 Jones Rd, Howell, MI

⑈010080⑈ ⑈072404333⑈ 40⑈0568⑈7⑈

---

Rison Construction, L.L.C.                                                          10080

Christopher D Wyman, Trustee

| Date | Type | Reference | | Original Amt. | Balance Due | Discount | Payment |
|------|------|-----------|--|---------------|-------------|----------|---------|
| 7/15/2014 | Bill | | | 3,500.00 | 3,500.00 | | 3,500.00 |
| | | | | | | Check Amount | 3,500.00 |

7/15/2014 (above Balance Due / Discount)

Oxford Bank        EMD for 1011 Jones Rd, Howell, MI                              3,500.00



**Livingston County Department of Public Health**

Environmental Health Division
2300 E. Grand River Ave.
Howell, MI 48843
517.546.9858 * 517.546.9853 FAX
co.livingston.mi.us/health

PERMIT #: **WEL2009-00123**
APPLIED: 6/10/2009
ISSUED: 6/16/2009
EXPIRES:

## Well Permit

**WEL**

| | | |
|---|---|---|
| SITE ADDRESS: | **1011 W JONES RD HOWELL** | |
| PARCEL NO.: | 02-24-300-007 | |
| TOWNSHIP: | Cohoctah Township | |
| SUBDIVISION: | | |
| LOT/PARCEL: | | |
| DIRECTIONS: | OAKGROVE TO JONES - EAST | |

| OWNER | BUILDER | CONTRACTOR |
|---|---|---|
| CHRISTOPHER WYMAN<br>1011 JONES RD<br>HOWELL MI 48855<br>PH1 517-376-0559 | | ADAMS WELL DRILLING<br>5803 STERLING DR<br>HOWELL MI 48843<br>PH1 517-545-7517 |

Environmental Sanitarian: **Bob Paul**     Issued Date: **June 16, 2009**

**Project Description:**

**NOT APPROVED**
Livingston County Department
of Public Health
Name _____
Date _____

**Information:**

Type of Work: Replacement
Type of Water: Residential
Sewer Type: On-Site
Well First:

**Special Requirements:**

ALL WELL CONSTRUCTION ACTIVITIES SHALL COMPLY WITH PART 127, ACT 368, OF 1978, AS AMENDED, AND SECTION 400 OF THE LIVINGSTON COUNTY SANITARY CODE.

FINAL PERMIT APPROVAL CONTINGENT UPON SUBMITTAL OF ACCEPTABLE: 1. BACTERIOLOGY ANALYSIS, 2. NITRATE ANALYSIS, 3. ARSENIC ANALYSIS, 4. WELL RECORD, AND 5. WELL DRILLING NOTIFICATION.

IF ARSENIC IS DETECTED ABOVE THE DRINKING WATER STANDARD (0.010 MG/L), THE WELL SHALL NOT BE APPROVED UNTIL SUCH TIME AS 1. ACCEPTABLE WATER TREATMENT HAS BEEN INSTALLED AND PROVIDES WATER BELOW 0.010 MG/L, OR 2. A NEW WELL IS DRILLED AND PROVIDES WATER BELOW 0.010 MG/L. PLEASE CONTACT LCDPH TO DISCUSS OPTIONS AND REQUIREMENTS.
EXISTING WELL MUST BE PROPERLY ABANDONED ACCORDING TO R325.1662 -1665 OF GROUNDWATER QUALITY CONTROL, PART 127, ACT 368, P.A. 1978. INDICATE ON WELL LOG AS TO ABANDONMENT OF OLD WELL.

*LTI/ LONG ONE, TO TWO DIGITS_*   WELL Log - OK 1/26/12AA
*LEFT MSO W ADAMS.*
*BP 7/10/09*
*Hook P RP 8/14/09*
*UNABLE TO ACCESS TANK, AC, CAP CONDUIT OK*

Environmental Sanitarian:        Date Finaled:



**LIVINGSTON COUNTY DEPARTMENT OF PUBLIC HEALTH**
ENVIRONMENTAL HEALTH DIVISION
2300 E. Grand River, Suite 102  •  Howell, Michigan 48843-7578
(517) 546-9858  •  FAX (517) 546-9853  •  www.lchd.org

Application for Sewage Disposal and/or Water Supply Facilities
For Single, Two Family, Industrial, Commercial & Multiple Family Dwellings

| ☐ Commercial | ☐ New Construction | Septic Permit # |
| ☐ Residential | ☒ Replacement | Well Permit # 2009 - 00123 |

## I. LOCATION OF BUILDING   *Please Print or Type*

| Address 1811 Jones Rd | City/Village Howell | Zip Code 48843 |
| Township COHOCTAH | Tax Code # 02-24-300-007 | Section # 24205 |
| Subdivision | Lot(s) # | Parcel # | Acreage 10 |

Directions OAKGROVE to JONE - EAST

**Residential only:**

| Geo Thermal Heating/Cooling: yes ☐ no ☒ | Type: | If yes, must be included on site plan |
| # of bedrooms | Den/Office proposed | ☐ yes | no ☐ |
| Is plumbing elevation lower than the septic tank making it necessary to install a sewage lift pump? ☐ yes | no ☐ |

**Commercial only:**

| Business Name | | |
| Premise Usage | # of Employees/Occupants |
| Max. Est. Daily Wastewater Flow | How determined |

### A. OWNER

| Name CHRISTOPHER Wyman | Phone: (517) 376 0559 |
| Address 1811 Jones Rd | |
| City/State Howell        48855 | Zip Code |

### B. CONTRACTOR for Sewage Disposal System

| Name | Phone: (   ) |
| Address | |
| City/State | Zip Code |

### C. CONTRACTOR for Water Supply

| Name Adams Well Drilling | Phone: (517) 545-7572 |
| Address 5893 Sterling DR | |
| City/State Howell | Zip Code 48843 |

### D. BUILDER

| Name | Phone: (   ) |
| Address | |
| City/State | Zip Code |

I hereby apply for this permit and have authorization to do so. I understand this is a construction permit only and the sewage disposal system and/or well is not to be put into service until final written approval has been granted. I further state the information given herein is accurate and complete.

_____                    6-10-9.
Applicant's Signature                                                Date

************************************ **For Office Use Only** ************************************

Receipt # 322009- 676      Amount $ 175.00      Payer Christopher Wyman

—rev 9-23-04 ksw





Livingston County Department of Public Health

Environmental Health Division
2300 E. Grand River Ave. Suite 102
Howell, MI 48843
517.546.9858 * 517.546.9853 FAX
www.lchd.org

7/13/2010

CHRISTOPHER WYMAN
1011 JONES RD
HOWELL, MI 48855

RE: Permit#: WEL2009-00123    Section #: 24    Cohoctah Township
Site Address:    1011 W JONES RD  HOWELL

Please be advised that we are in the process of reviewing our files. The above referenced permit authorizing the construction of a water well supply for a single family dwelling was issued by the Livingston County Department of Public Health on June 16, 2009.

We are unable to approve the construction of your water supply and it will be placed in our files as "NOT APPROVED" until the following items are submitted to the health department.

Submittal of a bacteriological water sample report
    Submittal of a safe coliform bacteria water sample has not been received. Your water should be considered unsafe to drink until a safe sample has been received. Contact a certified drinking water lab for sampling procedures and bottles.

Submittal of a nitrate water sample report
    If sample has not been taken, contact a certified drinking water lab for sampling procedures and bottles. The acceptable limit for nitrate is less than 10 milligrams per liter (mg/l) as established by the United States Environmental Protection Agency.

Submittal of a arsenic water sample report
    If sample has not been taken, contact a certified drinking water lab for sampling procedures and bottles. The acceptable limit for arsenic is .010 milligrams per liter (mg/l) as established by the United States Environmental Protection Agency.

Please provide a copy of the requested information along with either a copy of this letter or a note referencing your permit file number to my attention so that the information can be matched with the appropriate file.

If you have any questions regarding this matter, please feel free to contact me at (517) 546-9858. Thank you for your prompt attention in this matter.

Sincerely,

Environmental Sanitarian



**Brighton Analytical, L.L.C.**
**210S Pless Drive**
**Brighton, Michigan  48116**
L.L.C™  Phone: (810) 229-7575  FAX: (810) 229-8650
e-mail: bai-brighton@sbcglobal.net

Sample Date:  06/09/2009
Submit Date:  06/09/2009
Report Date:  06/09/2009

To: CD Wymm Incorporated
6241 W. Grand River
Brighton, MI 48114

BA Report Number: 3700
BA Sample ID: BR08510

Project Name: Jones Road
Project Number:
Sample ID: Rear Tap

| Parameters | Results | Units | DL | Method Reference | Analyst | Analysis Date |
|---|---|---|---|---|---|---|
| **Total Metal Analysis** | | | | | | |
| Total Sodium | 1300000 | ug/L | 1000 | EPA 200.8 rev5.4 | OW | 06/09/2009 |
| Metal Drinking Water(digestion) | Digested | | | 3015 | LS | 06/09/2009 |

DL=Reported detection limit for analytical method requested. Some
compounds require special analytical methods to achieve MDEQ designated
target detection limits (TDL).

Released by:

Date:  6/9/09

Sodium not certified under EPA 200.8 by MI DEQ.
Analysis not specifically identified as drinking water are for non-regulatory
compliance purposes.

Page 1



# Water Well And Pump Record

Completion is required under authority of Part 127 Act 368 PA 1976.
Failure to comply is a misdemeanor.



Import ID:

| Tax No: 02-24-300-007 | Permit No: WEL2009-00123 | County: Livingston | | | Township: Cohoctah | |
|---|---|---|---|---|---|---|

**Well ID: 47000028582**

| | Town/Range: | Section: | Well Status: | WSSN: | Source ID/Well No: |
|---|---|---|---|---|---|
| | 04N 04E | 24 | Active | | |

Elevation:

Distance and Direction from Road Intersection:
NORTH OF FISHER ROAD, WEST OF JONES ROAD.

Latitude: 42.719598

Longitude: -83.948125

Method of Collection: Address Matching-House Number

| Well Owner: CHRIS WYMAN | |
|---|---|
| Well Address: | Owner Address: |
| 1011 JONES ROAD | 1011 JONES ROAD |
| HOWELL, MI 48843 | HOWELL, MI 48843 |

| | |
|---|---|
| Drilling Method: Rotary | Pump Installed: Yes    Pump Installation Only: No |
| Well Depth: 58.00 ft.    Well Use: Household | Pump Installation Date: 8/15/2009    HP: 0.50 |
| Well Type: Replacement    Date Completed: 6/15/2009 | Manufacturer: Franklin Electric    Pump Type: Submersible |
| Casing Type: PVC plastic    Height: 1.00 ft. above grade | Model Number: .5    Pump Capacity: 10 GPM |
| Casing Joint: Solvent welded/glued | Drop Pipe Length: 40.00 ft.    Pump Voltage: |
| Casing Fitting: None | Drop Pipe Diameter: 1.00 in.    Drilling Record ID: |
| | Draw Down Seal Used: No |
| Diameter: 5.00 in. to 52.00 ft. depth   SDR: 21.00 | Pressure Tank Installed: Yes |
| | Pressure Tank Type: Diaphragm/bladder |
| | Manufacturer: Well-X-Trol |
| Borehole: 8.50 in. to 58.00 ft. depth | Model Number: WR-120    Tank Capacity: 33.00 Gallons |
| | Pressure Relief Valve Installed: Yes |

| Static Water Level: 2.00 ft. Above Grade (Flowing) | | | Formation Description | Thickness | Depth to Bottom |
|---|---|---|---|---|---|
| Well Yield Test:    Yield Test Method: Air | | | Dark Gray Clay | 8.00 | 8.00 |
| 1.00 hrs. at 100 GPM | | | Brown Clay & Sand | 4.00 | 10.00 |
| | | | Gray Clay & Sand | 6.00 | 16.00 |
| Unrestricted Flow Rate: | | | Red Clay & Sand | 2.00 | 18.00 |
| Screen Installed: Yes    Filter Packed: No | | | Gray Clay & Sand | 24.00 | 42.00 |
| Screen Diameter: 4.00 in.    Blank: | | | Gray Sand & Sil Fine | 4.00 | 46.00 |
| Screen Material Type: Stainless steel-wire wrapped | | | Gray Sand Fine | 10.00 | 56.00 |
| Slot    Length    Set Between | | | Gray Clay | 2.00 | 58.00 |
| 7.00    4.00 ft.    52.00 ft. and 56.00 ft. | | | | | |
| | | | | | |
| Fittings: Neoprene packer | | | | | |

| Well Grouted: Yes    Grouting Method: Grout pipe outside casing | Geology Remarks: |
|---|---|
| Grouting Material   Bags   Additives   Depth | |
| Bentonite slurry   8.00   None   0.00 ft. to 46.00 ft. | |

Wellhead Completion: Pitless adapter

| Nearest Source of Possible Contamination: | | | Drilling Machine Operator Name: GREG ADAMS |
|---|---|---|---|
| Type    Distance    Direction | | | Employment: Employee |
| Septic tank    80 ft.    North | | | Pump Installer: RYAN ADAMS |
| | | | Contractor Type: Water Well Drilling Contractor    Reg No: 1881 |
| Abandoned Well Plugged: No | | | Business Name: Adams Well Drilling |
| Reason Not Plugged: Well still in use for non-drinking water purposes | | | Business Address: 5893 Sterling Drive, Howell, MI, 48843 |

**Water Well Contractor's Certification**
This well was drilled under my supervision and this report is true to the best of my knowledge and belief.

Signature of Registered Contractor      Date

General Remarks:

Other Remarks:

EQP-2017 (4/2010)      Page 1 of 1              Contractor      8/15/2009 3:33 PM

**U.S. Department of Justice**
Executive Office for United States Trustees

# Handbook for
# Chapter 7 Trustees

*July 1, 2002*



The trustee also must comply with other laws applicable in the state(s) in which the business operates. See 28 U.S.C. § 959(b).

If it is apparent that the estate would benefit from an extended period of operation, the trustee should consider filing a motion seeking conversion of the case to chapter 11 under § 706(b), and requesting the appointment of a chapter 11 trustee pursuant to § 1104(a). The trustee should determine whether a proposed plan of liquidation could satisfy the requirements of confirmation under § 1129. If the trustee fails to request conversion of the case and the appointment of a chapter 11 trustee, the United States Trustee may take appropriate action to do so.

## K. SALE OF ASSETS

### 1. GENERAL STANDARDS

Section 363(b) permits a trustee to use, sell or lease property of the estate only after notice to creditors and a hearing. The only exception to the notice requirement is when the contemplated transaction is in the ordinary course of the debtor's business. The liquidation of estate assets by a chapter 7 trustee rarely falls within the "ordinary course of business exception" because the debtor's operations cease upon the filing of the chapter 7 case. A trustee, therefore, must comply with the notice and hearing requirements of § 363(b) before liquidating an estate asset.

Generally, the trustee begins liquidating estate assets after the § 341(a) meeting. Exigent circumstances, however, may require liquidation of assets immediately after the case is filed.

A trustee should only sell assets that will generate sufficient proceeds to ensure a distribution to unsecured creditors, priority or general. In evaluating whether an asset has equity, the trustee must determine whether there are valid liens against the asset and whether the value of the asset exceeds the liens. The trustee must also consider whether the cost of administration or tax consequences of any sale would significantly erode or exhaust the estate's equity interest in the asset. If the sale of an asset would result in little or no equity for the estate for the benefit of unsecured creditors, the trustee should abandon the asset. See Chapter 8.D above regarding Abandonments.

It is a violation of federal criminal law for a trustee or officer of the court to purchase directly or indirectly or otherwise deal in property of the estate for which the trustee serves. 18 U.S.C. § 154. While a trustee is not specifically prohibited from purchasing assets from an estate administered by another trustee, the practice should be avoided to eliminate any appearance of impropriety. Similarly, sales to

19-03018-dof    Doc 89    Filed 10/12/22    Entered 10/12/22 10:08:27    Page 102 of 116

professionals regularly retained by a trustee should be avoided. A trustee or a professional regularly employed by the case trustee, including the auctioneer, a family member of the trustee or professional, or an employee of the trustee or professional, are not permitted to bid or to buy property at a private sale or at an estate sale conducted by the auctioneer. The United States Trustee will object to any proposed sale of estate property to either a trustee or a professional person regularly employed by the case trustee, a family member of the trustee, or an employee of the trustee. If the trustee becomes aware of any indications of sales to insiders or of collusion in bidding, the sale should immediately be stopped, and the matter reported to the United States Trustee.

Creditors must receive 20 days notice of a proposed sale of estate property. FRBP 2002(a)(2) and 6004(a). The court, for cause, may order a shorter notice period. FRBP 6004(d) provides that when all non-exempt assets of the estate have an aggregate gross value of less than $2,500, it is sufficient to give a general notice of the trustee's intent to sell. The notice does not have to conform to the requirements of FRBP 2002(c). FRBP 6004(d).

A hearing on the sale or an order authorizing or confirming the sale is not required by FRBP 6004, unless an objection is filed. However, in some jurisdictions, the trustee may be required to file a motion and obtain a court order to sell property.

Objections to the sale must be filed within 15 days from the mailing of the notice or within the time fixed by the court. Unless the court orders otherwise, objections to a sale must be filed and served five days before the date set for the proposed action. FRBP 6004(b). An objection to sale is deemed a request for a hearing and the matter proceeds as a contested matter. FRBP 9014.

Notice of a proposed use, sale, or lease of property of the estate must be provided to the clerk of the bankruptcy court, debtor, United States Trustee, and all creditors. The following information should be included in the notice:

a.    Type of sale (private, auction, etc.);

b.    Location, date, and time of public sale;

c.    Description of assets;

d.    Terms and conditions of sale;

e.    Factors used to establish value (appraisal, book value, etc.) in a private sale;

f.     Procedure and time period for filing objections;

g.     Amount of liens and identity of lien holders; and,

h.     In a private sale, identity of purchaser and relationship, if any, to any creditor or party in interest.

Generally, all sales should be paid for in cash equivalents, such as certified checks, cashier's checks, and money orders. The trustee normally should not accept a promissory note or installment payments. See also Chapter 8.L below regarding Periodic Payments.

## 2.     SALE FREE AND CLEAR OF LIENS

Section 363(f) allows a trustee to sell property of the estate free and clear of an interest of an entity other than the estate, only if:

a.     applicable non-bankruptcy law would permit a sale of such property free of the interest;

b.     the entity consents;

c.     the interest is a lien and the sale price is greater than the aggregate value of all liens on the property;

d.     the interest is in bona fide dispute; or

e.     the entity could be compelled in a legal or equitable proceeding to accept a money satisfaction of its interest.

The bankruptcy court may approve a sale over objections of a lien holder or any entity with an interest in the property, with liens attaching to the proceeds.

A lien holder cannot be charged with general expenses of administration, or the expenses of the case, and preservation of the property, except as incurred for the lien holder's benefit. If the trustee can establish that the sale was necessary to the preservation of the lien holder's interest in the collateral, the trustee may be able to recover sale expenses under § 506(c).

## 3.     SALE OF JOINTLY OWNED PROPERTY

Section 363(h) allows a trustee to sell both the estate's interest and the interest of any co-owner in property in which the debtor had, at the time of the commencement of the case, an undivided interest as a tenant in common, joint

19-03018-dof    Doc 89    Filed 10/12/22    Entered 10/12/22 10:08:27    Page 104 of 116

tenant, or tenant by the entireties, if specific conditions are met. An action to obtain approval pursuant to § 363(h) to sell jointly owned property must be brought by the trustee as an adversary proceeding. FRBP 7001.

4.    **SALE OF SECURED PROPERTY**

Generally, a trustee should not sell property subject to a security interest unless the sale generates funds for the benefit of unsecured creditors. A secured creditor can protect its own interests in the collateral subject to the security interest. In certain limited circumstances, however, a trustee may properly sell secured property that would generate no proceeds for the benefit of unsecured creditors ("fully secured property"). For example, a trustee may be able to satisfy in full a blanket security interest on multiple units of property by selling only one unit. Similarly, a trustee may be able to obtain a higher price from an aggregate sale of assets than from selling the assets individually. In a case with funds otherwise available for unsecured creditors, a trustee also may sell fully secured property to eliminate a deficiency, if the secured creditor agrees to waive any unsecured claim for a deficiency in the event the sale does not fully satisfy the security interest.

In determining whether the sale of secured property is appropriate, the trustee must consider all of the costs associated with the sale, including trustee fees and any possible adverse tax consequences resulting from the sale, and the sale's effect on the trustee's ability to otherwise administer and close the case as expeditiously as possible. Administering fully secured property should always be viewed as the exception taking into account the particular circumstances of each case.

When selling fully secured property, the trustee must administer the sale to avoid a diminution of funds otherwise available for unsecured creditors. The trustee should obtain an agreement in writing from the secured creditor to recover the costs of sale from the collateral pursuant to § 506(c). The trustee must disclose the terms of any agreement between the trustee and the secured creditor at the outset, for example, in the notice of proposed sale, and in the trustee's final report and request for compensation and reimbursement of expenses. Any sums recovered from the collateral under § 506(c) is property of the estate and must be deposited in the estate account.

5.    **INTERNET AUCTIONS**

A trustee may consider selling assets through an internet auction website. Before conducting a sale on the internet, the trustee should examine the suitability of using the internet to sell a particular asset, review the fees charged by internet

19-03018-dof    Doc 89    Filed 10/12/22    Entered 10/12/22 10:08:27    Page 105 of 116

auction providers, and carefully review the Terms and Conditions for use of a particular internet auction website.

An internet auction provider usually does not perform the services of a traditional auctioneer. It usually does not take possession of assets, "call" auctions, collect proceeds of sale, or in any way act as a trustee's agent. Instead, most sites merely provide an automated "venue" for the trustee to conduct an auction sale. Because of their limited role in a sale, internet auction providers should not be considered "auctioneers" or "other professionals" requiring an order of employment under § 327 unless they specifically contract to perform substantial additional services beyond simply providing a website to market estate assets.

Please note that the law in this area is uncertain, and the trustee should always fully disclose the terms and conditions of the proposed sale and the respective duties and responsibilities of the Internet auction provider in an appropriate sale motion filed with the Court and properly noticed to creditors. The trustee may also consider obtaining guidance from the court regarding the need for Court approval of internet auctioneer employment in doubtful cases. For example, if an internet auction provider collects deposits or sale proceeds, or takes physical possession of the property to be sold, the provider is providing substantial additional services and an order pursuant to § 327 should be obtained.

6. **CONDUCT OF SALES**

Sales of estate property must conform to the requirements of FRBP 6004. Upon completion of the sale, an itemized statement of the property sold, the names of the purchasers, and the price received for each item should be transmitted to the United States Trustee and filed with the clerk of the bankruptcy court. If the

19-03018-dof   Doc 89   Filed 10/12/22   Entered 10/12/22 10:08:27   Page 106 of 116

property is sold by an auctioneer, the auctioneer must file the statement. If the property is not sold by an auctioneer, the trustee must file the statement. FRPB 6004(f)(1).

See also Chapter 8.M.6 below regarding auctioneers.

## L.   PERIODIC PAYMENTS

Estate assets in the form of periodic, future payments due to extend beyond one year require special consideration. This type of asset may be part of the debtor's estate (e.g., note or mortgage receivable) or may arise when a trustee accepts periodic payments to sell an asset.

Generally, the trustee should avoid sales of estate assets involving buyer payments which will extend beyond one year. However, there may be instances, such as the need for periodic payments which do not delay case closing, when it is in the best interest of the estate to sell an estate asset in this manner. When the purchase price will be paid in installments, the trustee also should obtain and perfect a security interest in the estate assets sold and take other suitable precautions to protect the estate against default.

When an asset comes into the estate that involves future payments, the trustee should attempt to discount the future income stream to an appropriate present value and liquidate the asset as expeditiously as possible. If the discounted payments cannot be liquidated, or the asset cannot otherwise be assigned for the benefit of creditors, the trustee should consider interim distributions to creditors as funds become available, provided that claims are resolved and sufficient funds are reserved to administer the estate.

## M.   EMPLOYMENT AND SUPERVISION OF PROFESSIONALS

Under § 327, a chapter 7 trustee may employ professionals, including attorneys, accountants, appraisers or auctioneers to "represent or assist the trustee" in performing trustee duties under title 11. Those professionals may be awarded compensation for actual and necessary services and reimbursement for actual and necessary expenses, pursuant to § 330.

The employment of professionals must be approved by the court. Court approval should be sought prior to the rendering of any services. Issues such as disinterestedness and necessity of employment are more appropriately addressed when court approval is sought and obtained prior to work by the professional. Generally, courts do not authorize compensation for services rendered prior to court-ordered employment. However, some courts permit retroactive or *nunc pro tunc* orders of employment in special circumstances, but even where permitted, such orders should be rarely sought.

19-03018-dof   Doc 89   Filed 10/12/22   Entered 10/12/22 10:08:27   Page 107 of 116

**Turnover of Proceeds**

The auctioneer must not commingle auction proceeds with business, personal or other accounts.

Whenever possible, the auctioneer should immediately turnover auction proceeds to the trustee. In any event, all proceeds must be turned over within thirty (30) days of the auction. The United States Trustee may have additional requirements in this area.

If an auctioneer fails to account for or to turnover auction proceeds within thirty (30) days, the trustee should promptly notify the United States Trustee and take immediate action to recover the funds, including initiating a proceeding against the auctioneer's bond.

**Auctioneer's Report**

The auctioneer must submit an itemized statement of the property sold, the name of each purchaser, and the price received for each item, lot, or for the property as a whole if sold in bulk. FRBP 6004(f). The trustee must ensure that the auctioneer's report is promptly submitted upon completion of the auction. If the report has not been provided within thirty (30) days after the auction, the trustee should request a copy and ensure that it has been filed with the court and United States Trustee, or as otherwise provided by local rules and practices.

The trustee must compare the auctioneer's report to the initial inventory and obtain an explanation for any discrepancies. The trustee also should scrutinize items marked 'stolen' or 'missing.' As noted earlier, the trustee should attempt to recover the value of lost or stolen items by filing a claim with the auctioneer's insurer or by initiating a proceeding against the auctioneer's bond, as appropriate.

7.    **APPRAISERS**

A trustee may require the services of an appraiser to ascertain the value of property of an estate. For economy of administration, trustees may use alternative means of valuation if feasible, but the basis for the valuation must be documented. Alternative valuation means include the NADA book for automobiles; information acquired from real estate agents, as well as county records regarding recent sales of comparable real property; or advertisements for the sale of like goods.

**1011 E Jones Road, Cohoctah Twp 48855-9298**

| | | | | | |
|---|---|---|---|---|---|
| MLS#: | **29044062** | Area: | **01021 - Cohoctah Twp** | Short Sale: | **No** |
| P Type: | **Residential** | DOM: | **N/51/51** | Trans Type: | **Sale** |
| Status: | **Sold** | | | | **ERTS/FS** |

LP: **$79,900**
OLP: **$89,900**
SP: **$79,900**





| Location Information | | Parking | | Lot Information | |
|---|---|---|---|---|---|
| County: | **Livingston** | Garage: | **Yes** | Acreage: | **10** |
| Township: | **Cohoctah Twp** | Grg Sz: | **2 Car** | Lot Dim: | **VERIFY** |
| Mailing City: | **Howell** | Grg Dim: | | Rd Front Ft: | |
| Side of Str: | | Grg Feat: | | | |
| School Dist: | **Howell** | | | | |
| Location: | **N of Chase Lake / E of Oak Grove** | | | | |
| Directions: | **N OF CHASE LAKE AND E OF OAK GROVE** | | | | |

| Square Footage | | Layout | | Contact Information | |
|---|---|---|---|---|---|
| Sqft Source: | **Estimate** | Beds: | **3** | Name: | **BROKER** |
| Est Fin Abv Gr: | **2,760** | Baths: | **2.1** | Phone: | **(248) 737-6800** |
| Est Fin Lower: | | Rooms: | **9** | | |
| Est Tot Lower: | | Arch Sty: | **Colonial** | | |
| Est Tot Fin: | **2,760** | Arch Lvl: | **2 Story** | | |
| Price/SqFt: | **$28.95** | Site Desc: | | | |

| Waterfront Information | | General Information | |
|---|---|---|---|
| Wtrfmt Name: | | Year Built: | **1995** |
| Water Facilities: | **Pond** | Year Remod: | |
| Water Features: | | | |
| Water Frt Feet: | | | |

### Listing Information

| | | | | | |
|---|---|---|---|---|---|
| Listing Date: | **03/28/09** | List Type/Level Of Service: | **Exclusive Right to Sell/Full Service** | | |
| Pending Date: | **05/18/09** | Off Mkt Date: | **05/18/09** | BMK Date: | **05/15/09** | Contingency Date: | |
| Land DWP: | | Land Int Rate: | | Land Payment: | | Land Cntrt Term: | |
| Protect Period: | **180** | Restrictions: | | Exclusions: | | Possession: | **IMMED** |
| Terms Offered: | **Cash, Conventional** | | | MLS Source: | **REALCOMP** | Originating MLS# | **29044062** |

### Features

| | | | |
|---|---|---|---|
| Foundation: | **Basement** | Fndtn Material: | |
| Basement: | **Walkout Access** | | |
| Exterior: | **Brick** | Cnstrct Feat: | |
| Porch Type: | **Deck, Porch** | | |
| Heat & Fuel: | **Propane, Forced Air** | Cooling: | |
| Wtr Htr Fuel: | | Road: | **Gravel** |
| Water Source: | **Well-Existing** | Sewer: | |

### Room Information

| Room | Level | Dimen | Floor Cover | Room | Level | Dimen | Floor Cover |
|---|---|---|---|---|---|---|---|
| Bath - Full | Upper | | | Bath - Full | Entry | | |
| Bath - Lav | Entry | | | Bedroom | Upper | 30 x 20 | |
| Bedroom | Upper | 12 x 12 | | Bedroom - Mstr | Upper | 14 x 12 | |
| Family Room | Entry | 22 x 18 | | Kitchen | Entry | 12 x 12 | |
| Living Room | Entry | 14 x 12 | | | | | |

### Legal/Tax/Financial

| | | | | | |
|---|---|---|---|---|---|
| Property ID: | **0224300007** | Ownership: | **Bank - Owned** | Home Warranty: | |
| Tax Summer: | **$2,268** | Tax Winter: | **$530** | Homestead: | **No** | Oth/Sp Asmnt: | |
| Legal Desc: | **SEC 24 & SEC 25, T4N-R4E, COM AT SW COR OF SEC 24; THN03-46-16W 1298.63 FT; TH N88-04-34E 183.87 FT TO POB; TH N88-04-34E 331.21** | | | | |

### Agent/Office Information

| | | | | | |
|---|---|---|---|---|---|
| Sub Agency: | **No** | Buyer Agency: | **Yes** | Trans Coord: | **No** | | |
| Sub Ag Comp: | | Buy Ag Comp: | **4** | TC Comp: | | Comp Arrange: | |
| List Office: | **RE/MAX CLASSIC** | | | | | List Office Ph: | **(248) 737-6800** |
| List Agent: | **MARSHALL MANDELL** | | | | | List Agent Ph: | **(248) 737-6800** |
| Access: | **Lock Box** | LB Description: | | LB Location: | | | |

### Remarks

Public Remarks: **PONDFRONT! GORGEOUS BRICK COLONIAL! FEATURES WONDERFUL CURB APPEAL, REAR DECK, WALKOUT BASEMENT, HUGE BEDROOMS, SPACIOUS INTERIOR, AND SO MUCH MORE! INCOMPLETE REHAB - NEEDS WORK BUT LOOK AT ALL THE POTENTIAL! ABSOLUTE MUST SEE! SOLD AS IS. ALL INFO ESTIMATED. L/A HAS NO INFO ON COND. S/O COMM. BASED ON NET SALE. BUYER WHO IS AGT MAY NOT GET COMM. NO FHA UNLESS 203K.**

REALTOR® Remarks: **PONDFRONT! GORGEOUS BRICK COLONIAL! FEATURES WONDERFUL CURB APPEAL, REAR DECK, WALKOUT BASEMENT, SKYLIGHTS, CATHEDRAL CEILINGS, SPACIOUS INTERIOR, AND SO MUCH MORE! INCOMPLETE REHAB - NEEDS WORK BUT LOOK AT ALL THE POTENTIAL! ABSOLUTE MUST SEE! SOLD AS IS! ALL INFO EST! SO FEE BASED ON NET SALE. INFO: MANDELLTEAM.COM. EMAIL OFFER W/ ATTACHED DOC: OFFERS@MANDELLTEAM.COM. NEED EMAIL & PRE-APPR/PRF OF CASH. NO FHA UNLESS 203K.**

### Sold Information

| | | | | | |
|---|---|---|---|---|---|
| Sold Date: | **05/22/09** | Sold Price: | **$79,900** | Short Sale: | **No** | SP/LP: **100.00%** |
| 3rd Party Appr: | **No** | Finance Code: | **Cash Sale** | SP/SqFt Abv: | **$28.95** | SP/OLP: **88.88%** |
| Selling Office: | **LIVINGSTON REAL ESTATE** | | | | | Selling Office Ph: **(517) 545-0006** |
| Selling Agent: | **Diana Gentry** | | | | | Selling Agent Ph: **(517) 545-0006** |
| Co-Selling Agent: | | | | | | Co-Selling Agt Ph: |
| Sell Concession: | **No** | Concession Type: | | Concession Amt: | | |

# Livingston County Public Records - Full Detail Report

*Location & Ownership*

---

| | | | |
|---|---|---|---|
| Property Address: | **1011 E Jones Road** | Property ID: | **0224300007** |
| City/State/Zip: | **Howell, Michigan, 48855-9298** | | |
| | | | |
| Owner Name: | **Michelle Pichler** | Latitude: | **42.718133** |
| Taxpayer Address: | **1011 E Jones Road** | Longitude: | **-83.938710** |
| City/State/Zip: | **Howell, Michigan, 48855-9298** | Census Tract: | **7211** |
| | | Block Group: | **1** |
| | | | |
| City/Village/Town: | **Cohoctah Twp** | School District: | **Howell** |
| Subdivision: | | Property Category: | **Residential** |
| MLS Area: | **01021 – Cohoctah Twp** | Land Use: | **401 – RESIDENTIAL** |

Legal Description: **SEC 24 & SEC 25, T4N-R4E, COM AT SW COR OF SEC 24; THN03-46-16W 1298.63 FT; TH N88-04-34E 183.87 FT TO POB; TH N88-04-34E 331.21 FT; TH S01-58-26E 1324.84 FT; TH S88-10-34W 331.21 FT; TH N01-58-26W 1324.26 FT TO POB. 10.07 ACRES M/L LAND TRANSFER Added from –24-300-005 & -006 (11/01/04).**

**More information is available on** 🔵 **Remine**

**Photos**

*Taxes*

---

| Year | Season | Total Ad Val | Admin Fee | Asmnt | CVT | Ttl Seasonal |
|---|---|---|---|---|---|---|
| 2018 | W | $908.64 | $0.00 | $0.00 | $0.00 | $908.64 |
| 2018 | S | $1,681.70 | $0.00 | $0.00 | $0.00 | $1,681.70 |
| 2017 | W | $899.61 | $0.00 | $0.00 | $0.00 | $899.61 |
| 2017 | S | $1,656.60 | $0.00 | $0.00 | $0.00 | $1,656.60 |

*Assessments*

---

| Year | Taxable Val | State Eq Val | Hmstd % | Ttl Taxes |
|---|---|---|---|---|
| 2018 | $106,488 | $138,200 | 100 | $2,590.34 |
| 2017 | $104,298 | $138,000 | 100 | $2,556.21 |
| 2016 | $0 | $137,900 | 100 | |
| 2015 | $0 | $126,900 | 100 | |
| 2014 | $0 | $113,000 | 100 | |

*Transfer Information*

---

| Grantor | Grantee | Record Date | Deed Date | Sale Price | Deed Type | Liber/Page |
|---|---|---|---|---|---|---|
| WYMAN CHRISTOPHER D. | PICHLER MICHELLE | 04/24/2012 | 10/16/2009 | | QCD | 14065 |

*Other Recordings*

---

| Obligee | Obligor | Record Date | Doc Date | Amount | Doc Type | Liber/Page |
|---|---|---|---|---|---|---|
| EDWARD LINCK | WYMAN CHRISTOPHER D | 07/13/2009 | 06/01/2009 | $130,000 | MTG | 00000/0000 |

*Characteristics*

---

| | | | |
|---|---|---|---|
| Living Area SF: | **2808** | Bedrooms: | **4** |
| Basement Sqft: | **1381** | Bathrooms: | **2.1** |
| Year Built: | **1995** | Pool: | |
| Style: | | Garage Square Feet: | **1312** |
| Heating: | **Forced Air** | Gas Service: | |
| Central Air: | **Yes** | Well: | |
| #1 Porch/Dimensions: | **/** | Storm Sewer: | |
| Topography: | | Land Sqft: | **438649** |
| Irregular: | | Acres: | **10.07** |


---



**3235 Hill Hollow Lane, Howell Twp 48855**

| | | | | | | |
|---|---|---|---|---|---|---|
| MLS#: | 218097718 | Status: | **PEND** | Stat Dt: | **10/05/18** | L Price: $285,450 |
| County: | Livingston | Area: | 01062 | Yr Built: | 2018 | DOM: N/0/0 |
| School D: | Howell | Beds: | 3 | Bsmt: | Yes | Acreage: 0 |
| Prop Type: | Residential | Baths: | 2.0 | Fireplace: | No | Sqft Abv: 1,412 $/SF: $202.16 |
| Style: | Ranch | Sum Tx: | $68 | Wntr Tx: | $79,355 | Grg Size: 2 Car |
| Office: | Allen Edwin Realty | | | | | Agent: MICHAEL L MCGIVNEY |
| Office Ph: | (269) 321-2610 | | | | | Agent Ph: (269) 743-1264 |

---



**1219 Faussett Road, Cohoctah Twp 48855-7205**

| | | | | | | |
|---|---|---|---|---|---|---|
| MLS#: | 218066864 | Status: | **SOLD** | Stat Dt: | **08/27/18** | S Price: $150,000 / L Price: $150,000 |
| County: | Livingston | Area: | 01021 | Yr Built: | 1870 | DOM: N/4/4 |
| School D: | Howell | Beds: | 2 | Bsmt: | Yes | Acreage: 0.89 |
| Prop Type: | Residential | Baths: | 1.0 | Fireplace: | No | Sqft Abv: 1,360 $/SF: $110.29 |
| Style: | Colonial | Sum Tx: | $541 | Wntr Tx: | $294 | Grg Size: 1 Car |
| Office: | KW Realty Livingston | | | | | Agent: LINDA BARNWELL |
| Office Ph: | (810) 227-5500 | | | | | Agent Ph: (810) 534-2060 |

---



**2023 LANNEN Road, Deerfield Twp 48855-9255**

| | | | | | | |
|---|---|---|---|---|---|---|
| MLS#: | 218023905 | Status: | **SOLD** | Stat Dt: | **05/09/18** | S Price: $161,370 / L Price: $161,370 |
| County: | Livingston | Area: | 01031 | Yr Built: | 1988 | DOM: N/7/7 |
| School D: | Howell | Beds: | 3 | Bsmt: | Yes | Acreage: 5 |
| Prop Type: | Residential | Baths: | 2.0 | Fireplace: | No | Sqft Abv: 912 $/SF: $176.94 |
| Style: | Contemporary, Raised Ranch | Sum Tx: | $1,082 | Wntr Tx: | $607 | Grg Size: 2 Car |
| Office: | RE/MAX Platinum-Hartland | | | | | Agent: CINDY DILLON |
| Office Ph: | (810) 632-5050 | | | | | Agent Ph: (810) 632-5050 |

---



**2007 GANNON Road, Howell 48855-9354**

| | | | | | | |
|---|---|---|---|---|---|---|
| MLS#: | 219020949 | Status: | **ACTV** | Stat Dt: | **03/13/19** | L Price: $340,000 |
| County: | Livingston | Area: | 01021 | Yr Built: | 1979 | DOM: N/7/7 |
| School D: | Byron | Beds: | 5 | Bsmt: | Yes | Acreage: 10.01 |
| Prop Type: | Residential | Baths: | 3.1 | Fireplace: | Yes | Sqft Abv: 2,700 $/SF: $125.93 |
| Style: | Colonial | Sum Tx: | $1,119 | Wntr Tx: | $1,489 | Grg Size: 2 Car |
| Office: | EXP Realty LLC-Novi | | | | | Agent: MARK ZAWAIDEH |
| Office Ph: | (248) 937-1337 | | | | | Agent Ph: (248) 937-1337 |
| Recent: | 03/13/2019 : New : -->ACTV | | | | | |

---



**9405 STELZER Road, Cohoctah Twp 48855-9388**

| | | | | | | |
|---|---|---|---|---|---|---|
| MLS#: | 218077348 | Status: | **SOLD** | Stat Dt: | **10/13/18** | S Price: $190,000 / L Price: $199,000 |
| County: | Livingston | Area: | 01021 | Yr Built: | 1966 | DOM: N/13/13 |
| School D: | Howell | Beds: | 3 | Bsmt: | Yes | Acreage: 4.84 |
| Prop Type: | Residential | Baths: | 2.0 | Fireplace: | No | Sqft Abv: 1,332 $/SF: $142.64 |
| Style: | Ranch | Sum Tx: | $599 | Wntr Tx: | $346 | Grg Size: 2 Car |
| Office: | Real Estate One-Howell | | | | | Agent: JAMES M LAMB |
| Office Ph: | (517) 552-0222 | | | | | Agent Ph: (517) 552-0222 |

---

**2130 CHASE LAKE Road, Cohoctah Twp 48855-9357**

| | | | | | | |
|---|---|---|---|---|---|---|
| MLS#: | 218043665 | Status: | **SOLD** | Stat Dt: | **07/09/18** | S Price: $223,400 / L Price: $230,000 |
| County: | Livingston | Area: | 01021 | Yr Built: | 1995 | DOM: N/13/13 |
| School D: | Howell | Beds: | 3 | Bsmt: | Yes | Acreage: 1.27 |
| Prop Type: | Residential | Baths: | 2.1 | Fireplace: | Yes | Sqft Abv: 1,360 $/SF: $164.26 |
| Style: | Ranch | Sum Tx: | $953 | Wntr Tx: | $518 | Grg Size: 2 Car |
| Office: | Real Estate One-Brighton | | | | | Agent: JAN TAYLOR |
| Office Ph: | (810) 227-5005 | | | | | Agent Ph: (810) 227-5005 |

---

**1426 FAUSSETT Road, Cohoctah Twp 48855-7206**

| | | | | | | |
|---|---|---|---|---|---|---|
| MLS#: | 218068257 | Status: | **SOLD** | Stat Dt: | **09/17/18** | S Price: $160,000 / L Price: $175,000 |
| County: | Livingston | Area: | 01021 | Yr Built: | 1902 | DOM: N/15/15 |
| School D: | Howell | Beds: | 4 | Bsmt: | No | Acreage: 0.26 |
| Prop Type: | Residential | Baths: | 2.0 | Fireplace: | Yes | Sqft Abv: 1,944 $/SF: $82.30 |
| Style: | Colonial | Sum Tx: | $955 | Wntr Tx: | $518 | Grg Size: No Garage |
| Office: | Key Properties Real Estate PLC | | | | | Agent: TAMMY MILLER |
| Office Ph: | (517) 546-4900 | | | | | Agent Ph: (517) 546-4900 |

---



**9220 OAK GROVE Road, Cohoctah Twp 48855-9351**

| | | | | | | |
|---|---|---|---|---|---|---|
| MLS#: | 219018046 | Status: | **ACTV** | Stat Dt: | **03/04/19** | L Price: $275,000 |
| County: | Livingston | Area: | 01021 | Yr Built: | 2005 | DOM: N/16/16 |
| School D: | Howell | Beds: | 3 | Bsmt: | Yes | Acreage: 2.68 |
| Prop Type: | Residential | Baths: | 3.1 | Fireplace: | Yes | Sqft Abv: 2,336 $/SF: $117.72 |
| Style: | Manufactured with Land, Ranch | Sum Tx: | $1,354 | Wntr Tx: | $732 | Grg Size: 2 Car |
| Office: | Preview Properties PC | | | | | Agent: JULIE M BENSON |
| Office Ph: | (810) 220-0000 | | | | | Agent Ph: (810) 220-1426 |

---



**1123 FAUSSETT Road, Cohoctah Twp 48855-7204**

| | | | | | S Price: | **$150,000** |
|---|---|---|---|---|---|---|
| MLS#: | 218089023 | Status: | **SOLD** | Stat Dt: | 11/05/18 | L Price: | **$150,000** |
| County: | Livingston | Area: | **01021** | Yr Built: | 1900 | DOM: | **N/19/19** |
| School D: | Howell | Beds: | **3** | Bsmt: | No | Acreage: | 0.46 |
| Prop Type: | Residential | Baths: | **1.0** | Fireplace: | No | Sqft Abv: | 1,486 | $/SF: **$100.94** |
| Style: | Colonial | Sum Tx: | **$679** | Wntr Tx: | **$363** | Grg Size: | **2 Car** |
| Office: | Keller Williams Advantage | | | | | Agent: | MICHAEL PERNA |
| Office Ph: | (248) 380-8800 | | | | | Agent Ph: | (248) 380-8800 |



**8058 HEMINGWAY Road, Cohoctah Twp 48855-8323**

| | | | | | S Price: | **$264,000** |
|---|---|---|---|---|---|---|
| MLS#: | 218070818 | Status: | **SOLD** | Stat Dt: | 09/28/18 | L Price: | **$264,900** |
| County: | Livingston | Area: | **01021** | Yr Built: | 1973 | DOM: | **N/21/21** |
| School D: | Howell | Beds: | **3** | Bsmt: | No | Acreage: | 10.04 |
| Prop Type: | Residential | Baths: | **2.1** | Fireplace: | Yes | Sqft Abv: | 1,781 | $/SF: **$148.23** |
| Style: | Ranch | Sum Tx: | **$1,059** | Wntr Tx: | **$575** | Grg Size: | **No Garage** |
| Office: | KW Realty Livingston | | | | | Agent: | COLLEEN M SHIELDS PRYSLAK |
| Office Ph: | (810) 227-5500 | | | | | Agent Ph: | (810) 534-2041 |



**6606 PRESTON Road, COHOCTAH TWP 48855**

| | | | | | S Price: | **$210,000** |
|---|---|---|---|---|---|---|
| MLS#: | 218068979 | Status: | **SOLD** | Stat Dt: | 10/22/18 | L Price: | **$214,900** |
| County: | Livingston | Area: | **01021** | Yr Built: | 1996 | DOM: | **Y/61/61** |
| School D: | Howell | Beds: | **3** | Bsmt: | Yes | Acreage: | 2.5 |
| Prop Type: | Residential | Baths: | **2.0** | Fireplace: | Yes | Sqft Abv: | 1,201 | $/SF: **$174.85** |
| Style: | Ranch | Sum Tx: | **$1,997** | Wntr Tx: | **$508** | Grg Size: | **2 Car** |
| Office: | The Buckley Jolley R E Team | | | | | Agent: | SHERRI GARRON |
| Office Ph: | (810) 229-7000 | | | | | Agent Ph: | (810) 229-7000 |



**886 Chase Lake Road, Cohoctah Twp 48855-9399**

| | | | | | L Price: | **$239,900** |
|---|---|---|---|---|---|---|
| MLS#: | 219008311 | Status: | **PEND** | Stat Dt: | 03/18/19 | L Price: | **$239,900** |
| County: | Livingston | Area: | **01021** | Yr Built: | 2000 | DOM: | **N/51/51** |
| School D: | Howell | Beds: | **3** | Bsmt: | Yes | Acreage: | 2.02 |
| Prop Type: | Residential | Baths: | **3.0** | Fireplace: | No | Sqft Abv: | 1,372 | $/SF: **$174.85** |
| Style: | Ranch | Sum Tx: | **$938** | Wntr Tx: | **$507** | Grg Size: | **2 Car** |
| Office: | Chestnut Real Estate | | | | | Agent: | VICTORIA J NULTY |
| Office Ph: | (888) 825-1420 | | | | | Agent Ph: | (810) 599-3984 |
| Recent: | 03/18/2019 : PEND : ACTV->PEND | | | | | | |



**9482 STELZER Road, Cohoctah Twp 48855**

| | | | | | L Price: | **$395,000** |
|---|---|---|---|---|---|---|
| MLS#: | 218115798 | Status: | **PEND** | Stat Dt: | 02/10/19 | L Price: | **$395,000** |
| County: | Livingston | Area: | **01021** | Yr Built: | 1986 | DOM: | **N/56/134** |
| School D: | Howell | Beds: | **4** | Bsmt: | Yes | Acreage: | 33.76 |
| Prop Type: | Residential | Baths: | **3.1** | Fireplace: | Yes | Sqft Abv: | 3,279 | $/SF: **$120.46** |
| Style: | Ranch | Sum Tx: | **$2,381** | Wntr Tx: | **$1,295** | Grg Size: | **2 Car** |
| Office: | Alliance Real Estate | | | | | Agent: | DEAN FILECCIA |
| Office Ph: | (517) 223-3550 | | | | | Agent Ph: | (517) 223-3550 |



**8677 HIDDEN LAKE Drive, DEERFIELD TWP 48855**

| | | | | | S Price: | **$219,000** |
|---|---|---|---|---|---|---|
| MLS#: | 218066433 | Status: | **SOLD** | Stat Dt: | 10/26/18 | L Price: | **$250,000** |
| County: | Livingston | Area: | **01031** | Yr Built: | 1960 | DOM: | **N/119/119** |
| School D: | Howell | Beds: | **2** | Bsmt: | Yes | Acreage: | 0.42 |
| Prop Type: | Residential | Baths: | **1.0** | Fireplace: | Yes | Sqft Abv: | 1,055 | $/SF: **$207.58** |
| Style: | Ranch | Sum Tx: | **$2,286** | Wntr Tx: | **$778** | Grg Size: | **No Garage** |
| Office: | The Buckley Jolley R E Team | | | | | Agent: | SHERRI GARRON |
| Office Ph: | (810) 229-7000 | | | | | Agent Ph: | (810) 229-7000 |



**7136 IRA Lane, Cohoctah Twp 48843**

| | | | | | L Price: | **$275,900** |
|---|---|---|---|---|---|---|
| MLS#: | 218111022 | Status: | **ACTV** | Stat Dt: | 11/15/18 | L Price: | **$275,900** |
| County: | Livingston | Area: | **01021** | Yr Built: | 2018 | DOM: | **N/125/125** |
| School D: | Howell | Beds: | **3** | Bsmt: | Yes | Acreage: | 1 |
| Prop Type: | Residential | Baths: | **2.0** | Fireplace: | No | Sqft Abv: | 1,356 | $/SF: **$203.47** |
| Style: | Ranch | Sum Tx: | **$339** | Wntr Tx: | **$10** | Grg Size: | **3 Car** |
| Office: | RE/MAX Platinum | | | | | Agent: | CARL A VAGNETTI |
| Office Ph: | (810) 227-4600 | | | | | Agent Ph: | (810) 844-2253 |

**1504 FAUSSETT Road, Cohoctah Twp 48855-7207**

| | | | | | S Price: | **$42,500** |
|---|---|---|---|---|---|---|
| MLS#: | 218061145 | Status: | **SOLD** | Stat Dt: | 01/24/19 | L Price: | **$49,900** |
| County: | Livingston | Area: | **01021** | Yr Built: | 1902 | DOM: | **N/171/171** |
| School D: | Howell | Beds: | **3** | Bsmt: | No | Acreage: | 0.26 |
| Prop Type: | Residential | Baths: | **1.0** | Fireplace: | No | Sqft Abv: | 1,511 | $/SF: **$28.13** |
| Style: | Colonial | Sum Tx: | **$910** | Wntr Tx: | **$232** | Grg Size: | **1 Car** |
| Office: | Inca Realty, LLC | | | | | Agent: | WILSON LAHOUD |
| Office Ph: | (810) 244-6302 | | | | | Agent Ph: | (810) 244-6302 |



**2473 E JONES Road, Deerfield Twp 48855-8270**

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| MLS#: | 218093566 | Status: | ACTV | Stat Dt: | 09/25/18 | L Price: | $899,000 |
| County: | Livingston | Area: | 01031 | Yr Built: | 2005 | DOM: | N/176/176 |
| School D: | Howell | Beds: | 5 | Bsmt: | Yes | Acreage: | 35 |
| Prop Type: | Residential | Baths: | 4.1 | Fireplace: | Yes | Sqft Abv: | 3,560 | $/SF: $252.53 |
| Style: | Colonial | Sum Tx: | $3,396 | Wntr Tx: | $1,614 | Grg Size: | 5 Car |
| Office: | Remerica United Realty-Brighton | | | | | Agent: | TINA M HESS |
| Office Ph: | (810) 202-1850 | | | | | Agent Ph: | (810) 202-1850 |

PFD RL M N

**Search Criteria**

Status is 'Active'
Status is one of 'Pending', 'Sold'
Status Contractual Search Date is 03/20/2019 to 03/20/2018
Property Type is 'Residential'
Latitude, Longitude is within 2.00 mi of 1011 E Jones Rd, Howell, MI 48855, USA
Listing Type is one of 'Exclusive Right to Sell', 'Exclusive Agency', 'Unknown (Data Share Listing)'
Level of Service is one of 'Full Service', 'Limited Service', 'MLS Entry Only', 'Unknown/Data Share Listings'
Transaction Type is 'Sale'
Selected 17 of 17 results.

City, State, or Zip 🔍

1011 E Jones Rd, Howell, MI 48855



©2019 Google    Map data ©2019 Google

# 1011 E Jones Rd,
# Howell, MI 48855

4 beds · 2 baths · 2,808 sqft

OFF MARKET

Zestimate® : $327,452
Rent Zestimate® : $2,200 /mo

**EST. REFI PAYMENT**

Est. Refi Payment:
$1,367/mo



1011 E Jones Rd, Howell, MI is a single family home that contains 2,808 sq ft and was built in 1995. It contains 4 bedrooms and 2 bathrooms. This home last sold for $79,900 in May 2009.

The Zestimate for this house is $327,452, which has decreased by $16,044 in the last 30 days. The Rent Zestimate for this home is $2,200/mo, which has decreased by $92/mo in the last 30 days. The tax assessment in 2018 was $138,000.

## Facts and Features

**Type**
Single Family

**Year Built**
1995

**Heating**
Forced air

**Cooling**
No Data

**Parking**
5 spaces

**Lot**
10.07 acres

**INTERIOR FEATURES**

**Bedrooms**
Beds: 4

**Flooring**
Floor size: 2,808 sqft

**Heating and Cooling**
Heating: Forced air

**Other Interior Features**
Fireplace

**Basement**

# Home Value

### Zestimate
## $327,452

| ZESTIMATE RANGE | LAST 30 DAY CHANGE | ONE YEAR FORECAST |
|---|---|---|
| $311,000 - $344,000 | -$16,044 (-4.7%) | $339,240 (+3.6%) |

# Owner Dashboard



Do you own this home? See your Owner Dashboard.

# Price / Tax History

| DATE | EVENT | PRICE | AGENTS | |
|---|---|---|---|---|
| 05/28/09 | Sold | $79,900 | | ⌄ |

# Neighborhood: 48855

MEDIAN ZESTIMATE

## $248,800
⬆ 2.6%
Past 12 months

MARKET TEMP

## Warm

Buyers' Market          Sellers' Market

Zillow predicts will rise 2.3% next year, compared to a 2.3% increase for Howell as a whole. Among 48855 homes, this home is valued 44.4% more than the midpoint (median) home, but is valued 12.1% less per square foot.

🚶 Walk Score ® **0** (Car-Dependent)

## NEIGHBORHOOD MAP



## NEARBY HOMES



OFF MARKET: ZESTIMATE

**$302,661**  3 bds · 2 ba · 1,981 sqft
1021 E Jones Rd, Howell, MI

OFF MARKET

-- bds · -- ba · -- sqft
Jones Rd, Howell, MI

### Nearby Similar Sales

**SOLD: $231,000**
Sold on 9/11/2018
3 beds, 2.0 baths, 1635 sqft
5788 Byron Rd, Howell, MI 48855

**SOLD: $240,000**
Sold on 5/24/2018
3 beds, 2.0 baths, 1688 sqft
8001 Hemingway Rd, Howell, MI 48855

**SOLD: $252,000**
Sold on 7/9/2018
3 beds, 3.0 baths, 2800 sqft
8525 Jonera Ln, Howell, MI 48855

**SOLD: $255,000**
Sold on 10/10/2018
3 beds, 3.0 baths, 1745 sqft
6474 Byron Rd, Howell, MI 48855

**SOLD: $264,000**
Sold on 10/3/2018
3 beds, 2.5 baths, 1781 sqft
8058 Hemingway Rd, Howell, MI 48855