UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION - FLINT

IN RE:

CHRISTOPHER D. WYMAN,
    Debtor.
_____/

Case No. 12-32264-dof
Chapter 7 Proceeding
Hon. Daniel S. Opperman

SAMUEL D. SWEET,
    Plaintiff/Counter-Defendant,

v.

BARBARA DUGGAN,
    Defendant/Counter-Plaintiff.
_____/

Adversary Proceeding
Case No. 19-03018-dof

## OPINION REGARDING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

### Introduction

Plaintiff, Samuel D. Sweet, seeks summary judgment as to the counter-claims of Defendant, Michael Tindall. Mr. Tindall responded to this motion and the Court heard oral arguments on November 8, 2022. Subsequently, Mr. Tindall filed various pleadings with this Court that touch on issues raised in this adversary proceeding and at oral argument. For the reasons stated in this Opinion, the Court grants Plaintiff's Motion for Summary Judgment.

### Background

Plaintiff originally objected to the secured status of the claim of Barbara Duggan. Because the relief sought was more appropriate in an adversary proceeding, this proceeding was opened. A portion of Ms. Duggan's claim was assigned to Mr. Tindall. Mr. Tindall filed responses and a counter-claim, and Plaintiff filed a response. Subsequently, Mr. Tindall and Ms. Duggan filed a Motion to Withdraw Reference. The District Court for the Eastern District of Michigan heard oral

arguments and issued an Order Denying Motion to Withdraw Reference (#1) and Administratively Closing Case on August 22, 2019. This Order states:

> On March 18, 2019, Sweet commenced an Adversary Proceeding against Defendants Tindall and Duggan (collectively, "Defendants") to avoid the enforcement of Duggan's Judgment Lien against the real property. (Adversary No. 19-03018, Doc # 1) In the Adversary Proceeding, Sweet alleged that Duggan failed to renew her Judgment Lien five years from the original filing date pursuant to Mich. Comp. Laws § 600.2809. (*Id*.) On March 22, 2019, Defendants filed a Counter Complaint, which included three counterclaims, including: Declaratory Judgment (Claim I); Breach of Fiduciary Duty and Waste under 11 U.S.C. § 704 (Claim II);1 and Abandonment under 11 U.S.C. § 554(b) (Claim III). (Adversary No. 19-03018, Doc # 11) Claims I and III are now moot because the real property has been sold. (Doc # 1, Pg ID 3)
>
> On June 13, 2019, Defendants filed a Motion to Withdraw Reference pursuant to 28 U.S.C. § 157(d). (Doc # 1) According to Defendants, the circumstances of this case "create both grounds for mandatory withdrawal of the reference, and, 'cause' for permissive withdrawal of the reference." (*Id*. at Pg ID 4) In addition to their request to withdraw the reference, Defendants request that the Court stay all further proceedings in the Bankruptcy Court and expedite the hearing on this Motion. (*Id*. at 5.) A Response was filed on June 17, 2019, and a Reply was filed on June 19, 2019. (Doc # 3; Doc # 5) A hearing was held on this matter on July 10, 2019.
>
> . . .
>
> **A. Mandatory Withdrawal**
>
> Defendants request that the Court exercise its authority to withdraw the reference pursuant to 28 U.S.C. § 157(d). Defendants argue that Claim II pertains to a non-core state law tort claim, which not only entitles them to a jury trial, but also prevents the Bankruptcy Court from having the subject matter jurisdiction necessary to hear their Claim. Without going into any detail, Defendants contend that the courts in *Stern v. Marshall*, 564 U.S. 462 (2011), *Waldman v. Stone*, 698 F.3d 910 (6th Cir. 2012), and *Exec. Benefits Ins. Agency v. Arkison*, 573 U.S. 25 (2014), found that claims such as theirs constitute non-core proceedings.
>
> In response, Sweet argues that Defendants' Claim is a core matter because it concerns and affects the administration of the bankruptcy estate that is at issue. Sweet claims that courts have considered this issue, and ruled that a lawsuit against a trustee is a core matter. Sweet's contention is premised on his belief that he could not have breached a fiduciary duty, because under Michigan law, a trustee only has a duty to the bankruptcy estate and not to each individual creditor. Further, Sweet attempts to distinguish the instant case from *Waldman* and *Stern*, and asserts that

those cases involved a debtor and a creditor, as opposed to this case, which includes a trustee and creditors.

The determinative issue in this case is whether a Breach of Fiduciary Duty and Waste claim under 11 U.S.C. § 704 constitutes a "core proceeding" under 28 U.S.C. § 157(b)(2). Congress has provided a non-exhaustive list of "core" matters in § 157(b)(2), including: 1) matters concerning the administration of the estate; 2) counterclaims by the estate against persons filing claims against the estate; 3) proceedings to determine, avoid, or recover preferences and fraudulent conveyances; 4) orders to turn over property of the estate; and 5) confirmation of plans. 28 U.S.C. § 157(b)(2). A bankruptcy court may hear and determine a core proceeding, unless a party demands a jury trial. 28 U.S.C. § 157(b)(1), (e). Absent consent of the parties, the bankruptcy judges will conduct hearings and file proposed findings of fact and conclusions of law on non-core proceedings. E.D. Mich. LR 83.50(a)(3).

The Court finds that Claim II clearly falls under the *core proceedings* category because it is premised on Sweet's potential liability for violating 11 U.S.C. § 704. § 157(b)(2)(A) straightforwardly indicates that core proceedings include "matters concerning the administration of the estate." Claim II is based on Defendants' argument that Sweet failed "to protect and preserve property of the Bankruptcy Estate for the benefit of the creditors." (Adversary No. 19-03018, Doc # 11) Defendants' Claim directly relates to the manner in which Sweet allegedly carried out his obligations while *administering the estate*. *See* 28 U.S.C. § 157(b)(2).

Defendants have argued that their Claim is a state law tort claim, which therefore would require the Court to determine that it should be deemed a non-core proceeding. The Court is unconvinced by such an argument. In Defendants' Counter Complaint, they determined that they would bring forward a Breach of Fiduciary Duty and Waste claim pursuant to 11 U.S.C. § 704. There was no mention of any state law violations. The Court will not allow Defendants to now make such an argument because it is convenient for them. Claim II is based on federal law and the Court will assess Defendants' Claim as such for purposes of the instant Motion.

Defendants additionally contend that the courts in *Stern*, *Waldman*, and *Arkison* found that claims similar to theirs were non-core proceedings. The difference between those three cases and the instant case however, is that those cases each assessed *state law claims*. As mentioned, Claim II is not premised on state law and therefore, those cases are not analogous to the present case.

Since the proceeding here is a *core proceeding*, the Court must assess whether Defendants are entitled to mandatory withdrawal. There are three conditions in the statute which must be met to withdraw a case or proceeding under the mandatory withdrawal provision in § 157(d): 1) the movant is a party; 2) the motion is timely; and 3) the resolution of the proceeding before the Bankruptcy

Court requires consideration of both Title 11 and another federal law regulating organizations or activities affecting interstate commerce. *In re Baldwin–United Corp.*, 47 B.R. 898, 899 (S.D.Ohio 1984).

Here, the Court finds that Defendants have not satisfied all three prongs of the mandatory withdrawal analysis. The first prong has been met as to Duggan because she is a party to the underlying bankruptcy action. The second prong has been satisfied. Courts have determined that something will be considered *timely* if it is done at the "first reasonable opportunity." *In re Baldwin–United Corporation*, 57 B.R. 751, 753 (S.D.Ohio 1985). Courts have further explained that timeliness requires that action be taken without undue delay and must be evaluated in the context of the specific situation. *Id*. The Adversary Proceeding commenced on March 18, 2019, and the present Motion was filed on June 13, 2019. The Court determines that a period of approximately three months may be considered *timely* even though there does not appear to be a reason why Defendants could not have filed the instant Motion sooner, and Defendants have not explained why they waited almost three months to file their Motion. Finally, the Court finds that the third prong has *not* been met because the only law at issue is 11 U.S.C. § 704. No other "federal law regulating organizations or activities affecting interstate commerce" has been referenced by Defendants in relation to Claim II and they have not argued otherwise.

**B. Discretionary Withdrawal**

Defendants argue that the Court should alternatively exercise its authority pursuant to 28 U.S.C. § 157(d)'s discretionary withdrawal provision. Regarding discretionary withdrawal, it appears that Defendants insist that the Court should use its discretionary authority to withdraw the reference since the Bankruptcy Court relocated from Flint, Michigan to Bay City, Michigan. Defendants seemingly argue that this relocation will make it more difficult for them and their counsel to appear at subsequent proceedings. Defendants assert that this case should be heard in this Court because it would be less burdensome for them and their counsel to travel to Detroit, Michigan as opposed to Bay City, Michigan. The Court notes that Sweet did not address Defendants' argument pertaining to a potential discretionary withdrawal.

Section 157(d) grants the district court the discretion to withdraw the reference for "any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown." In considering a withdrawal motion, "whether a proceeding is core or non-core…is a central question." *In re Appalachian Fuels, LLC*, 472 B.R. 731, 2012 WL 1344984 at *4 (E.D.Ky.2012). A district court should first evaluate whether the claim is core or non-core and then turn to the other factors. *Id*. Courts have considered the following factors to determine whether cause exists to withdraw the reference: 1) judicial economy; 2) uniformity in Bankruptcy administration; 3) reducing forum shopping and confusion; 4) fostering economical use of the debtor's and creditor's resources; 5)

expediting the bankruptcy process; and 6) the presence of a jury demand. *Id*. at *3. Other courts in this circuit have found that discretionary withdrawal of reference requires "compelling" cause. *Id*.

The Court finds that the justification offered by Defendants is not *compelling*. While the Court understands that the relocation of the Bankruptcy Court might be a hardship for Defendants as it relates to their travel to future proceedings, the Court does not believe that it will impose a burden on Defendants that is significant enough for the Court to exercise its discretion to withdraw the reference.

**C. Jury Trial**

Defendants additionally assert that they are entitled to a jury trial before this Court and "have not and do not consent to the Bankruptcy Court hearing and/or entering Judgment on Count II." (Doc # 1, Pg ID 4) Parties may consent to a jury trial before the Bankruptcy Court if *all parties* so agree. 28 U.S.C. § 157(e) states:

> If the right to a jury trial applies in a proceeding that may be heard under this section by a bankruptcy judge, the bankruptcy judge may conduct the jury trial if specially designated to exercise such jurisdiction by the district court and with the express consent of all the parties.

28 U.S.C. § 157(e). Considering that Defendants do not consent to a jury trial in the Bankruptcy Court, but still demand a jury trial, the referral of the case may be withdrawn by the District Court. However, Defendants have not shown that they are entitled to a jury trial as to Claim II. As argued by Sweet, as a trustee, he has no duty to the creditors, only to the bankruptcy estate under Michigan law. The Court denies Defendants' request for a jury trial at this time. If it is determined that Defendants are entitled to a jury trial before this Court, the Court finds that in the interest of judicial economy, the Bankruptcy Court should complete the pre-trial portion of this case. Other courts have similarly found this approach to be appropriate in these instances. *See In re Collins & Aikman Corp.*, No. 05-55927, 2006 WL 6584164, at *2 (E.D. Mich. June 15, 2006); *see also In re Solar Stamping & Mfg., LLC*, No. 08-13433, 2008 WL 4239146, at *1 (E.D. Mich. Sept. 10, 2008). After pre-trial matters conclude, and the case is ready for trial, the parties and the Bankruptcy Court will then notify the Court, and a final pretrial conference and date for the jury trial will be set.

On August 29, 2019, this Court held a status conference regarding this matter in conjunction with related matters. Mr. Tindall appeared and advised the Court he anticipated filing a Motion for Reconsideration with the District Court or taking an appeal to the Sixth Circuit Court

of Appeals. The Court was advised he would notify this Court of the outcome of any such action. The Court was not advised of any appellate status until the Court held a routine status conference regarding this matter on September 6, 2022. Thereafter, a flurry of pleadings have been filed with the Court. Two pleadings filed by Mr. Tindall, Dockets #107 and #108, restate arguments already raised and decided by the District Court in its August 22, 2019 Order.

The first pleading after the September 6, 2022 conference, however, is Plaintiff's Motion for Summary Judgment. As the District Court noted and concluded, Counts I and III are moot and Plaintiff renewed that argument. As to Count II – Breach of Fiduciary Duty and Waste, Plaintiff argues that he has immunity, citing *Grant, Konvalinka & Harrison, PC v. Banks, Morgan, and Richard Banks & Assoc., P.C.* (*In re McKenzie*), 716 F.3d 404 (6th Cir. 2013), *cert. den.,* 571 U.S. 955 (2013).

Mr. Tindall replied, denying that Plaintiff was entitled to immunity and pointing out that Plaintiff did not plead immunity in his response to the counter-claim. Plaintiff in turn amended his response to include the immunity defense. Mr. Tindall countered this maneuver by filing a Motion to Strike on November 8, 2022 (Docket #99) which Plaintiff replied to on November 22, 2022 (Dockets #110 and #112).

The Court heard oral arguments on November 8, 2022 and took this matter under advisement. The Court has reviewed all pleadings filed after September 6, 2022 and finds that additional oral argument is not necessary.

Statement of Legal Authorities and Standards

Summary Judgment Standard

Federal Rule of Civil Procedure 56 is made applicable in its entirety to bankruptcy adversary proceedings by Federal Rule of Bankruptcy Procedure 7056. Rule 7056(c) provides that

summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *See Choate v. Landis Tool Co.*, 486 F. Supp. 774 (E.D. Mich. 1980). The moving party bears the burden of showing the absence of a genuine issue of material fact as to an essential element of the non-moving party's case. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472 (6th Cir. 1989) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)). The burden then shifts to the nonmoving party once the moving party has met its burden, and the nonmoving party must then establish that a genuine issue of material fact does indeed exist. *Janda v. Riley-Meggs Indus., Inc.*, 764 F. Supp 1223, 1227 (E.D. Mich. 1991).

<u>Amendments to Pleadings Standard</u>

Federal Rule of Civil Procedure 15(a)(2) states:

**(a)** **Amendments Before Trial**

. . .

**(2)** *Other Amendments*. In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires.

This Rule is applicable in bankruptcy adversary proceedings by Federal Rule of Bankruptcy Procedure 7015.

<u>Analysis</u>

The application of immunity is dispositive to the remaining count in the counter-claim. The first and third counts are moot and Mr. Tindall did not address either count in his response or

at oral argument. To get to the application of the immunity defense, the Court must first determine if that defense has been waived.

In his brief and in oral argument, Mr. Tindall makes much of the failure of Plaintiff to plead immunity in his initial response. Mr. Tindall is correct, but that alone does not completely address the issue.

First, the authority cited by Mr. Tindall, *Summe v. Kenton Cty. Clerk's Office*, 604 F.3d 257, 269-70 (6th Cir. 2010), does hold that qualified immunity can be waived when raised sua sponte by the trial court. Moreover, *Haskell v. Washington Twp.*, 864 F.2d 1266, 1273 (6th Cir. 1988) did prohibit the raising of an immunity defense because of length of time and extensive litigation, as well as three published opinions.

Here, neither the *Summe* or *Haskell* factors are present. Plaintiff raised the issue of immunity as early as May 23, 2019 in his Amended Motion for Summary Judgment of Counter Claims:

> C. <u>Immunity</u>. The Trustee believes that he has provided a qualified judicial immunity in the Sixth Circuit Court of Appeals and as such this claim is not well founded. Pursuant to In re McKenzie, 716 Fed 3rd 404 Sixth Circuit 2013 the Trustee's actions as long as within the scope of his employment and taken pursuant to proper court orders are immune from a potential claim individually by a creditor or other party in interest. Ironically, the only exception to this appears to be when a Trustee wrongfully seizes property that is found not to be property of the estate without first obtaining a Court order. As the Counter Plaintiff had requested and had specifically provided in their Counter Claim that the Trustee take specific action prior to obtaining a determination that this property did constitute property of the estate. The Trustee further relies upon In re Bryan, 308 B.R. 583 (2004), In Re Hildebrand, 205 B.R. 278 (1997) and Weissman v. Hassett, 47 B.R. 462 (1985) wherein a Trustee is provided with immunity for claims provided he acts within the scope of his duty and pursuant to bankruptcy court orders. This Trustee has done exactly that and as such sees no basis for Counter Plaintiff's claim.

Likewise, time has passed because Mr. Tindall sought appellate review of the District Court's August 22, 2019 Order and he neglected to advise the Court of the completion of his

efforts. Moreover, there has not been any activity, much less extensive litigation in this adversary proceeding. Accordingly, the Court finds and concludes that Plaintiff did not waive his immunity and that Mr. Tindall's Motion to Strike Plaintiff's Pleading should be denied.

The Court next turns to the applicability of Plaintiff's immunity defense. The Plaintiff as a Trustee was tasked with the liquidation of Debtor's assets, which includes the 1011 Jones Road property. He sought out purchasers for the property but was not as successful as Mr. Tindall would have liked. Once Plaintiff did obtain a potential purchaser, he duly filed a motion with this Court and noticed creditors and parties in interest, including Mr. Tindall and Ms. Duggan. Mr. Tindall and Ms. Duggan objected, and Plaintiff filed an amended motion to transfer interest of the 1011 Jones Road property to the sale proceeds. Objections were again raised and overruled by the Court, and an Order approving the sale was entered on March 13, 2019. As summarized in the Trustee's Report of Sale and Seller's Settlement Statement filed on May 30, 2019 in the bankruptcy case of Christopher Wyman, the 1011 Jones Road property was sold and a closing held on May 29, 2019 with the interests of Ms. Duggan and Mr. Tindall paid.

Federal Rule of Civil Procedure 15 allows for the amendment of pleadings and applies in this instance. Mr. Tindall was on notice of Plaintiff's immunity defense as early as May 2019 and is not prejudiced by the amendment of Plaintiff's defenses. Justice requires this Court to give leave to Plaintiff in this situation, so the Court allows Plaintiff to amend his affirmative defenses as stated in his October 31, 2022 pleading found at Docket #93.

Plaintiff has acted within his statutory authority as a bankruptcy trustee under 11 U.S.C. § 704, and has the immunity granted to him by *Grant, supra*. More importantly, when a trustee is acting pursuant to a court order, such as in this case with the March 13, 2019 Sale Order, the trustee is protected by absolute or derived immunity. *See Phoenician Mediterranean Villa, LLC v. Swope*

*(In re JBS Properties, LLC)*, 872 F.3d 138, 142 n.3 (3d Cir. 2017) (citing *In re Harris*, 590 F.3d 730, 742 (9th Cir. 2009); *Boullion v. McClanahan*, 639 F.2d 213, 214 (5th Cir. Unit A. Mar. 1981)). As stated by the United States Supreme Court:

> "The practice is well established by which Trustees seek instructions from the Court, given notice to creditors and interested parties, as to matters which involve difficult question of judgment ……but had it been authorized, at least the assenting creditor might have found themselves estopped to question the transaction."

*Mosser v. Darrow*, 341 U.S. 267, 274 (1951).

Plaintiff did exactly that in this case and is entitled to immunity, which compels the Court to grant his Motion for Summary Judgment.

## Conclusion

For the reasons stated in this Opinion, the Court GRANTS Plaintiff's Motion for Summary Judgment (Docket #88).

The Court enters an Order consistent with this Opinion.

**Not for publication**

**Signed on December 28, 2022**



/s/ Daniel S. Opperman
**Daniel S. Opperman**
**United States Bankruptcy Judge**